John T. Brennan (JB 9364)
The Law Offices of John T. Brennan, P.C.
26 Court Street, Suite 710
Brooklyn, NY 11242
Telephone: (718) 923-5640
Telecopier: (718) 923-5641

Jeffrey L. Kodroff
Jeffrey J. Corrigan
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Telecopier: (215) 496-6611

*Counsel For Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK J. LYNCH, AS TRUSTEE OF THE HEALTH AND WELFARE FUND OF THE PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK AND THE RETIREE HEALTH & WELFARE FUND OF THE PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, on behalf of himself and all other similarly situated Plans, ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action File No. |
| v. ) ) | **COMPLAINT** |
| NATIONAL PRESCRIPTION ADMINISTRATORS, INC., EXPRESS SCRIPTS, INC. and JOHN DOES 1 THROUGH 25, ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) ) | |

Upon information and belief, Plaintiff, through his attorneys, makes the following allegations:

## INTRODUCTION

1.      This is a class action brought by Plaintiff Patrick J. Lynch as Trustee of the Health and Welfare Fund of the Patrolmen's Benevolent Association of the City of New York and the Retiree Health and Welfare Fund of the Patrolmen's Benevolent Association of the City of New York ("PBA Plans"), in his capacity as a Trustee of the PBA Plans, and on behalf of all other similarly situated self-funded prescription drug Plans (collectively "Plans") that utilize the services of Defendants National Prescription Administrators, Inc. ("NPA") and Express Scripts, Inc. ("Express Scripts") as pharmacy benefits managers ("PBMs"). Plaintiff also brings claims under § 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2), on behalf of all similarly situated self-funded drug Plans which utilize the services of NPA and Express Scripts (the "PBM Defendants") as PBMs and which are "employee benefit Plans" within the meaning of the ERISA, 29 U.S.C. § 1001 et seq. (the "Subclass").

2.      At its essence, this action asserts that the PBM Defendants are fiduciaries under common law and ERISA, and that the PBM Defendants breached their fiduciary duties in several ways.

3.      First, the PBM Defendants retain and exercise discretionary control and authority over prescription drug pricing, and secretly exercise their discretion to create pricing "spreads" through which the PBM Defendants enrich themselves at the expense of the Plans. By way of example only, the PBM Defendants act as third party administrators of the prescription drug benefits available to Plaintiff and other similarly situated Plans. In that capacity, the PBM Defendants contract with retail pharmacies to provide drugs at a discounted rate for the benefit of the Plans. The PBM Defendants also purchase drugs from manufacturers at discounted rates to sell through the PBM Defendants' mail order pharmacies for the benefit of the Plans. The PBM

2

Defendants, however, through the use of pricing spreads, secretly and subversively, in a variety of ways, divert and convert a portion of the discounted retail and mail drug price from the Plans to the PBM Defendants for their own use and benefit.

4.      Second, the PBM Defendants retain and exercise discretionary control and authority to negotiate and execute numerous contracts with numerous Drug Manufacturers, alleged herein as John Does 1 through 25 (collectively, the "Drug Manufacturers" or "Drug Manufacturer Defendants"), on behalf of the Plans. The PBM Defendants determine the terms of these contracts, including terms that require Manufacturers to pay the PBM Defendants kickbacks in the form of rebates, discounts and other "soft dollars" that the PBM Defendants secretly divert and convert to the PBM Defendants' own use and benefit. These kickbacks are provided to the PBM Defendants because of the PBM Defendants' vast buying power and their ability to control market share, which the PBM Defendants acquire in large part as a result of their fiduciary relationships to the Plans.

5.      The PBM Defendants also obtain these kickbacks from the Drug Manufacturers in exchange for the PBM Defendants favoring specific drugs on the PBM Defendants' standardized formularies, or favoring specific drugs in the PBM Defendants' drug switching programs. The PBM Defendants often decide to favor higher-cost drugs over lower-cost therapeutic equivalents in exchange for the receipt of Manufacturer kickbacks that the PBM Defendants retain for themselves. As a result, the Plans not only are deprived of assets that the PBM Defendants should have passed through to them, but they incur increased costs as a result of the PBM Defendants favoring higher-cost products.

6.      In addition, Plaintiff asserts claims against the Drug Manufacturers for aiding and abetting and knowingly participating in the PBM Defendants' breaches of their common law and

3

ERISA fiduciary duties to the Plans.

7.      This action seeks to recover, on behalf of the Plans, as equitable relief: (1) restitution of all Plan assets that the PBM Defendants wrongfully converted to their own use and benefit, as a result of the PBM Defendants' specialized position as fiduciaries to the Plans; (2) disgorgement of all profits that the PBM Defendants earned from their wrongful conduct and the wrongful conduct of the Defendant Drug Manufacturers; and (3) restitution to the Plans for all increased costs they incurred as a result of the PBM Defendants' and the Defendant Drug Manufacturers' wrongful conduct.

## VENUE AND JURISDICTION

8.      Subject matter jurisdiction is based upon diversity, pursuant to 28 U.S.C. § 1332, as Plaintiff and all named Defendants are located in different states, and the amount in controversy exceeds $75,000.

9.      Alternatively, the Court has subject matter jurisdiction over this matter in that the Plaintiff, as a Trustee of the PBA Plans, asserts on behalf of the Subclass claims arising under ERISA, 29 U.S.C. § 1132(a)(2), over which federal district courts have exclusive jurisdiction pursuant to 29 U.S.C.§ 1132(e)(1).

10.     The Court has jurisdiction over the state common law claims pursuant to the doctrine of supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

11.     The Court has personal jurisdiction over Defendants because at least one of the Defendants can be found in this District, and at least one Defendant systematically and continuously transacts business here.

12.     Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because at least one of the Defendants is found in this District, and some of the conduct at issue took place here.

4

13.     Upon filing of this complaint, Plaintiff will cause it to be served upon the
Secretaries of Labor and Treasury, as required by 29 U.S.C. § 1132(h).

