# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

_____
                                        )
**In re EXPRESS SCRIPTS, INC.,**        )
**PHARMACY BENEFITS MANAGEMENT**  )        **MDL No. 1672**
**LITIGATION**                          )
_____)

## MEMORANDUM AND ORDER

Express Scripts, Inc. and its related entities are Defendants in several interrelated cases before this Court, which were consolidated for coordinated pre-trial proceedings by the Judicial Panel on Multi-District Litigation. In the matter currently at bar, Plaintiffs James M. Wagner, Jan Gorsky, and Rosa Maria Castillo Kesper, who are members of the Organization of New York State Management Confidential Employees (the "OMCE"), and Plaintiffs J. William E. Scheuerman, Phillip H. Smith, and John J. Marino, who are members of the United University Professions, Local 2190 American Federation of Teachers (the "UUP," collectively with OMCE, the "Labor Unions"), filed a putative class action against Express Scripts and ESI Mail Pharmacy Service (collectively "ESI") on behalf of themselves, the Labor Unions, and all others similarly situated. In the Amended Complaint, Plaintiffs claim that the Defendants should be held liable for breach of fiduciary duty, deceptive practices in violation of New York General Business Law § 349, breach of contract, violation of New York Public Health Law § 18, negligence, negligent misrepresentation, and unjust enrichment. Plaintiffs seek legal and equitable relief, including injunctive relief, compensatory and punitive damages, restitution, and disgorgement of profits. This is before the Court on ESI's Motion to Dismiss (No. 64). In this Motion, Defendants seek to dismiss Plaintiffs' cause of action for violation

of the filed rate doctrine, lack of standing, and failure to join an indispensable party.  In addition,

Defendants attack each individual count of the Complaint on various grounds.

## LEGAL STANDARD

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir. 1986).  The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery.  5 Wright & Miller, Federal Practice and Procedure:  Civil, Sec. 1216 at 120 (1969).  A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial."  *Id.* at 122-123.  Moreover, a court should not dismiss a complaint unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.

The Court must view the complaint in the light most favorable to the plaintiff and should not dismiss it merely because the Court doubts that the plaintiff will be able to prove all of the necessary allegations.  *Bennett v. Berg*, 685 F.2d 1053, 1058 (8th Cir. 1982).  Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982).  With this standard in mind, the Court moves on to the facts of the case.

## BACKGROUND

As the background of this case is complex and the parties are fully aware of all relevant information, the Court will recite the facts in brief. This suit is a consolidated putative class action brought by two state employee labor unions, the OMCE and UUP, and their representatives. Plaintiffs file suit on behalf of all New York State employees, retirees, and dependants that receive health benefits through the New York State Health Insurance Program ("NYSHIP"), are participants in the NYSHIP Empire Plan, or have their pharmacy prescription benefits administered by ESI.

NYSHIP, acting through the New York Department of Civil Service, contracted with the Connecticut General Life Insurance Company ("CIGNA") to provide health benefits to city employees. CIGNA then subcontracted the drug benefit administrative duties to ESI. ESI acted as the Pharmacy Benefits Manager ("PBM") for State employees under the NYSHIP Empire Plan, including benefits for the Labor Unions. In addition to its PBM duties, ESI reported prescription cost and manufacturer's rebate information to CIGNA and the State, which used those figures to establish the premiums paid by Empire Plan members, including the Plaintiffs. The premium owed to CIGNA is negotiated and paid by the State. Individual employees do not make payments to CIGNA.

In their Amended Complaint, Plaintiffs claim that ESI engaged in a litany of improper acts, resulting in inflated insurance premiums, prescription drug rates, and co-payments. Plaintiffs also claim that ESI collected, yet failed to disclose and distribute to the State health plans, compensation received from pharmaceutical companies through rebates, price spreads, kickbacks, distortions of the Average Wholesale Price, prompt payment discounts, financial disclosure errors, and inflated co-

payments.  Thus, Plaintiffs allege that ESI used improper methods to obtain a windfall profit while increasing the overall cost of Plaintiffs' health care.

## DISCUSSION

### I.     Choice of Law

This is a diversity action filed in the Supreme Court of New York, removed to the United States District Court for the Southern District of New York, and transferred to the United States District Court for the Eastern District of Missouri for consolidated pretrial proceedings.  Where federal questions are at issue, "consolidated cases are controlled by the law of this circuit, rather than that of the various circuits in which they were first filed." *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1171 n. 4 (8th Cir. 1998); *see also Temporomandibular (TMJ) Joint Implants Recipients v. E.I. Du Pont De Nemours & Co.*, 97 F.3d 1050, 1055 (8th Cir. 1996).  Accordingly, the Court will apply Eighth Circuit precedent, as opposed to the Second Circuit caselaw cited throughout the litigants' memoranda.