## PARTIES

14.     Plaintiff Patrick J. Lynch is a Trustee for the Health and Welfare Fund of the
Patrolmen's Benevolent Association of The City of New York and the Retiree Health and
Welfare Fund of the Patrolmen's Benevolent Association of the City of New York. Plaintiff
maintains his principal place of business at 40 Fulton Street, New York, New York 10038. The
two Health & Welfare Funds ("the Funds") are trust funds established and maintained for the
purpose of providing health benefits for members and retirees of the Patrolmen's Benevolent
Association, which represents current and retired New York City Police Officers. The Funds
provide prescription drug benefits for thousands of participants and beneficiaries in every state in
the Unites States except for South Dakota. Members and beneficiaries receive these benefits as
part of their union benefits as negotiated through collective bargaining with the City of New
York, and pay no premiums in connection with the benefits. Plaintiff Lynch is suing on behalf
of the PBA Plans, which retained NPA as their PBM from 1981 to April 2002, when NPA was
acquired by Express Scripts. From April 2002 through August 2002, Express Scripts served as
PBM to the PBA Plans.

15.     Defendant NPA has corporate offices at 711 Ridgedale Avenue, East Hanover,
New Jersey. NPA was the largest privately held full-service PBM, until it was bought by
Express Scripts in April 2002, managing approximately $2.5 billion in annual drug spending,
primarily for union and government groups in the northeast. Defendant NPA was under contract
directly with the PBA Plans from 1981 through April 2002. NPA is also under contract, either
directly or indirectly, with numerous other Plans to provide services as a PBM. As a PBM,

5

Defendant NPA has access and control over the PBA Plans' and other class member Plans' assets, and serves as a third party administrator with regard to the Plans' assets in connection with the PBA Plans' prescription drug benefits and the prescription drug benefits of thousands of other Plans throughout the United States. In addition, Defendant NPA stands in a fiduciary relationship to the PBA Plans and all similar Plans, and must act solely in the interests of those Plans and not for its own interests. As used in this Complaint, the terms "NPA" and "Defendant" refer to all successors, predecessors and assignees of NPA.

16.     Defendant Express Scripts, Inc. is headquartered in St. Louis, Missouri. Express Scripts is one of the largest PBMs in North America, and serves thousands of client groups, including managed care organizations, insurance carriers, third-party administrators, employers and union-sponsored benefit Plans. Defendant Express Scripts purchased Defendant NPA in April 2002 for $450 million, and served as PBM to the PBA Plans from April 2002 through August 2002. Express Scripts is also named as a Defendant herein as a successor in interest to NPA.

17.     Defendants John Does 1 through 25 are unnamed Drug Manufacturers who contract with the PBM Defendants for the delivery of prescription drugs to Plans for which the PBM Defendants act as PBMs.

## THE PBM DEFENDANTS' RELATIONSHIP TO THE PLANS

18.     Generally, an employer can provide prescription drug benefits for its employees in one of two ways. It can provide benefits through an insured Plan by paying premiums and shifting the risk of paying prescription drug claims to an insurance company. Under an insured Plan, the insurance company pays covered claims with the insurance company's money. This case does not involve insured Plans.

6

19.     Alternatively, an employer can self-insure or self-fund its employees' prescription drug benefits and pay claims using its own money, which is placed in a trust or similar account as assets of the Plan. Typically, the employer that adopts a self-funded Plan hires a third-party administrator to administer the Plan and to pay prescription drug claims for the employer, using the Plan's money. This case only deals with this type of Plan.

20.     Plaintiff's PBA Plans are part of the benefits Plan offered by the PBA to its members and beneficiaries. At all relevant times, the PBA Plans and all similarly situated Plans were self-funded Plans.

21.     The PBA Plans that were in effect when Plaintiff became a Trustee of the PBA Plans were the same, for all relevant purposes, as the PBA Plans at the time when they were first implemented.

22.     From 1981 to April 2002, NPA was under contract with the PBA Plans to provide services as a PBM, and Express Scripts served as PBM to the PBA Plans from April 2002 through August 2002. In that capacity, the PBM Defendants managed both the purchase and flow of prescription drugs on behalf of the PBA Plans and many other self-funded Plans, named as class members herein. The PBM Defendants contract directly with self-funded Plans to provide the prescription drug benefit portion of those Plans. Similarly, the PBM Defendants contract with self-funded Plans' third party administrators, and subcontract through those third party administrators to provide PBM services to those Plans. As described below, regardless of whether the PBM Defendants contract directly or indirectly with the Plans, the PBM Defendants are fiduciaries of the Plans.

23.     Under their contracts with the Plans, the PBM Defendants are compensated with administrative fees for services rendered. These fees are disclosed and negotiated between the

7

Plans and the PBM Defendants.

24.    The PBM Defendants, however, obtain other compensation far in excess of the administrative fees set forth in their contracts with the PBA Plans and other class member Plans by virtue of the PBM Defendants' secret self-dealings with the Drug Manufacturer Defendants, pharmacies, and other entities. With the Drug Manufacturer Defendants' knowledge, the PBM Defendants fail to disclose these additional methods of compensation to the Plans, and fail to pay over to the Plans the assets represented by this compensation that rightfully belong to the PBA Plans and other class member Plans.

## THE PBM DEFENDANTS ARE FIDUCIARIES UNDER COMMON LAW AND ERISA

25.    The PBM Defendants are "fiduciaries" under common law and ERISA in their relationship to the PBA Plans and other class member Plans in that they exercise authority and control over Plan assets when paying prescription drug claims with Plan assets, as well as when negotiating rebates, discounts, and other pricing mechanisms with entities providing services to the Plans.

26.    In addition, the PBM Defendants are common law and ERISA fiduciaries in their relationships to the Plans because the PBM Defendants exercise discretionary authority and control over the administration and management of the Plans. Such discretionary authority and control includes, but is not limited to, the following matters:

  a.    Creating retail pricing spreads by determining the terms of the contracts with the retail pharmacies;

  b.    Deciding whether to disclose and pass on to the Plans the spreads between the price paid to retail pharmacies and the price charged to the Plans, which "spreads" constitute assets of the Plans;

8

c. Creating mail-order pricing spreads by determining the terms of the contracts with Drug Manufacturers;

d. Deciding whether to disclose and pass on to the Plans the spreads between the price paid to Drug Manufacturers and the price charged to the Plans, which "spreads" constitute assets of the Plans;

e. Determining with which Drug Manufacturers to negotiate and execute contracts, and determining the terms of those contracts, including but not limited to: (1) the length of the contacts; (2) the drugs that will be included and excluded under the contracts; and (3) whether and to what extent the contracts will include discounts and rebates and other "soft dollars," as well as how to label those sums in the contracts − a fact which will determine whether those discounts, rebates, and soft dollars are passed through to the Plans or whether the PBM Defendants will retain them in their entirety;

f. Deciding which drugs should be included in or excluded from the PBM Defendants' standardized formularies, and thereafter deciding: (1) which drugs to add or delete from the standardized formularies; (2) which drugs on the standardized formularies will be "preferred;" and (3) which relative cost indicators to place next to each included drug; and

g. Deciding which Manufacturer's drugs to target for the PBM Defendants' drug switching programs and deciding how many switches to secure in connection with each drug switching pair.