As to state law issues, a court generally applies the forum state's choice of law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 877 (8th Cir. 2006).  However, when a transferee court presides over a consolidated diversity action, it must apply the choice of law rules of the jurisdiction in which each case was originally filed.  *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); 28 U.S.C. § 1407.  Therefore New York choice of law rules apply.

In New York, courts apply an interest analysis that gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Hughes v. LaSalle, Bank, N.A.*, 419 F. Supp. 2d 605, 617 (S.D.N.Y. 2006) (quoting *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277 (N.Y. 1993)). In this case, Plaintiffs are domiciliaries of New York, and the Defendants have their principle place of business in Missouri and are incorporated in Delaware. The relationship giving rise to this action developed in New York, Defendants billed Plaintiffs in New York, and Defendants collected rebates that were accrued in New York. Therefore, New York law applies to any state law issues.

## II.    Standing

Plaintiffs' suit stems from ESI's purported actions while administering a Pharmacy Benefit Plan entered into by the State of New York on Plaintiffs' behalf. Because of this attenuated relationship, ESI argues that Plaintiffs are merely third parties, and lack standing to assert their claims. There are two types of standing jurisprudence: Article III standing, which "confines the jurisdiction of federal courts to justiciable cases and controversies," and prudential standing, which is a judicially imposed jurisdictional limitation. *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005). The Article III case and controversy requirement allows a plaintiff to file only those claims alleging a redressable "injury in fact." *Id.* Whereas prudential principles ensure that courts avoid "deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99-100, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979).

Plaintiffs have established Article III standing. According to Plaintiffs' allegations, they suffered personal harm (inflated premiums, increased co-payments, and privacy violations), this harm is traceable to ESI's actions, and their harm would be redressable by a favorable decision in this case. Constitutional standing principles do not bar their claims.

Plaintiffs have also established prudential standing. Prudential principles are applied to avoid "the adjudication of rights which those not before the Court may not wish to assert" and to assure "that the most effective advocate of the rights at issue is present to champion them." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978). This third-party standing rule "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1379 (8th Cir. 1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 509, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). In this case, prudential principles are not implicated because the Plaintiffs are asserting their own rights.

New York law allows third party beneficiaries to file suit for breach of contract and breach of fiduciary duty. *See Madeira v. Affordable Housing Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006); *Consol. Edison, Inc. v. Northeast Utilities*, 426 F.3d 524, 527 (2d Cir. 2005); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 249 (2d Cir. 2002); *Weingarten v. Warren*, 753 F. Supp. 491, 495-96 (S.D.N.Y. 1990); *State of Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101 (N.Y. 2000). Upon review, there is sufficient information in the pleadings to establish that Plaintiffs were the intended beneficiaries of a PBM contract. Therefore, Plaintiffs have standing to file suit for the alleged breaches. And Plaintiffs' negligence and unjust enrichment claims grow out of their

contract and fiduciary duty claims, and involve violations of Plaintiffs' own personal privacy rights. Prudential limitations do not bar this suit.

## III.  Indispensable Parties

ESI next moves to dismiss this cause of action for failure to join an indispensable party. ESI argues that, as the signatory to the contract underlying this suit, the State of New York is a necessary party. In addition, the State filed a separate suit against ESI involving the same operative facts. As joinder of the State is not feasible, ESI argues that this case must be dismissed in the interest of equity. Plaintiffs' arguments do not address whether or not the State is a necessary party or if joinder is feasible. Instead, Plaintiffs argue that equity does not require dismissal.

Under Rule 19 of the Federal Rules of Civil Procedure, "a nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty." *United States ex rel. Steele v. Turn Key Gaming, Inc.*, 135 F.3d 1249, 1251 (8th Cir. 1998). A nonparty is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

The State's status as a signatory to the contract is insufficient to render the State a necessary party. *See Sandobal v. Armour & Co.*, 429 F.2d 249 (8th Cir. 1970). However, the State claimed an interest relating the subject of this litigation by filing its own suit against ESI. This suit brings claims of breach of contract, breach of fiduciary duty, unjust enrichment, and negligent misrepresentation. The State's Complaint principally seeks damages for itself, but it also requests restitution and damages for injured members of the Empire Plan. This overlap creates a risk that ESI might incur multiple obligations. Thus, the State is a necessary party.

In addition, the State cannot be joined without depriving the Court of subject matter jurisdiction. A State is not a citizen for the purposes of diversity. Accordingly, when a State is joined as a party to an action, there can be no diversity of citizenship. *See Moor v. Alameda County*, 411 U.S. 693, 717, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973); *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 98 n. 1, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972); *Chicago, R.I. & P.R. Co. v. Long*, 181 F.2d 295, 298 (8th Cir. 1950); *Wilkerson v. Missouri Dep't of Mental Health*, 279 F. Supp. 2d 1079, 1080 (E.D. Mo. 2003). Because the Court's jurisdiction is based on diversity, joining the State would deprive the Court of subject matter jurisdiction.