9

## THE PBM DEFENDANTS BREACH THEIR FIDUCIARY DUTIES UNDER COMMON LAW AND ERISA

27.     As fiduciaries, the PBM Defendants are obligated under common law and ERISA to discharge their duties with respect to the Plans solely in the interest of the Plans, for the exclusive purpose of providing benefits to participants and beneficiaries, and defraying reasonable expenses of administering the Plans. The PBM Defendants are also obligated to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Furthermore, as ERISA fiduciaries, the PBM Defendants are prohibited from engaging in certain "prohibited transactions" enumerated by the statute. See 29 U.S.C. § 1106. However, as described below, the PBM Defendants violate their common law and ERISA fiduciary duties in at least three ways:

### A.     The PBM Defendants Violate Their Fiduciary Duties By Creating and Retaining Pricing "Spreads" That Enrich The PBM Defendants and Deprive the Plans of Their Assets

28.     The PBM Defendants have and retain discretion over the reimbursement of prescription drugs because they have and retain discretion over the terms of contracts with: (1) their network of retail pharmacies, which control the reimbursement rates for drugs; and (2) Drug Manufacturers, which control the actual cost of drugs that are dispensed through the PBM Defendants' mail order pharmacies. The PBM Defendants do not disclose the terms of the above contracts to the Plans. As described below, the PBM Defendants manipulate the terms of their undisclosed contracts by creating hidden "pricing spreads" that provide the PBM Defendants with significant revenues, which the PBM Defendants fail to pass through to the Plans. As a result, the PBM Defendants are enriched, and the Plans are deprived of assets that rightfully belong to them.

10

29.     By way of example only, the PBM Defendants use their discretionary control and authority concerning retail pharmacies to execute standard-form contracts with thousands of retail pharmacies. Those pharmacies comprise a network of retail pharmacies through which the PBM Defendants sell retail drugs to the participants and beneficiaries of the Plans.

30.     The PBM Defendants contract with retail pharmacies for the amount the PBM Defendants will pay for the drugs that beneficiaries and participants of the Plans obtain at retail network pharmacies. In doing so, the PBM Defendants use the leverage they have obtained through their fiduciary relationships with the Plans to reimburse pharmacies at specific discounts. For brand-name drugs, the PBM Defendants typically contract to pay each drug's "Average Wholesale Price" ("AWP"), less a specified discount, plus an administrative fee. For generic drugs, the PBM Defendants typically contract to pay each drug's "Maximum Allowable Cost" ("MAC"), plus an administrative fee. MAC is a common term known in the trade and industry, and represents the maximum price that the federal government will pay for generic drugs as established by Centers for Medicare & Medicaid Services ("CMS"), formerly the Health Care Finance Administration ("HCFA").

31.     The PBM Defendants, however, do not disclose to the Plans the discounted AWP or MAC that the PBM Defendants actually pay for each drug that is purchased by the Plans' participants and beneficiaries at retail pharmacies. Thus, the PBM Defendants are able to conceal from the Plans the fact that the PBM Defendants have secretly created a "spread" between (1) the discounted AWP or MAC that the PBM Defendants agree to pay retail pharmacies, and (2) the AWP or MAC at which the Plans reimburse the PBM Defendants. The PBM Defendants retain the proceeds of this "spread" to enrich themselves without disclosing such self-dealing to the Plans.

11

32.     The PBM Defendants also exercise their discretionary control and authority over

contracts with Drug Manufacturers so as to enrich themselves to the detriment of the Plans. The

PBM Defendants buy drugs from Drug Manufacturers to stock the mail-order pharmacies

through which the PBM Defendants sell mail-order prescriptions to beneficiaries and participants

of the Plans. In contracting with the Drug Manufacturers on behalf of the Plans, the PBM

Defendants use the leverage they have obtained through their fiduciary relationships with the

Plans to purchase drugs at significant discounts. The PBM Defendants, however, do not disclose

to the Plans the terms of their contracts with Drug Manufacturers. As a result, the PBM

Defendants are able to conceal from the Plans the fact that the PBM Defendants secretly have

exercised their discretion to create a "spread" between (1) the discounted AWP or MAC that the

PBM Defendants agree to pay Drug Manufacturers; and (2) the discounted AWP or MAC at

which the Plans reimburse the PBM Defendants. The PBM Defendants retain the proceeds of

this "spread" to enrich themselves without disclosing such self-dealing to the Plans. Moreover,

the Drug Manufacturer Defendants are aware that the PBM Defendants' conduct constitutes a

breach of their fiduciary duties to the Plans, and the Drug Manufacturer Defendants knowingly

assist the PBM Defendants in concealing the terms of these agreements from the Plans.

**B.      The PBM Defendants Violate Their Fiduciary Duties by Contracting with Drug
         Manufacturers In a Multitude of Ways that Enrich The PBM Defendants to the
         Detriment of the Plans**

33.     Drug Manufacturers have incentives to maximize their respective sales of

pharmaceuticals.    In many instances, multiple Drug Manufacturers make therapeutically

equivalent drugs that serve similar therapeutic purposes.    Thus, there is, or should be,

marketplace competition for the sale of such drugs.