When a necessary party cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P 19(b). If the action should not proceed, the State is deemed an indispensable party. Rule 19(b) sets forth four non-exhaustive factors for consideration: (1) "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;" (2) "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures,

the prejudice can be lessened or avoided;" (3) "whether a judgment rendered in the person's absence will be adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P 19(b). This is a "pragmatic rule whose application turns on considerations of efficiency and fairness in the particular case." *Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 491 (8th Cir. 2006).

The first determinant examines the extent to which a judgment rendered in the State's absence might be prejudicial to the State or to ESI. The State will not be prejudiced by a judgement in its absence. The New York Attorney General's Office has filed its own suit, and is fully able to pursue its own legal remedies. However, the State's absence might be prejudicial to ESI. In its suit, the State is seeking restitution and damages on behalf of injured members of the Empire Plan, who are the Plaintiffs in this cause of action. Thus, if both the State and the Plaintiffs are successful in their efforts, ESI may be subject to double liability and Plaintiffs may obtain a double recovery.

Next, the Court is to consider ways in which the prejudice to ESI can be lessened or avoided. ESI correctly argues that this Court has no power to impose protective provisions upon the New York State court action filed by the Attorney General. However, a Court does have the power to place protective provisions in its own judgment and shape relief to reduce the risk of double recovery. This case is no exception. There are numerous ways to structure or limit this suit to avoid inconsistent obligations in the event that Plaintiffs are victorious. *See e.g. Provident Tradesmens Nat'l Bank & Trust Co. v. Patterson*, 390 U.S. 102, 115, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968) (stay execution of judgment until the related cases are tried); *Brown v. Chaffee*, 612 F.2d 497, 499-

500 (10th Cir. 1979) (stay federal trial until state case is resolved). Accordingly, this weighs against dismissal.

The third factor examines whether a judgment rendered in the State's absence would be adequate. This "calls attention to the extent of the relief that can be accorded among the parties joined." Fed. R. Civ. P. 19 advisory committee's note. In the instant case, complete relief can be accorded among the parties in the State's absence. Any judgment rendered would not be a hollow one, and would fully resolve the issues between those presently parties to this cause of action.

The fourth factor questions whether Plaintiffs will have an adequate remedy if this cause of action is dismissed. ESI argues that Plaintiffs' claims are derivative of the State's, thus Plaintiffs' rights will be adequately represented by the Attorney General. However, the Attorney General represents the State of New York, and does not seek the same personalized recovery that Plaintiffs seek for themselves. Accordingly, the State's suit does not provide Plaintiffs with an adequate remedy.

In sum, three out of the four factors favor finding that the State is not an indispensable party. In addition, the interest of the courts and the public in complete, consistent, and efficient settlement of controversies must be taken into account. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968). Plaintiffs originally filed this suit in 2004 in the Supreme Court of New York. ESI removed the action to the New York District Court, and the case was transferred to the Eastern District of Missouri for consolidated pre-trial proceedings. Assuming that the cause of action survives all dispositive motions, it will eventually

return to the New York District Court for trial. This jurisdictional game of hot potato has created an incredibly lengthy, complicated, and costly lawsuit. In the interest of efficiency, equity and good conscience, this action must proceed among the parties before it without additional delay and confusion. Accordingly, the State is not an indispensable party.

## IV.     Filed Rate Doctrine

ESI next argues that Plaintiffs' claims are barred by the filed rate doctrine. However, ESI misinterprets the doctrine's meaning and purpose. The filed rate doctrine has two main components: "It prohibits a regulated entity from discriminating between customers by charging a rate for its services other than the rate filed with the regulatory agency, and it preserves the authority and expertise of the rate-regulating agency by barring a court from enforcing the statute in a way that substitutes the court's judgment as to the reasonableness of a regulated rate." *Saunders v. Farms Ins. Exch.*, 440 F.3d 940, 943 (8th Cir. 2006). This doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." *H.J. Inc. v. N.W. Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir. 1992).

ESI posits that, because it contracted with a State agency and the agency retained the right to review and approve premium changes, the rate is a "filed rate" that cannot be used as a measure of damages. ESI is incorrect. The premiums paid by Plaintiffs were not determined by a legislative rate-making scheme. *See e.g. Taffet v. Southern Co.*, 967 F.2d 1483, 1490 (11th Cir. 1992). Instead, the State agency acted like any private employer by negotiating a health insurance contract on behalf of its employees. This is not rate-making within the meaning of the filed rate doctrine.

## V.    Breach of Fiduciary Duty

As its next argument, ESI claims that the Plaintiffs cannot maintain a cause of action for breach of fiduciary duty because they did not properly allege the existence of a fiduciary duty.[1]  To set forth a prima facie claim for breach of fiduciary duty, a plaintiff must first establish that the parties were in a fiduciary relationship.  *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986). Stated broadly, a fiduciary relationship exists where "a party repose[s] confidence in another and reasonably relie[s] on the other's superior expertise or knowledge."  *Anonymous v. CVS Corp.*, 728 N.Y.S.2d 333, 337 (N.Y. Sup. Ct. 2001); *see also Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (fiduciary relationship exists "when one ... is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation"); *accord* Restatement (Second) of Torts § 874.