34.     Due in large part to its fiduciary relationships with the Plans, the PBM Defendants

12

wield significant market power and thus, can reduce the cost of drugs for the Plans. The Plans typically delegate to the PBM Defendants discretionary control and authority to decide which Manufacturers' drugs should be included in (or excluded from) the PBM Defendants' standardized formularies, and to thereafter decide: (1) which drugs to add or delete from the standardized formularies; (2) which drugs on the standardized formularies will be "preferred;" and (3) which relative cost indicators to place next to each included drug. The Plans also delegate to the PBM Defendants discretionary control and authority to create "formulary compliance programs" - also known as "drug-switching programs" - which enable the PBM Defendants to switch Plan participants and beneficiaries from higher-cost drugs to lower-cost, therapeutically equivalent drugs. In connection with those programs, the PBM Defendants retain discretionary authority and control over deciding which Manufacturers' drugs to target, as well as deciding how many switches to secure in connection with each drug switching pair. Thus, when the PBM Defendants negotiate with Drug Manufacturers, the PBM Defendants have significant power to influence the extent to which a Manufacturer's market share will increase (or decrease) as a result of all of the PBM Defendants' discretionary authority and control over the PBM Defendants' standardized formularies and drug-switching programs.

35.  As fiduciaries of the Plans, the PBM Defendants are obligated to use their significant market power for the benefit of the Plans. They must negotiate with Drug Manufacturers to maximize all discounts, rebates, and other soft dollars that will pass through to the Plans in exchange for the PBM Defendants favoring that Manufacturer's drug over another Manufacturer's therapeutically equivalent drug in the PBM Defendants' standardized formularies and drug switching programs. Furthermore, as fiduciaries, the PBM Defendants must favor those therapeutically equivalent drugs that are less expensive to the Plans.

13

36.     The PBM Defendants, however, breach their fiduciary obligations by using their significant market power to enrich themselves at the expense of the Plans. By way of example, the PBM Defendants negotiate with Drug Manufacturers to favor more expensive, therapeutically equivalent drugs – which enriches the Drug Manufacturers – in exchange for receiving from the Drug Manufacturers significant monies that the PBM Defendants retain for themselves and do not pass through to the Plans. By retaining these monies – rebates, mail-order discounts (that the PBM Defendants could have labeled as pass-through rebates), or other soft dollars – the PBM Defendants, with the knowing participation of the Drug Manufacturer Defendants, deprive the Plans of assets that belong to them.

37.     The PBM Defendants do not disclose to the Plans that they favor more expensive drugs in their standardized formularies and drug-switching programs, which enriches the Drug Manufacturers and increases the Plans' costs. Additionally, the PBM Defendants do not disclose that they receive from the Drug Manufacturers monies that the PBM Defendants do not pass through to the Plans, which deprives the Plans of assets to which they are entitled. Further, the PBM Defendants do not disclose that even when they favor a Drug Manufacturer's less expensive drug, they retain large portions of the Manufacturer's rebates, discounts, and soft dollars for themselves, thus depriving the Plans of assets to which they are entitled. The PBM Defendants also do not disclose that the Drug Manufacturer Defendants are knowing participants in this scheme.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is defined as all current and former self-funded non-ERISA employee benefit Plans for which NPA and/or Express Scripts serve or have served as the Plan's

14

PBM. The Subclass is defined as all current and former self-funded ERISA employee benefit Plans for which NPA and/or Express Scripts serve or have served as the Plan's PBM. The requirements of subparts 23(a), (b)(2), and (b)(3) are satisfied.

39.     The Class Members are so numerous that joinder is impracticable within the meaning of Fed. R. Civ. P. 23(a)(1). Plaintiff believes that the Class includes hundreds of self-funded non-ERISA Plans throughout the United States. Likewise, joinder is impracticable with respect to the Subclass, as Plaintiff believes that there are hundreds of self-funded ERISA Plans throughout the United States.

40.     Pursuant to Fed. R. Civ.P. 23(a)(2), there are questions of law or fact common to Class Members, including, without limitation, the following:

a.     Are the PBM Defendants fiduciaries under common law?

b.     Do the PBM Defendants breach their common law fiduciary duties to the Plans by converting and utilizing Plan assets for their own benefit when they create and retain for themselves retail and mail-order pricing spreads?

c.     Do the PBM Defendants breach their common law fiduciary duties to the Plans by failing to disclose in full and in detail the retail and mail-order pricing spreads they create and retain for themselves?

d.     Do the PBM Defendants breach their common law fiduciary duties to the Plans by converting and utilizing Plan assets for their own benefit when they obtain and retain for themselves rebates, discounts and other soft dollars from prescription Drug Manufacturers in return for including those Manufacturers' products on the PBM Defendants' standardized formularies?

e.     Do the PBM Defendants breach their common law fiduciary duties to the Plans by

15

failing to disclose in full and in detail the amount of rebates, discounts and other soft dollars the PBM Defendants receive from Drug Manufacturers whose drugs are included in the PBM Defendants' standardized formularies?

f.     Do the PBM Defendants breach their common law fiduciary duties to the Plans when they include in their standardized formularies higher-priced drugs in exchange for rebates, discounts and soft dollars that they do not pass through to the Plans?

g.     Do the PBM Defendants breach their common law fiduciary duties to the Plans by selling Plan assets, namely information about prescription drugs used by members of the Plans, to undisclosed third parties?

h.     Do the PBM Defendants breach their common law fiduciary duties to the Plans by conspiring with Drug Manufacturer Defendants to inflate the AWPs of prescription drugs?

i.     Have the Drug Manufacturer Defendants aided and abetted and/or knowingly participated in the PBM Defendants' breaches of their common law fiduciary duties?

j.     Is Plaintiff entitled to an accounting and equitable restitution due to Defendants' violations of common law as described in this Complaint?

k.     Is Plaintiff entitled to declaratory, injunctive, and other equitable relief due to Defendants' violations of common law as described in this Complaint?

41.     Additionally, there are questions of law or fact common to Subclass Members, including, without limitation, the following:

a.     Are the PBM Defendants fiduciaries under ERISA?

16

b. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans by converting and utilizing Plan assets for their own benefit when they create and retain for themselves retail and mail-order pricing spreads?

c. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans by failing to disclose in full and in detail the retail and mail-order pricing spreads they create and retain for themselves?

d. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans by converting and utilizing Plan assets for their own benefit when they obtain and retain for themselves rebates, discounts and other soft dollars from prescription Drug Manufacturers in return for including those manufacturers' products on the PBM Defendants' standardized formularies?

e. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans by failing to disclose in full and in detail the amount of rebates, discounts and other soft dollars the PBM Defendants receive from Drug Manufacturers whose drugs are included in the PBM Defendants' standardized formularies?

f. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans when they include in their standardized formularies higher-priced drugs in exchange for rebates, discounts and soft dollars that they do not pass through to the Plans?

g. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans by selling Plan assets, namely information about prescription drugs used by members of the Plans, to undisclosed third parties?

h. Do the PBM Defendants breach their fiduciary duties under ERISA to the Plans

17

by conspiring with Drug Manufacturer Defendants to inflate the AWPs of prescription drugs?

i. Have the Drug Manufacturer Defendants aided and abetted and/or knowingly participated in the PBM Defendants' breaches of their fiduciary duties under ERISA?

j. Is Plaintiff entitled to an accounting and equitable restitution due to Defendants' violations of ERISA as described in this Complaint?

k. Is Plaintiff entitled to declaratory, injunctive, and other equitable relief due to Defendants' violations of ERISA as described in this Complaint?