A conventional business relationship, absent additional factors, does not give rise to a fiduciary relationship.  *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995); *RKB Enters. Inc. v. Ernst & Young*, 582 N.Y.S.2d 814, 816 (N.Y. App. Div. 1992).  To distinguish between a fiduciary relationship and a typical business relationship, courts look to factors such as the parties' intent, the length of their relationship, their financial interdependence,

---

[1]ESI also argues that its relationship with Plaintiffs was too attenuated to support a fiduciary relationship, citing *Thermal Imaging v. Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335 (S.D.N.Y. 2001), as its sole support.  However, *Thermal Imaging* found that a plaintiff who was defrauded by an insolvent commercial lender could not establish a fiduciary relationship with the lender's broker where the plaintiff had absolutely no dealings with the broker.  In this case, the contract was between the State and CIGNA, but Plaintiffs had a relationship with ESI.  Thus, *Thermal Imaging* does not support ESI's conclusion.  As ESI cites no additional caselaw for its theory, the Court need not examine the argument any further.  Plaintiffs' Complaint makes sufficient allegations to survive a motion to dismiss.

and their sharing of confidential and proprietary information. *In re Kressner*, 206 B.R. 303, 312 (Bankr. S.D.N.Y. 1997); *ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*, 662 N.Y.S.2d 190, 192 (N.Y. Sup. Ct. 1997). Therefore, Plaintiffs must show that they put confidence in and relied upon ESI, and that their reliance was reasonable. *Anonymous*, 728 N.Y.S.2d at 337. The nature of the parties' relationship must have been such that it imposed a duty upon ESI to act in the Plaintiffs' interest, even if such action were to ESI's detriment. *Maalouf v. Salomon Smith Barney, Inc.*, No. 02-4770, 2003 WL 1858153, at *5 (S.D.N.Y. Apr. 10, 2003).

Upon review of the Complaint, the Court finds that Plaintiffs properly plead the existence of a fiduciary relationship. The facts alleged suggest that Plaintiffs put their confidence and trust in ESI, a more sophisticated and knowledgeable party. As a result of this trust, Plaintiffs provided ESI with confidential health information and relied upon ESI to exercise discretion and control over plan assets and to administer and manage the pharmacy benefit plan. While marketing its product, ESI encouraged this reliance by pledging to "always align our interests with those of our clients and their members," dedicating itself "to making use of prescription drugs safer and more affordable for plan sponsors and over 50 million members and their families," and holding "itself out as having special expertise in advising and administering the Plan." Amended Compl., at ¶¶ 5 & 53. These allegations are sufficient to establish a fiduciary relationship.

ESI also argues that Plaintiffs' fiduciary duty claim must be dismissed as duplicative of their breach of contract claim. *See Layden v. Boccio*, 686 N.Y.S.2d 763, 764 (N.Y. App. Div. 1998) (where plaintiff fails to allege "tort liability or a breach of duty distinct from, or in addition to, the breach of contract claim, th[e] cause[] of action should be dismissed"). In their claim for breach,

Plaintiffs assert that ESI failed to pass through certain rebates and sold Plaintiffs' private health information. These allegations are strikingly similar to Plaintiffs' breach of contract claim. But that is not dispositive.

"It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1987). *See also Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 460 (S.D.N.Y. 2006); *Sergeants Benev. Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 79 (N.Y. App. Div. 2005). Where a party to a contract is also a fiduciary to the other party, the duty owed is outside the scope of the agreement and the contracting party may be charged with tort liability in addition to breach of the contract. *Meyers v. Waverly Fabrics Div. of F. Schumacher & Co.*, 479 N.E.2d 236, 239 n.2 (N.Y.1985); *Sergeants Benevolent Ass'n*, 796 N.Y.S.2d at 80-81. Stated in another fashion, "[a] tort action may accompany one for breach of contract only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached." *Bouquet Brands Div. of J & D Food Sales, Inc. v. Citibank, N.A.*, 470 N.Y.S.2d 733, 744 (N.Y. App. Div. 1983).

Plaintiffs alleged that ESI improperly sold Plaintiffs' personal information and failed to align its interests with those of Plaintiffs while it was under a duty, as a Pharmacy Benefit Manager, to give advice and act in Plaintiffs' best interests. As previously stated, these allegations are similar to those for breach of contract. However, before the Court can determine whether a fiduciary duty exists independent of the contract, "the contract and relationship of the parties must be plumbed." *N.E.*

*Gen. Corp. v. Wellington Adver., Inc.*, 624 N.E.2d 129, 131 (N.Y. 1993).  At this stage in the litigation, the Court sees no insuperable bar to relief.