42. The above-identified common questions predominate over questions, if any, that may affect only individual Class or Subclass members.

43. The claims of the named Plaintiff, brought on behalf of the Plans, are typical of the claims of the defined Class, within the meaning of F.R.C.P. 23(a)(3), and are based on and arise out of similar, if not identical facts, constituting the wrongful conduct of Defendants. Likewise, similar, if not identical facts give rise to the claims alleged on behalf of the Subclass. Plaintiff, the Class, and the Subclass were damaged in the same way by the same uniform pattern of conduct. Thus, typicality of claims is satisfied with respect to both the Class and the Subclass.

44. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation. Plaintiff will fairly and adequately represent the interests of the members of the Class and the Subclass within the meaning of F.R.C.P. 23(a)(4). The interests of Plaintiff coincide with and are not antagonistic to those of the Class and the Subclass.

45. Defendants' actions are generally applicable to the class as a whole, and Plaintiff seeks equitable remedies with respect to the class as a whole, within the meaning of F.R.C.P.

18

23(b)(2).

46.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessary duplication of evidence, effort, and expense that numerous individual actions would require.

47.    The prosecution of separate actions by individual Class Members and Subclass Members would create a risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Defendants.

48.    Adjudications with respect to individual members of the Class and Subclass could, as a practical matter, be dispositive of the interests of others not parties to the adjudications or substantially impair or impede their ability to protect their interests.

49.    Plaintiff's counsel, highly experienced in class actions, foresee little difficulty in the management of the case as a class action.

## COUNT I
## BREACH OF COMMON LAW FIDUCIARY DUTY
### (Against The PBM Defendants)

50.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

51.    Because the PBM Defendants were fiduciaries to the Plans, the Plans reposed trust and confidence in the PBM Defendants, authorized the PBM Defendants to exercise discretionary functions for the benefit of the Plans, and relied upon the PBM Defendants' superior expertise in the administration of pharmacy benefits as detailed herein. As fiduciaries of the Plans, the PBM Defendants are obligated to discharge their duties with respect to the Plans

19

solely in the interests of the Plans, for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the Plans. The PBM Defendants also are obligated to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

52.    Pursuant to their fiduciary duties, the PBM Defendants must act with scrupulous good faith and candor - a standard more strict than the morals of the marketplace. The PBM Defendants may not take selfish advantage of the Plans' trust, and may not deal with the Plans in such a way as to benefit themselves, or to prejudice the Plans, except in the exercise of the utmost good faith, after full disclosure and with the full knowledge and consent of the Plans.

53.    The PBM Defendants, however, have breached and continue to breach their fiduciary duties in several ways, including, but not limited to:

a.    Creating and retaining for their own use and benefit retail pharmacy pricing spreads, and not disclosing such self-dealing to the Plans;

b.    Creating and retaining for their own use and benefit mail-order pricing spreads, and not disclosing such self-dealing to the Plans;

c.    Receiving and retaining for their own use and benefit Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans, and not disclosing such self-dealing to the Plans;

d.    Receiving and retaining for their own use and benefit rebates, discounts, and other soft dollars from Drug Manufacturers in exchange for including and/or favoring the Drug Manufacturers' products on the PBM Defendants' standardized

20

formularies and drug-switching programs, and not disclosing such self-dealing to the Plans; and

e.  Conspiring with Drug Manufacturers to inflate the AWP of prescription drugs, and retaining and converting Plan assets in the process;

f.  Selling information concerning the Plans' participants and beneficiaries to undisclosed third parties, thereby utilizing Plan assets for their own benefit.

54.  The PBM Defendants, therefore, have breached -- and continue to breach -- their common law fiduciary duties, and are liable to the Plans for all injuries sustained as a result of their conduct.

## COUNT II
## BREACH OF FIDUCIARY DUTY UNDER ERISA, 29 U.S.C. § 1104
### (Against The PBM Defendants)

55.  Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

56.  As fiduciaries under ERISA, the PBM Defendants are obligated to discharge their duties with respect to the Plans solely in the interests of participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the Plans. The PBM Defendants also are obligated to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. § 1104.

57.  Pursuant to this overriding duty of undivided loyalty, the PBM Defendants must act with scrupulous good faith and candor - a standard more strict than the morals of the marketplace. The PBM Defendants may not take selfish advantage of the Plans' trust, and may

21

not deal with the Plans in such a way as to benefit themselves, or to prejudice the Plans, except in the exercise of the utmost good faith, after full disclosure and with the full knowledge and consent of the Plans.

58. The PBM Defendants, however, have breached and continue to breach this duty of undivided loyalty in many ways, including but not limited to:

a. Creating and retaining for their own use and benefit retail pharmacy pricing spreads, and not disclosing such self-dealing to the Plans;

b. Creating and retaining for their own use and benefit mail-order pricing spreads, and not disclosing such self-dealing to the Plans;

c. Receiving and retaining for their own use and benefit Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans, and not disclosing such self-dealing to the Plans;

d. Receiving and retaining for their own use and benefit rebates, discounts, and other soft dollars from Drug Manufacturers in exchange for including and/or favoring the Drug Manufacturers' products on the PBM Defendants' standardized formulary and drug-switching programs, and not disclosing such self-dealing to the Plans; and

e. Conspiring with Drug Manufacturers to inflate the AWP of prescription drugs, and retaining and converting Plan assets in the process;

f. Selling information concerning the Plans' participants and beneficiaries to undisclosed third parties, thereby utilizing Plan assets for their own benefit.