**VI.    New York Consumer Protection Act**


In Count II of the Complaint, Plaintiffs claim that ESI violated Section 349 of New York's General Business Law, also known as the New York Consumer Protection Act (NYCPA).  This Act provides a private right of action, whereby "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. L. § 349(h).  In particular, Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  N.Y. Gen. Bus. Law § 349(a).


To establish a claim under Section 349, "a plaintiff must allege both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004). In addition, the deceptive act or practice "must be misleading to a reasonable consumer." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).  ESI contends that Plaintiffs' NYCPA claim must be dismissed for lack of standing, failure to make the proper factual allegations, and failure to allege consumer oriented conduct.

A plaintiff need not be a consumer to bring a cause of action under Section 349. *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003); *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000). However, the NYCPA is not applicable unless the defendant engages in "consumer oriented" conduct. *Gaidon v. Guardian Life Ins. Co.*, 725 N.E.2d 598 (N.Y. 1999). "The critical question ... is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer ...." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). If a deceptive practice has "a broader impact on consumers at large," it is considered consumer oriented and is within the ambit of Section 349. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741 (N.Y. 1995).[2] Private contract disputes unique to the parties are not actionable under this Section. *Id.*

This issue is identical to that decided by this Court in the *Lynch* case, which is part of this multi-district litigation. *See In re Express Scripts, Inc.*, No. 05-1672, 2006 WL 2632328 (E.D. Mo. Sept. 13, 2006). Accordingly, the Court sees no cause to depart from its prior findings. As stated in *Lynch*, the Court could find no caselaw discussing the effect of Section 349 on prescription benefit plans. However, there are several cases in which non-consumer plaintiffs brought suit against companies in the health care industry. The principles espoused in those cases make it clear that the Plaintiffs' injuries did not result from consumer oriented conduct. For example, in *New York University v. Continental Insurance Company*, the New York Court of Appeals denied a Section 349 claim brought by a university against its insurer because the contract giving rise to the dispute was heavily negotiated by sophisticated entities, specially tailored to the parties to the litigation, and had

---

[2]The phrase consumers at large, refers to the end-users of a product, or in this case, the New York employees who receive the benefits of the pharmacy plan. *See Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp. 2d 225, 240 (N.D.N.Y. 2005).

a multi-million dollar policy limit. 662 N.E.2d 763 (N.Y. 1995). And in *In re Rezulin Products Liability Litigation*, sponsors of group health benefit plans brought suit against a drug manufacturer for making misrepresentations as to efficacy of its product. 390 F. Supp. 2d 319 (S.D.N.Y. 2005). In denying the plaintiff's claim under Section 349, the court noted that the representations made to the health benefit plan were intended solely for the plan, not for the end users of the drug. Because a sophisticated business entity acted in an intermediary role, the potential that parties in an inferior bargaining position would be deceived was reduced. *Id.* at 338. To the contrary, in *Greenspan, M.D. v. Allstate Insurance Co.*, the Southern District of New York allowed a claim by healthcare providers against a large insurance company. 937 F. Supp. 288 (S.D.N.Y. 1996). The *Greenspan* court noted that a detrimental effect on health care providers alone would not create a cause of action under Section 349. But because the defendant's actions "deliberately erect[ed] barriers to reimbursement and ... affect[ed] the ability of accident victims to obtain medical treatment," the company thwarted the purpose of no-fault insurance law and injured the public interest. *Id.* at 294.

In sum, Section 349 was "intended to empower consumers to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 744 (N.Y. App. Div. 1995). "[T]ransactions involving complex arrangements, knowledgeable and experienced parties and large sums of money ... are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices." *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984). The State

engaged in such complex negotiations when entering into the PBM contracts. Accordingly, Plaintiffs cannot maintain a cause of action under Section 349.[3]


## VII.    Breach of Contract


ESI next requests that the Court dismiss Plaintiffs' breach of contract claim because the Plaintiffs are not entitled to enforce the contract. The sole support for ESI's arguments is found within two contracts attached as exhibits to ESI's Motion to Dismiss. However, neither of these contracts were attached to the Complaint. Accordingly, Plaintiffs argue that these documents are not appropriate for consideration.

---

[3]For further caselaw, compare *Securitron Magnalock Corp. v. Shnabolk*, 65 F.3d 256 (2d Cir. 1995) (lock equipment manufacturer's actions affected public interest because it gave false information to a regulatory agency concerned with public safety and reported non-existent dangers*), USAlliance Federal Credit Union v. CUMIS Insurance Society, Inc.*, 346 F. Supp. 2d 468, 472 (S.D.N.Y. 2004) (disputes between policy holders and insurance companies actionable where there exists "a claim settlement policy designed to deceive certain categories of policy holders"), *Weight Watchers International, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1285 (S.D.N.Y. 1990) (false advertising involving diet and food clearly involves a public harm), and *Vitabiotics Ltd. v. Krupka*, 606 F. Supp. 779 (E.D.N.Y. 1984) (public harm where vitamins contained unlawful substances and packaging was exact copy of competitors mark and trade dress), with *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28 (E.D.N.Y. 2006) (physician could not maintain a cause of action against manufacturer of breast implants because gravamen of complaint asserted personal, not public, harm), *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y.2003) (trademark infringement plaintiff could not bring § 349 action because "core harm" is to another business and not consumers, despite consumers' purchase of counterfeit goods), *Pfizer, Inc. v. Stryker Corp.*, No. 02-8613, 2003 WL 21660339, at *4 (S.D.N.Y. July15, 2003) ("Although consumers eventually stood to be affected by any defects in the product at issue, the questions whether [seller] told [buyer] the truth when it represented that the business was in compliance with law and whether it intended to comply with its notice and related obligations are essentially private matters."), and *Weiss v. Polymer Plastics Corp.*, 802 N.Y.S.2d 174 (N.Y. App. Div. 2005) (a sophisticated business entity acting as an intermediary between defendant and end-users goes against finding "consumer-oriented" conduct under Section 349).