59. The PBM Defendants therefore, have breached their overriding duty of loyalty

22

and are liable to the Plans under 29 U.S.C. §§ 1132(a)(2) and 1109 to redress those violations of 29 U.S.C. § 1104, to restore to such Plans all ill-gotten Plan assets, and to disgorge to the Plans all ill-gotten Plan assets, and to disgorge to the Plans all profits resulting from those violations.

60.     The PBM Defendants also are liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## COUNT III
## BREACH OF FIDUCIARY DUTY UNDER ERISA, 29 U.S.C. § 1106(b)(1)
### (Against The PBM Defendants)

61.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as is fully set forth herein.

62.     As fiduciaries under ERISA, the PBM Defendants must refrain from dealing with the assets of the Plans in their own interest or for their own accounts.  29 U.S.C. § 1106(b)(1).

63.     The PBM Defendants, however, deal with Plan assets in their own interests and for their own accounts in many ways, including, but not limited to:

a.     When paying retail pharmacy prescriptions with Plan assets, the PBM Defendants create and retain for their own use and benefit pricing spreads that they do not disclose to the Plans;

b.     When paying mail-order prescriptions with Plan assets, the PBM Defendants create and retain for their own use and benefit pricing spreads that they do not disclose to the Plans;

c.     When contracting with Drug Manufacturers, the PBM Defendants negotiate and retain for their own accounts Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans without disclosing such self-dealing to the Plans;

23

d. When selecting drugs to include on and/or favor on their standardized formulary and drug switching programs, the PBM Defendants negotiate and retain for themselves Drug Manufacturer rebates, discounts, and other soft dollars without disclosing such self-dealing to the Plans;

e. When purchasing prescription drugs on behalf of the Plans, the PBM Defendants conspire with Drug Manufacturers to inflate the AWP of drugs, resulting in the enrichment of the PBM Defendants, increased costs to the Plans, and the loss of Plan assets otherwise due to the Plans; and

f. The PBM Defendants sell information concerning the Plans' participants and beneficiaries to undisclosed third parties, thereby utilizing Plan assets for their own benefit.

64. The PBM Defendants, therefore, have violated and continue to violate 29 U.S.C. § 1106(b)(1) and are liable to the Plans under 29 U.S.C. §§ 1132(a)(2) and 1109 to redress those violations of 29 U.S.C. § 1106(b)(1), to restore to such Plans all ill-gotten Plan assets, and to disgorge to the Plans all profits resulting from those violations.

65. The PBM Defendants also are liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132 (g).

## COUNT IV
## BREACH OF FIDUCIARY DUTY UNDER ERISA, 29 U.S.C. § 1106(b)(2)
### (Against The PBM Defendants)

66. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

67. As fiduciaries under ERISA, the PBM Defendants have a duty to refrain from engaging in any transaction involving the Plans on behalf of a party whose interests are adverse

24

to the interests of the Plans' beneficiaries or participants. 29 U.S.C. § 1106(b)(2).

68. The PBM Defendants, however, repeatedly and continuously engage in transactions on behalf of parties whose interests are adverse to the interests of the Plans and the Plans' beneficiaries and participants - namely the PBM Defendants themselves, as well as Drug Manufacturers. The PBM Defendants act in their own self interest when they engage in transactions on behalf of the Plans. Other prohibited transactions include, but are not limited to the following:

a. The PBM Defendants conspire with Drug Manufacturer Defendants to inflate the AWP of drugs for their own benefit and the benefit of the Drug Manufacturer Defendants, as more fully described above.

b. The PBM Defendants act in the interests of Drug Manufacturer Defendants when including and/or favoring in the PBM Defendants' standardized formularies and drug switching programs higher-priced drugs, rather than lower-priced therapeutically equivalent drugs;

c. The PBM Defendants also sell information concerning the Plans to Drug Manufacturers and other undisclosed third parties with interests adverse to the Plans.

69. The PBM Defendants, therefore, have violated and continue to violate 29 U.S.C. § 1106(b)(2) and are liable to the Plans under 29 U.S.C. §§ 1132(a)(2) and 1109 to redress those violations of 29 U.S.C. § 1106(b)(2), to restore to such Plans all ill-gotten Plan assets resulting from those violations, and to disgorge to the Plans all profits resulting from those violations.

70. The PBM Defendants also are liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

25

## COUNT V
## BREACH OF FIDUCIARY DUTY UNDER ERISA, 29 U.S.C. § 1106(b)(3)
### (Against The PBM Defendants)

71.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

72.     As fiduciaries under ERISA, the PBM Defendants have a duty to refrain from receiving any consideration for their own accounts from any party dealing with the Plans in connection with a transaction involving the assets of the Plans. 29 U.S.C. § 1106(b)(3).

73.     The PBM Defendants, however, in many ways have received and continue to receive consideration for their own accounts from parties dealing with the Plans in transactions involving Plan assets, including but not limited to:

a.      When paying retail pharmacy prescriptions with Plan assets, the PBM Defendants create and retain for their own use and benefit pricing spreads they do not disclose to the Plans;

b.      When paying mail-order prescriptions with Plan assets, the PBM Defendants create and retain for their own use and benefit pricing spreads they do not disclose to the Plans;

c.      When contracting with Drug Manufacturers, the PBM Defendants negotiate and retain for their own accounts Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans, and not disclosing such self-dealing to the Plans;

d.      When selecting drugs to include on and/or favor on their standardized formularies and drug switching programs, the PBM Defendants negotiate and retain for themselves Drug Manufacturer rebates, discounts, and other soft dollars without

26

disclosing such self-dealing to the Plans;

e.     When purchasing prescription drugs on behalf of the Plans, the PBM Defendants

conspire with Drug Manufacturers to inflate the AWP of drugs, resulting in the

enrichment of the PBM Defendants, increased costs to the Plans, and the loss of

Plan assets otherwise due to the Plans; and

f.     The PBM Defendants sell information concerning the Plans' participants and

beneficiaries to undisclosed third parties, thereby utilizing Plan assets for their

own benefit.

74.     The PBM Defendants, therefore, have violated and continue to violate 29 U.S.C.

§ 1106(b)(3) and are liable to the Plans under 29 U.S.C. §§ 1132(a)(2) and 1109 to redress those

violations of 29 U.S.C. § 1106(b)(3), to restore to such Plans all ill-gotten Plan assets, and to

disgorge to the Plans all profits resulting from those violations.

75.     The PBM Defendants also are liable for Plaintiff's reasonable attorneys' fees and

costs pursuant to 29 U.S.C. § 1132(g).