Pursuant to the Federal Rules of Civil Procedure, if a defendant files a motion to dismiss for failure to state a claim and relies on matters outside the pleadings, the Court must either exclude this information from consideration or convert the motion to one for summary judgment and allow the parties a reasonable opportunity to present all pertinent information. Fed. R. Civ. P. 12(b). As the Court is not converting this to a summary judgment motion, it must decide whether these documents can be properly considered as part and parcel of the motion to dismiss. Without these documents, ESI's arguments lack sufficient basis to merit the Court's consideration.

When considering a motion to dismiss, a court may consider any allegations made in the complaint along with any documents attached to the complaint. *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007). A court may also consider materials that are part of the public record, such as court filings, or materials that do not contradict the complaint. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). "Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). For such documents to be considered, they must be undisputed. *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003).

In this case, Plaintiffs claim that "what documents are operative and constitute the agreement(s) of the parties is disputed and will require significant discovery to ascertain." Pls' Obj. at 5. ESI complains that Plaintiffs' assertion strains credibility. Nonetheless, the Court cannot make this determination when deciding a motion to dismiss. If and when ESI files a motion for summary

judgment, the Court will consider all documents, including the proffered contracts.  However, the Court cannot do so at this time.  Accordingly, Plaintiffs' breach of contract claim remains viable.

## VIII.    New York Public Health Law

Under Section 18(6) of the New York Public Health Law, "[w]henever a health care provider ... discloses patient information to a person or entity other than the subject of such information or to other qualified persons," that information "should be kept confidential by the party receiving such information and the limitations on such disclosure in this section shall apply to such party."[4] Plaintiffs' Complaint does not allege that ESI received patient information from a health care provider.  Accordingly, ESI seeks a dismissal of this count.  Plaintiffs concede that they failed to expressly plead this element of their claim, but believe it was merely a "technical omission."  Plaintiffs argue that a reasonable inference can be drawn from the facts stated to show that ESI received such information from a health care provider.  Specifically, Plaintiffs posit:

> It is common knowledge that prescriptions are written - and must be written - by physicians who clearly fall in the definition of "healthcare provider."  Hence, when Plaintiffs allege that "ESI acquires information about Plaintiffs and Class Members, which information is an asset of Plaintiffs and Class Members ... [and] sells such information to drug manufacturers and others without their knowledge or consent" it is inherently understood that such information came from a healthcare provider.

Pls' Mem. in Opp. at 18-19.

---

[4]"Health care provider" means a "health care facility" or a "health care practitioner."  N.Y. Public Health Law § 18(1)(b).  The term "health care facility"encompasses hospitals, home care services agencies, hospices, health maintenance organizations, and shared health facilities.  N.Y. Public Health Law § 18(1)(c).  And the term "health care practitioner" covers various professionals engaged in business of health care, such as physicians, nurses, and social workers. N.Y. Public Health Law § 18(1)(d).

Following the clear and indisputable language of Section 18(6), a plaintiff must allege that a defendant received information from a health care provider. Despite Plaintiffs' arguments regarding common knowledge and technical omissions, the Court fails to find sufficient facts in the Complaint to support Plaintiffs' proffered inference. Accordingly, Plaintiffs' claim under Section 18(6) of the New York Public Health Law will be dismissed for failure to state a claim.

## IX.    Negligence Claim

In Count V of their Complaint, Plaintiffs claim that ESI negligently failed to maintain the confidentiality of Plaintiffs' medical information and negligently failed to use their best efforts to reduce Plaintiffs' pharmaceutical costs. ESI seeks a dismissal of both negligence claims, arguing that Plaintiffs did not state a cause of action as to the former and that the latter is duplicative of Plaintiffs' contract claim. For the reasons stated below, Plaintiffs' negligence claims will be dismissed in part.