**COUNT VI**
**BREACH OF FIDUCIARY DUTY UNDER ERISA:**
**MISREPRESENTATION: FAILURE TO DISCLOSE**
**(Against The PBM Defendants)**

76.     Plaintiff repeats and realleges each and every allegation contained in the above

paragraphs as if fully set forth herein.

77.     As fiduciaries under ERISA, the PBM Defendants had a duty not to mislead the

Plans as to any material fact concerning Plan assets and the administration, operation, and

maintenance of the Plans. The PBM Defendants also have the affirmative duty to deal honestly

and fairly with the Plans, including the duty to disclose to the Plans material information

27

concerning Plan assets and the administration, operation and maintenance of the Plans. The PBM Defendants must speak the truth when communicating with the Plans - they must not mislead the Plans when they speak and they must disclose truthfully and in detail all material information regarding Plan assets and the administration, operation, and maintenance of the Plans. See 29 U.S.C. § 1104.

78.     The PBM Defendants, however, through standard written disclosures, mislead the Plans by making false and/or inaccurate statements concerning their activities in administering the Plans, including but not limited to the following:

a.     The PBM Defendants mislead the Plans by representing that they exercise their standardized formulary, drug switching, and contracting discretion to act in the Plans' interests, when in fact they exercise such discretion in the PBM Defendants' interests and the interests of Drug Manufacturers.

79.     In addition, the PBM Defendants repeatedly and systematically fail to disclose to the Plans material information concerning the PBM Defendants' handling of Plan assets and their administration, operation and maintenance of the Plans, including, but not limited to the following:

a.     The PBM Defendants fail to disclose that they create and retain for their own use and benefit retail pricing spreads;

b.     The PBM Defendants fail to disclose that they create and retain for their own use and benefit mail-order pricing spreads;

c.     The PBM Defendants fail to disclose that they receive and retain for their own account Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans;

28

d.     The PBM Defendants fail to disclose that they receive and retain for their own use
and benefit rebates, discounts, and other soft dollars from Drug Manufacturer
Defendants in exchange for including and/or favoring the Manufacturers'
products on the PBM Defendants' standardized formularies and drug-switching
programs;

e.     The PBM Defendants fail to disclose that they conspire with Drug Manufacturer
Defendants to inflate the AWP of prescription drugs and that, in connection with
such secret dealings, the PBM Defendants often receive rebates, discounts, and
other soft dollars that the PBM Defendants retain for their own use and benefits;

f.     The PBM Defendants fail to disclose that they sell Plan assets, namely
information concerning the Plans' participants and beneficiaries, to undisclosed
third-parties without the consent of Plans.

80.     The PBM Defendants, therefore, have breached and continue to breach their duty
not to mislead the Plans and their duty to disclose all material information concerning Plan assets
and the administration, operation and maintenance of the Plans and are liable to the Plans under
29 U.S.C. §§ 1132(a)(2) and 1109 to redress those breaches, to restore to such Plans all ill-gotten
Plan assets, and to disgorge to the Plans all profits resulting from those violations.

81.     The PBM Defendants also are liable for Plaintiff's reasonable attorneys' fees and
costs pursuant to 29 U.S.C. § 1132(g).

## COUNT VII
## AIDING AND ABETTING BREACH OF COMMON LAW FIDUCIARY DUTIES
### (Against Defendant Drug Manufacturers John Does 1-25)

1)     Plaintiff repeats and realleges each and every allegation contained in the above

paragraphs as if fully set forth herein.

82.     The PBM Defendants have breached and continue to breach their fiduciary duties in several ways, including, but not limited to:

a.      Creating and retaining for their own use and benefit retail pharmacy pricing spreads, and not disclosing such self-dealing to the Plans;

b.      Creating and retaining for their own use and benefit mail-order pricing spreads, and not disclosing such self-dealing to the Plans;

c.      Receiving and retaining for their own use and benefit Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans, and not disclosing such self-dealing to the Plans;

d.      Receiving and retaining for their own use and benefit rebates, discounts, and other soft dollars from Drug Manufacturers in exchange for including and/or favoring the Manufacturers' products on the PBM Defendants' standardized formularies and drug-switching programs, and not disclosing such self-dealing to the Plans; and

e.      The PBM Defendants sell information concerning the Plans' participants and beneficiaries to undisclosed third parties, thereby utilizing Plan assets for their own benefit.

83.     At all times relevant to this case, the Drug Manufacturer Defendants were aware of the PBM Defendants' fiduciary status with respect to the Plans.

84.     The Drug Manufacturer Defendants, the unnamed John Does 1 through 25, knowingly participated in the PBM Defendants' breaches of their fiduciary duties in several

30

ways, including without limitation:

a.  Knowingly providing to the PBM Defendants rebates, discounts, and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans, but knowingly arranging for the PBM Defendants to receive and retain those monies without passing them through to the Plans;

b.  Knowingly providing to the PBM Defendants rebates, discounts, and other soft dollars in exchange for the PBM Defendants including and/or favoring the Drug Manufacturers' products on the PBM Defendants' standardized formulary and drug-switching programs, and knowing that such conduct constitutes a breach of the PBM Defendants' fiduciary duties to the Plans; and

c.  Conspiring with the PBM Defendants to inflate the AWP of prescription drugs, with the knowledge that the PBM Defendants would retain and convert Plan assets in the process.

85.  As a direct and proximate result of the Drug Manufacturer Defendants aiding and abetting the PBM Defendants' breaches of their fiduciary duties to the Plans, and as a direct and proximate result of the PBM Defendants' breaches of their fiduciary duties to the Plans, Plaintiff and the class member Plans have suffered substantial losses.

## COUNT VIII
## KNOWING PARTICIPATION IN BREACH OF ERISA FIDUCIARY DUTIES, 29 U.S.C. § 1132(l)(1)
### (Against Defendant Drug Manufacturers John Does 1-25)

86.  Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

87.  The PBM Defendants have breached and continue to breach their fiduciary duties

31

in several ways, including, but not limited to:

a.   Creating and retaining for their own use and benefit retail pharmacy pricing spreads, and not disclosing such self-dealing to the Plans;

b.   Creating and retaining for their own use and benefit mail-order pricing spreads, and not disclosing such self-dealing to the Plans;

c.   Receiving and retaining for their own use and benefit Drug Manufacturer rebates, discounts and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to the Plans, and not disclosing such self-dealing to the Plans;

d.   Receiving and retaining for their own use and benefit rebates, discounts, and other soft dollars from Drug Manufacturers in exchange for including and/or favoring the Manufacturers' products on the PBM Defendants' standardized formularies and drug-switching programs, and not disclosing such self-dealing to the Plans; and

e.   Conspiring with Drug Manufacturers to inflate the AWP of prescription drugs, and retaining and converting Plan assets in the process.