### A.    Negligent Disclosure of Confidential Information

To state a claim for negligence, a plaintiffs must demonstrate: (1) a duty owed to plaintiff; (2) breach of that duty; and (3) an injury proximately caused by the breach. *Solomon v. City of New York*, 489 N.E.2d 1294 (N.Y. 1985). ESI argues that Plaintiffs failed to properly plead harm or causation. Upon review of Plaintiffs' Complaint, ESI arguments ring true. While Plaintiffs' adequately plead duty and breach, they did not properly allege harm or causation.

A plain reading of the Complaint would lead the Court to find a harm stated in Paragraphs 35(e) and 76. In the former, Plaintiffs allege that:

> ESI acquires information about Plaintiffs and Class Members, which information is an asset of Plaintiffs and Class Members. Nevertheless, ESI sells such information to drug manufacturers and other without their knowledge or consent. In doing so, ESI converts said asset to its own use, and fails to return to Plaintiffs and Class Members, the revenue derived from such data sales.

Amended Compl., at ¶ 35(e). And in the latter, Plaintiffs claim that their personal information is being used for "improper purposes, including but not limited to, promulgation of the drug switching programs described herein." *Id.* at ¶ 76.[5] From this, it would appear that ESI failed to pass on profits from the sale of Plaintiffs' confidential information and used this confidential information to increase the cost of drugs through the drug switching program, thereby causing increased health care costs. However, Plaintiffs' Memorandum disputes this interpretation.

Despite the recitations in the Complaint, Plaintiffs assert that they "do not connect the negligent disclosure with higher premiums and copays.... Rather, the primary relief Plaintiffs seek for their privacy violations is an injunction to halt the current violations." Pl's Mem. in Opp., at p. 19 (internal quotations excluded). Thus, between Plaintiffs' Complaint and Memorandum, the sole allegation of harm is found in this conclusory statement: "As a result of Defendants' breaches of these duties, Plaintiffs and Class Members have been damaged in an amount to be determined at trial." Amended Compl., at ¶ 79. This is insufficient. A plaintiff cannot maintain a cause of action for

---

[5]According to Plaintiffs' allegations, ESI obtains "kickbacks from drug manufacturers in exchange for their designation of specific drugs on the Plan's formularies or other preferred medication lists, and encourage[s] 'switching' to drugs manufactured or sold by companies from which ESI obtains kickbacks or with which ESI has favorable contractual agreements." Amended Compl., at ¶ 8(d). As a result of this switching, ESI generates increased profits and increases Plaintiffs' cost of health care, including additional fees and co-payments. *Id.*

negligence without specifying how the defendant's actions caused an identifiable harm. *Compare Jones v. Commerce Bancorp, Inc.*, No. 06-835, 2006 WL 1409492, at *2 (S.D.N.Y. May 23, 2006) (denying motion to dismiss on negligent disclosure of confidential information, finding that plaintiff sufficiently alleged a financial harm), *with Jones v. Commerce Bank, N.A.*, No. 06-835, 2007 WL 672091, at *3-4 (S.D.N.Y. Mar. 6, 2007) (granting summary judgment against plaintiff in same case and on same claim when plaintiff had presented no evidence to support her allegations of harm). Accordingly, Plaintiffs failed to state a claim for negligent disclosure of confidential information.

B.      Negligent Failure to Reduce Health Care Costs

As previously stated, a negligence claim under New York law requires a plaintiff to establish a duty owed, a breach of that duty, and an injury caused by the breach. This duty must exist independent of the contract. Where there is no source of a duty outside of that created by contract, no negligence claim will lie. *See Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 505-06 (S.D.N.Y. 2007). ESI argues that both the negligence and breach of contract claims contain similar language and bases, and that the negligence claim is duplicative.[6] However, the Court has concluded that the Plaintiffs' fiduciary duty claims remain viable. Accordingly, "a duty on the part of [ESI] beyond the scope of the agreement has been alleged." *Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 80-81 (N.Y. App. Div. 2005).

X.      **Negligent Misrepresentation**

---

[6]ESI makes further arguments based on the language of the 1999 DCS/CIGNA contract. As previously discussed, these documents cannot be considered at this time.

ESI next requests that the Court dismiss Plaintiffs' negligent misrepresentation claims for failure to comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[7]  Under this rule, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  To properly recite the circumstances, a plaintiff must include information as to the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."  *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982).  Stated more succinctly, a plaintiff must identify the "who, what, where, when, and how" surrounding the misrepresentation.  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotations omitted).[8]  "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Commercial Prop. Invs., Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

Although Plaintiffs' Complaint does more than make "conclusory allegations," it is not sufficiently detailed to satisfy Rule 9(b).  Plaintiffs recite statements allegedly made by ESI, adequately describing the contents of the false representations.  However, the Complaint does not specify when and where the representations were made, only noting that the representations were made during "contract negotiations, on [ESI's] website and in marketing and promotional materials."

---

[7]Plaintiffs do not dispute that Rule 9(b) is applicable to claims of negligent misrepresentation.

[8]As this Complaint was originally filed in New York, it is relevant to note that our Circuit's interpretation of the 9(b) pleading requirements is identical to that of the Second Circuit.  *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989) (a complaint must "give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements").