88.   At all times relevant to this case, the Drug Manufacturer Defendants were aware of the PBM Defendants' fiduciary status with respect to the Plans.

89.   The Drug Manufacturer Defendants, the unnamed John Does 1 through 25, knowingly participated in the PBM Defendants' breaches of their fiduciary duties in several ways, including without limitation:

a.   Knowingly providing to the PBM Defendants rebates, discounts, and other soft dollars that could be labeled by the PBM Defendants as rebates otherwise due to

32

the Plans, but knowingly arranging for the PBM Defendants to receive and retain those monies without passing them through to the Plans;

b.  Knowingly providing to the PBM Defendants rebates, discounts, and other soft dollars in exchange for the PBM Defendants including and/or favoring the Drug Manufacturers' products on the PBM Defendants' standardized formularies and drug-switching programs, and knowing that such conduct constitutes a breach of the PBM Defendants' fiduciary duties to the Plans; and

c.  Conspiring with the PBM Defendants to inflate the AWP of prescription drugs, with the knowledge that the PBM Defendants would retain and convert Plan assets in the process.

90.  As a direct and proximate result of the Drug Manufacturer Defendants' knowing participation in the PBM Defendants' breaches of their fiduciary duties to the Plans, and as a direct and proximate result of the PBM Defendants' breaches of their fiduciary duties to the Plans, Plaintiff and the class member Plans have suffered substantial losses.

## COUNT IX
## ACCOUNTING
### (Against The PBM Defendants)

91.  Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

92.  The Plans are entitled to an accounting of: (1) the amount of Plan assets the PBM Defendants have retained for their own benefit and use to the detriment of the Plans; and (2) the profits earned by the PBM Defendants through their unlawful activities.

93.  The Plans are entitled to such an accounting because of the PBM Defendants' fiduciary relationships to the Plans, and the PBM Defendants' breaches of their fiduciary duties

33

to the Plans.

## COUNT X
## VIOLATIONS OF STATE CONSUMER FRAUD STATUTES
### (Against The PBM Defendants)

94. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

95. Defendants are incorporated, or maintain their principle places of business, in Missouri or New Jersey. In addition, Plaintiff resides in New York. Each of these states has enacted statutes to protect consumers against unfair, deceptive or fraudulent business practices, unfair competition and false advertising. The statutes of these states, legally and substantively common, provide consumers with a private right of action, as follows:

Missouri:       V.A.M.S. § 407.020

New Jersey:     N.J. Stat. Ann. §§ 56:8-1 - 56:8-24

New York:       N.Y. Gen. Bus. L. §§ 349-350

96. These statutes do not require a showing of either scienter or individual reliance. Defendants' conduct, as alleged in this Complaint, constitutes unfair and deceptive acts or practices, unconscionable practices, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of material fact in violation of these statutes. Defendants' continuing violations include:

(a)    Failing to disclose material facts in the conduct of trade or commerce in that they have not disclosed (1) the full extent of rebates and other financial incentives received from Drug Manufacturers, and (2) that the AWP does not reflect the true average wholesale price of the drugs they sell, and that the published AWPs are instead deliberately inflated in order to increase the prices paid by Plaintiff and the members of the Classes and increase the profitability of the PBM Defendants;

(b)    Making false or misleading statements of fact concerning the price of goods in that they have not reported the true rebates, AWP spreads and other

34

financial inducements received from prescription Drug Manufacturers as described above;

(c) Knowingly making false representations in a transaction by representing that the AWP is an accurate reflection of the average wholesale price paid for their drugs when AWP is, in reality, a fictitious and inflated amount; and

(d) The PBM Defendants willfully engaged in such practices knowing them to be deceptive and with the intent that Plaintiff and the Class would rely thereon.

97. The wrongful conduct alleged in this Complaint occurred, and continues to occur, in the ordinary course of Defendants' business and has caused great harm to Plaintiff and the Class, who were foreseeable and direct victims. Defendants have injured the public interest, and Defendants' actions continue to pose a threat to the public.

98. As a direct and legal result of Defendants' misleading, deceptive, unfair, false and fraudulent trade practices, Plaintiff and the Class have sustained damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays the Judgment of the Court as follows:

a. A declaratory judgment finding that (1) the PBM Defendants are fiduciaries to the Plans under common law and ERISA; (2) the PBM Defendants breached their common law and ERISA fiduciary duties to the Plans and (3) the PBM Defendants violated the state consumer fraud statutes;

b. A declaratory judgment finding that Drug Manufacturer Defendants, John Does 1 through 25, aided and abetted the PBM Defendants' breach of their common law and ERISA fiduciary duties to the Plans;

c. An Order enjoining all Defendants from engaging in the unlawful activities

35

described here;

d.     An Order requiring that Defendants account to the Plans for (1) all Plan assets the PBM Defendants have retained for their own benefit and use to the detriment of the Plans; (2) all profits earned by the PBM Defendants through their unlawful activities alleged herein; and (3) all profits Defendant Drug Manufacturers, John Does 1 through 25, earned through their unlawful activities alleged herein.

e.     An Order requiring that all sums due to the Plans from all Defendants pursuant to such accounting be placed in a constructive trust for distribution of the Plans;

f.     An Order requiring that Defendants pay Plaintiff's reasonable attorneys' fees and costs incurred in the prosecution of this action; and

g.     Any further relief the Court deems just and equitable.

Dated: Brooklyn, New York
February 26, 2003

Respectfully submitted,

John T. Brennan

The Law Offices of John T. Brennan, P.C.
26 Court Street, Suite 710
Brooklyn, NY 11242
Telephone: (718) 923-5640
Telecopier: (718) 923-5641

Jeffrey L. Kodroff
Jeffrey J. Corrigan
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: 215.496.0300
Fax: 215.496.6611

Counsel For Plaintiffs