As to the "who" question, Plaintiffs failed to identify who at ESI made the alleged misrepresentations, which marketing materials contain the alleged misrepresentations, or which of Plaintiffs' representatives received the alleged misrepresentations. In essence, there is nothing in the Complaint that identifies the source of misrepresentations such that ESI might properly prepare its case. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001); *Mattingly v. Medtronic, Inc.*, 466 F. Supp. 2d 1170 (E.D. Mo. 2006); *United States ex rel. Schuhardt v. Washington Univ.*, 228 F. Supp. 2d 1018, 1034 (E.D. Mo. 2002); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 987 (E.D. Mo. 1999).

Even without the heightened pleading requirements of Rule 9(b), Plaintiffs' claim would still fail. Under New York law, a plaintiff must show that: (1) there was a special relationship imposing a duty on the defendant to provide correct information; (2) the defendant knowingly or carelessly imparted false information with the expectation that the plaintiff would rely on these statements for a serious purpose; (3) the plaintiff acted in reasonable reliance; and (4) as a result, the plaintiff suffered a harm. *Dallas Aerospace, Inc. v. CIS AIR Corp.*, 352 F.3d 775, 788 (2d Cir. 2003); *Hydro Investors, Inc. v. Trafalgar Power* Inc., 227 F.3d 8, 20 (2d Cir. 2000); *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585 (N.Y. 2007). In its memoranda, ESI questioned whether Plaintiffs actually took action in reliance on ESI's representations and whether Plaintiffs properly plead damages. As to the first issue, ESI argued that the State of New York chose ESI as its PBM manager, not the Plaintiffs. Thus, the State may have acted in reliance on certain representations, but the Plaintiffs took no action. And on the second issue, ESI argued that Plaintiffs failed to properly plead damages because they did not allege that another PBM would have provided Plaintiffs with lower premiums and co-payments than those of ESI.

Plaintiffs made little effort to address these well plead arguments, pointing only to Sections 82 and 86 of their Complaint in response. Section 82 states: "Plaintiffs and Class Members were known parties whose representatives relied on the statements made by ESI in furtherance of inducing the award of the contract," and Section 86 states: "As a result of ESI's negligent misrepresentations, Plaintiffs and Class Members have been damaged in an amount to be determined at trial." However, neither of these Sections, nor any other portion of Plaintiffs' Complaint, state that Plaintiffs acted to their detriment in reliance on ESI's representations. ESI's representations may have induced the State of New York to choose ESI as its PBM, but this is insufficient to support Plaintiffs' claim for negligent misrepresentation. The Complaint does not allege, and the Court can find no basis to infer, that Plaintiffs acted or refrained from acting as a result of ESI's representations. Because the Court finds that Plaintiffs have failed to allege reliance, it need not address the issue of damages. Plaintiffs failed to state a cause of action for negligent misrepresentation.

## XI.     Unjust Enrichment

Count VII of Plaintiffs' Complaint seeks to recover for unjust enrichment. ESI requests dismissal of this count because "[a] written contract covering the subject matter of a dispute precludes recovery in quasi-contract whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *AdiPar Ltd. v. PLD Int'l Corp.*, No. 01-765, 2002 WL 31740622, at *12 (S.D.N.Y. Dec. 6, 2002). Under New York law, if a contract does not expressly govern the dispute at issue, the plaintiff may proceed under theories of quantum meruit and breach of contract concurrently. The plaintiff need not choose between the two remedies. *Joseph Sternberg, Inc. v. Walber 36th Street Assocs.*, 594 N.Y.S.2d 144, 146 (N.Y. App. Div. 1993);

*Smith v. Kirkpatrick*, 111 N.E.2d 209, 213 (N.Y. 1953) (overruled on other grounds). However, as stated above, the relevant contracts are not yet before the Court. Accordingly, the Court cannot yet determine whether or not a contract supercedes this claim.

## XII. Leave to Amend

Lastly, Plaintiffs requested leave to file an amended complaint if the Court found that they had failed to properly plead any claims. This cause of action has been ongoing for several years, and Plaintiffs have had ample opportunity to amend their Complaint. Plaintiffs' request is denied.

## CONCLUSION

ESI's motion to dismiss will be granted in part and denied in part. Plaintiffs' claims under the New York Consumer Protection Act and New York Public Health Law, as well as their claims for negligent disclosure of confidential information and negligent misrepresentation are dismissed for the reasons stated above. Plaintiffs' claims for breach of fiduciary duty, breach of contract, negligent failure to reduce health care costs, and unjust enrichment remain viable.

Accordingly,

**IT IS HEREBY ORDERED** that ESI's Motion to Dismiss (No. 64) be and is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Counts II, IV, and VI of Plaintiffs' Amended Complaint be **DISMISSED** in their entirety. Count V of Plaintiffs' Amended Complaint is **DISMISSED** in part in accordance with this Order.

Dated this 20th day of June, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE