**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re EXPRESS SCRIPTS, INC., PBM LITIGATION | Master Case No. 4:05-md-01672-SNL |
| This Document Relates to: ESI-ERISA Track Cases Only | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs respectfully submit this Memorandum and the accompanying Response to

Defendant's Statement of Undisputed Facts in opposition to Defendant's motion for partial

summary judgment filed December 18, 2009 (MDL Doc. No. 379).[1] ESI's motion, and this

opposition to that motion, relate to the nine ESI-ERISA Track cases only.

**I.     SUMMARY OF ARGUMENT**

Weaving together two isolated prior rulings by Judge Limbaugh, defendant Express

Scripts, Inc. ("ESI") invites this Court to rule that ESI enjoys immunity for overcharging ERISA

plans for the cost of prescription drugs.  First, focusing on Judge Limbaugh's summary judgment

ruling that ESI was not an ERISA fiduciary in its relationship with The Goodyear Tire & Rubber

Company Prescription Drug Plan ("Goodyear Plan"), ESI argues that none of the remaining eight

ERISA plaintiffs (a mix of plan trustees and plan participants) should be afforded an opportunity

to establish that ESI is an ERISA fiduciary in its specific relationship with that plaintiff's

prescription drug benefit plan.  Second, relying on *dicta* in Judge Limbaugh's prior ruling on a

---

1     On January 11, 2010, the parties submitted a Joint Motion to Set Briefing Schedule for Defendants' Motion for
Partial Summary Judgment (ESI-ERISA Track) (Doc. No. 384) that proposed to set the deadline for Plaintiffs'
opposition to February 26, 2010.

motion to dismiss in a case that now resides outside this ESI ERISA Track, ESI contends that ERISA preempts all Plaintiffs' state law claims, including claims for breach of contract (*e.g.*, charging the plans more than the specific price set forth in each plan's contract with ESI).

In essence, ESI contends that two prior rulings in two separate cases involving other parties and different contracts provide ESI with a complete defense to liability for any and all contract breaches and/or related overcharges for prescription drugs.[2]  Plaintiffs respectfully request that the Court deny ESI's motion on the following three grounds:

1. Judge Limbaugh's summary judgment ruling in *Minshew, on behalf of the Goodyear Tire and Rubber Company Prescription Drug Plan v. ESI, Case No. 4:02-cv-1503-HEA* is limited to the specific terms of the Goodyear-ESI contracts and does not bar any other plaintiff from pursuing ERISA claims against ESI.  Indeed, in denying class certification, Judge Limbaugh expressly stated that contract language that differs from that found in the Goodyear-ESI contract "may compel different results" regarding ESI's status as an ERISA fiduciary.

2. In the alternative, in the event that Judge Limbaugh's ruling in *Minshew* bars Plaintiffs from pursuing ERISA claims against ESI, ERISA does not preempt state law claims against ESI in its non-fiduciary capacity as a service provider under written contracts with ERISA plans.  Indeed, ESI itself often asserts state law claims when seeking payments from its ERISA plan clients, including payments from two of the named plaintiffs and their ERISA plans at issue here.

3. The Plan Trustee plaintiffs properly have pleaded breach of contract claims against ESI, and there is no good reason to deny them or the plan participants leave to amend to cure any pleading defect.

---

2    As noted by ESI, Judge Limbaugh found that ESI was an ERISA fiduciary in managing a drug-switching program call OptiMed on behalf of the Goodyear Plan.  Here, ESI seeks complete immunity for all other conduct with respect to all other ERISA plaintiffs and/or their respective plans.

Given the complexities of addressing the nine separate contractual relationships at issue and the significant ramifications of an adverse ruling (*i.e.*, plaintiffs would be left with no remedy for being overcharged by ESI for the cost of prescription drugs), Plaintiffs respectfully request oral argument.

## II.    HISTORY OF PROCEEDINGS IN THE ESI-ERISA TRACK

### A.    Overview of this MDL

This MDL is not typical.  While most involve one collection of cases or "tracks," this MDL involves five:  (1) the Fidelity Track; (2) the ESI-ERISA Track; (3) the ESI-Non ERISA Track; (4) the NPA-ERISA Track; and (5) the NPA-Non ERISA Track.[3]  As the names suggest, each track involves its own set of cases that are based on the status of each named plaintiff's prescription drug benefit plan (governed by ERISA or not governed by ERISA) and whether that plan and/or its sponsors contracted with ESI or one of ESI's acquisitions, National Prescription Administrators, Inc. ("NPA").[4]  The present motion involves the ESI-ERISA Track only.

### B.    Procedural Posture of the ESI-ERISA Track

The ESI-ERISA Track consists of nine separate cases.  In seeking to deny Plaintiffs (and their ERISA plans) the opportunity to seek recoveries for prescription drug overcharges, ESI fails to mention the procedural posture of the ERISA Track in general and the posture of each

---

3    *See generally* Joint MDL Status report and Proposed Scheduling Order dated October 2, 2009 (MDL Doc. No. 366) (defining five tracks and proposing separate schedules for each one).

4    ESI acquired NPA in April, 2002.  For those cases assigned to the NPA tracks, each plaintiff's plan contracted with NPA, not ESI, though ESI may have continued to provide services under the NPA contracts post-acquisition. Joint MDL Status Report dated October 2, 2009 (MDL Doc. No. 366) at 13-16.

individual case within that track.  Because that procedural posture is relevant to the Court's

analysis of the pending motion, a brief summary follows.

> 1.    *Pre-MDL Proceedings*

These proceedings began in December, 2001 when Gerald Minshew filed a lawsuit

against ESI in federal court in Arizona.  Mr. Minshew, in his capacity as an ERISA plan

participant, asserted ERISA breach of fiduciary duty claims against ESI on behalf of the

Goodyear Plan.  The case was transferred to this Court in September, 2002, and a year later two

additional lawsuits were filed in this court by plan participants on behalf of their respective

ERISA plans:  (1) *Mixon/Clay (on behalf of the Eaton Corporation Health and Welfare Plan) v.*

*ESI*; and (2) *Cameron (on behalf of the SEI Information Technology Employee Benefit Plan) v.*

*ESI.*  By Order dated August 30, 2004 (Doc. No.44), Judge Limbaugh consolidated these three

"plan participant" cases for coordinated proceedings in this Court.[5]

> 2.    *The MDL Transfer Order*

By Order dated April 29, 2005, the Multi-District Litigation Panel ordered the transfer

and consolidation of eight federal court cases challenging ESI's conduct in providing services as

a pharmacy benefit manager ("PBM"), including the three plan participant cases noted above.  In

addition, the MDL Order identified four additional cases that were transferred to this Court as

tag-a-long actions shortly after the MDL order, including *Brown et al (on behalf of the 1199 New*

*England Welfare and Benefit Plan) v. ESI* ("1199 NEHC").  Upon arrival in this court, all twelve

cases were consolidated and coordinated for pre-trial purposes under Judge Limbaugh's Case

---

5    That order eventually was superseded by the Court's CMO entered after the MDL transfer.  CMO dated August
19, 2005 (Doc. No. 78) at 1.

Management Order dated August 19, 2005 (MDL Doc. No. 78).  Since that time, numerous

additional lawsuits were filed and assigned to this MDL.  Five of those cases currently reside in

the ESI-ERISA Track.

At no time during this MDL has ESI requested or has the Court required that Plaintiffs

file a consolidated or master complaint in the ESI-ERISA Track.  Thus, each ESI-ERISA case

has at all times preceded based on the specific allegations in each individual complaint.

### C.    Judge Limbaugh's Ruling on Class Certification

In December, 2005, plaintiffs Minshew (Goodyear) and Brown (1199 NEHC) filed a

motion to certify five separate classes in the ESI-ERISA Track.  In opposing that motion, ESI

emphasized that each ERISA Track case involves "highly individualized" facts that bar

certification of any class:

> Because of the highly individualized nature of the negotiations and
> resulting contractual relationships between ESI and each self-
> funded ERISA plan, it is impossible to establish plaintiffs' ERISA
> fiduciary duty claims on a class-wide basis.[6]

Judge Limbaugh agreed, and by Order dated July 30, 2008 denied Plaintiffs' motion for class

certification.  In doing so, Judge Limbaugh emphasized the highly individualized nature of the

contractual relationships at issue:

> Defendants rightly assert that the putative class members compose
> a potentially massive and heterogeneous body.  Specifically, each
> of the proposed member plans received services from one (or
> more) of the three different PBMs, i.e., ESI, and its acquisitions,
> Diversified Pharmaceutical Services and ValueRx.  Plaintiffs
> assume, without proving, that the provider contracts, and the
> services offered and provided there under, were substantially

---

6    ESI Memorandum in Opposition to Plaintiffs' Second Amended Motion for Class Certification dated August 31,
2006 (MDL Doc. No. 160, under seal) at 18 (emphasis in original).

> similar.  The parties' contracts, i.e., the language used and services
> for which the parties were contracting, belie this conclusion.
> The majority of Plaintiffs' "common questions" presume ESI's
> status as an ERISA fiduciary when taking the actions subject to
> complaint.  However, status as an ERISA fiduciary entails a
> functional, and thus, subjective analysis.  Therefore, to ascertain
> the existence of discretion and control (and, in turn, fiduciary
> duty), the Court must, as it has tirelessly done today, comb through
> and interpret the parties' bargains on an individualized basis.
> While unduly burdensome, this exercise has proven inescapable.

July 30, 2008 Order (MDL Doc. No.332), reported at *In re Express Scripts, Inc., PBM Litigation*,

2008 WL 2952787 *19 (E.D. Mo. July 30, 2008), *motion for reconsideration denied* (Doc. Text

Order dated September 18, 2008).

## III.  THE NINE ERISA TRACK CASES INVOLVE NINE SEPARATE CONTRACTUAL RELATIONSHIPS BETWEEN ESI AND SELF-FUNDED ERISA PLANS.

Given Judge Limbaugh's denial of class certification and his reasoning for doing so, it is

surprising that ESI would now try to unravel that ruling and have this court disregard the specific

contractual relationships at issue in the nine ERISA Track cases.  While ESI contends that the

cases are "copycat" cases, ESI provides no proof that each one involves identical facts.

Conspicuously absent from ESI's motion is any proof regarding the specific contractual

relationships at issue, the similarity of the negotiations conducted by the various contracting

parties and/or the commonality of the "distinct terminology" found in the relevant contracts.

Indeed, ESI fails to attach to its motion any of the relevant contracts.  Because it has failed to

meet its burden as the party moving for summary judgment, ESI's motion must fail.[7]

Nonetheless, mindful of Judge Limbaugh's emphasis on the "inescapable" need to look at the specifics of each individual case, Plaintiffs briefly review each of the nine ERISA Track cases.  For the sake of clarity, Plaintiffs separate the cases into two basic categories: (1) plan participant cases; and (2) plan trustee cases.

**A.   The Three Plan Participant Cases Involve Three Separate Contractual Relationships.**

The ESI-ERISA Track currently consists of the original plan participant cases that were pending in this court prior to the MDL transfer order.  As explained below, since the MDL transfer, only one of those plan participant cases, *Minshew*, has been subject to cross motions for summary judgment regarding ESI's status as an ERISA fiduciary.

*1.   Minshew, on behalf of the Goodyear Tire and Rubber Company Prescription Drug Plan v. ESI, Case No. 4:02-cv-1503-HEA.*

The Goodyear Plan is a self-funded employee benefit plan based in Akron, OH. Approximately 160,000 plan participants receive prescription drug benefits under the Goodyear Plan.  From 1999 to 2006, ESI provided PBM services to the Goodyear plan and its participants under the terms of contracts between Goodyear and ESI.  During that seven year period,

---

7   "Summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy."  *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1014 (E.D. Mo.) (Limbaugh, J.), *aff'd*, 315 F.3d 863 (8th Cir. 2002).  The Court must "review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts."  *Id*.  "[A]ll conflicts of evidence" must be drawn "in favor of the nonmoving party."  *Id.* The usual rule is that, in responding to a motion for summary judgment, the adverse party cannot rest upon the mere allegations or denials in its pleadings, but must set forth specific facts showing there is a genuine issue for trial. However, if the moving party fails to first meet its burden of proof, "[s]ummary judgment must be denied even if no opposing evidentiary matter is presented if a genuine issue of material fact remains."  *Heath v. John Morrell & Co.*, 768 F.2d 245, 249 (8th Cir. 1985).  Here, ESI ignores its burden by making no effort to show that the relevant contracts contain the same distinct terms that provided the basis for Judge Limbaugh's fact specific legal findings in *Minshew*.

Goodyear paid ESI over $400 million for prescription drugs dispensed to Goodyear plan participants.[8]

On December 12, 2001, plan participant Gerald Minshew sued ESI in the District of Arizona on behalf of the Goodyear Plan.  After transfer to this court in September, 2002, the parties engaged in extensive discovery for three years.  On December 20, 2004, Minshew filed a motion for partial summary judgment regarding ESI's status as an ERISA fiduciary in its relationship with the Goodyear Plan.  (MDL Doc. No. 343, under seal).  Three years later, ESI filed a cross motion for summary judgment that it was not an ERISA fiduciary in its relationship with the Goodyear Plan.  (MDL Doc. No. 285, under seal).  In doing so, ESI represented to the Court, via the case caption, that its motion was limited to *Minshew*.

In its Order granting in part and denying in part the cross motions for summary judgment, the Court initially found that Minshew and his fellow plan participants were the intended third-party beneficiaries of the Goodyear-ESI contracts:

> It is uncontroverted that Goodyear Tire (the promisee) contracted with ESI (the promissor) for the benefit (i.e. cost-savings) of its employees (participants in the Goodyear Plan).  While parties to a contract may generally agree to limit their rights, including those belonging to third-party beneficiaries, a disclaimer may be disregarded where it conflicts with the contract's fundamental purpose.
>
> Applied to the instant facts, it is apparent that the *fundamental purpose* of the Goodyear Contract(s) was to provide benefits to participants of the Goodyear Plan.

---

8    Plaintiffs' Supplemental MDL Status Report filed 9/11/2008 (Doc. No. 346) at Exh. 1, filed under seal (chart summarizing ESI client account histories and estimating each client's annual total drug spend) ["Plaintiffs' Case History Chart"].

*In re Express Scripts, Inc.*, 2008 WL 2952787 at *8 (emphasis original) (internal citations, quotations and footnotes omitted).

Focusing on the express terms of the Goodyear-ESI contracts, Judge Limbaugh proceeded to rule that ESI was not an ERISA fiduciary when in engaging in four of five practices at issue. *Id*. at *8-14.  Since that ruling, the parties agreed to stay discovery pending the outcome of ESI's present motion for partial summary judgment.

2. *Cameron, on behalf of the SEI Information Technology Employee Benefit Plan v. ESI, Case No. 4:03-cv-001520-HEA*

The SEI Plan is a self-funded employee benefit plan based in Oak Brook, Illinois. Approximately 1,000 plan participants receive prescription drug benefits under the SEI Plan. From 1999 to 2004 ESI provided PBM services to the SEI Plan under the terms of a series of contracts between ESI and third-party administrator Gallagher Benefit Administrators, Inc. During that five year period, SEI paid ESI over $1 million for prescription drugs dispensed to SEI plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346, Exh. 1; Under Seal).

On October 23, 2003, plan participant Karen Cameron sued ESI in this Court on behalf of the SEI Plan.  By Order dated July 15, 2004 (Doc. No. 40), Judge Limbaugh denied ESI's motion to dismiss, finding that, *inter alia*, Ms. Cameron's lawsuit was not subject to the requirements of Rule 23.1 of the Federal Rules of Civil Procedure.  *Id*. at *6-*9.  In doing so, Judge Limbaugh recognized ESI's status as an ERISA fiduciary:

> In the case at bench, ESI had a fiduciary duty that runs directly to The Plan, and by extension directly to Cameron as one of its beneficiaries.

9

*Id*. at *7.  Since that time, this case has been in holding pattern with minimal discovery pending

Judge Limbaugh's ruling on class certification.  Most recently, Plaintiff Cameron agreed to stay

discovery pending the outcome of ESI's current motion.

> 3.      *Mixon/Clay on behalf of the Eaton Corporation Health and Welfare Plan,*
> *and on behalf of themselves and all similarly situated participants and*
> *beneficiaries v. ESI, Case No. 4:03-cv-001519-HEA.*

The Eaton Corporation Health and Welfare Plan is a self-funded employee benefit plan

based in Cleveland, OH.  Approximately 50,000 plan participants receive prescription drug

benefits under the Eaton Plan.  From the mid 1990's to 2008 ESI provided PBM services to the

Eaton under the terms of a series of contracts between Eaton and ESI and its acquisition,

ValueRx.  During that ten plus year period, Eaton paid ESI over $200 million for prescription

drugs dispensed to Eaton plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346,

Exh. 1).

On October 23, 2003, plan participants Richard Mixon and Sam Clay sued ESI in this

Court on behalf of the Eaton Plan.  In addition, Mixon and Clay sued ESI on behalf of

themselves and all similarly situated plan participants who had percentage-based prescription

drug copayments under those plans that contracted with ESI for PBM services.  By Order dated

October 20, 2004, Judge Limbaugh denied ESI's motion to dismiss finding, *inter alia*, that

Mixon and Clay's lawsuit was not subject to the requirements of Rule 23.1 of the Federal Rules

of Civil Procedure.  In doing so, Judge Limbaugh adopted his order on the same issue in

*Cameron*.  (Doc. No. 45).  Since that time, this case has been in a holding pattern with minimal

discovery pending Judge Limbaugh's ruling on class certification.  Most recently, Plaintiffs

Mixon and Clay agreed to stay discovery pending the outcome of ESI's current motion.

**B.       The Six Plan Trustee Cases Involve Six Separate Contractual Relationships.**

The ESI-ERISA Track currently consists of six cases filed by union plan trustees on

behalf of their respective Taft-Hartley funds.

       1.       *1199 New England Health Care Employees Welfare Fund (Brown) v. ESI,*
           *Case No. 4:05-cv-0181-HEA.*

1199 NEHC is a Taft-Hartley Fund based in Hartford, CT.  Approximately 7,000 plan

participants receive prescription drug benefits under the 1199 NEHC Plan.  From 1992 to 2004,

ESI provided PBM services to the 1199 NEHC Plan pursuant to the terms of three successive

contracts entitled:  (1) Express Scripts, Inc. Managed Mail Services Prescription Drug Program

Agreement ("1992 NEHC/ESI Agreement"); (2) Express Scripts, Inc. Amended and Restated

Managed Prescription Drug Program Agreement ("1996 NEHC/ESI Agreement"); and (3) First

Addendum to Express Scripts, Inc. Managed Prescription Drug Program Agreement ("1999

NEHC/ESI Addendum").  ESI Answer (No. 3:04-cv-1822-AWT, D. Conn., .Doc. No. 57), at ¶¶

6.  During this twelve-year period, 1199 NEHC paid ESI over $20 million for prescription drugs

dispensed to 1199 NEHC plan participants.  Plaintiffs' Case History (MDL Doc. No. 346, Exh.

1).

In 2004, an audit revealed that ESI overcharged NEHC for prescription drugs during the

one-year period covered by the audit.  Through its trustees, NEHC subsequently sued ESI in the

District of Connecticut, alleging both ERISA claims and, in the alternative, state statutory and

common law claims, including breach of contract.  (*Brown v. Express Scripts, Inc.*, No. 3:04-cv-

1822-AWT, D. Conn. April 14, 2005, Doc. No. 1).  ESI moved to dismiss 1199 NEHC's state

statutory claim, which the Court granted *without* prejudice.  (*Id.* at Doc. No. 50).  ESI then filed

11

its answer and state common law counterclaims for money had and received and unjust enrichment.  (*Id.* at Doc. No. 57).

As noted above, in 2005 this case was transferred to this MDL as a tag-a-long action and assigned to the ESI-ERISA Track.  In December, 2005, the named trustee plaintiffs joined in the motion for class certification, seeking to serve as class representatives in four of the five proposed classes.  The trustees did not, however, join in the motion for summary judgment filed in *Minshew*.  That dispositive motion expressly was limited to the ESI's relationship with the Goodyear Plan and its participants.

After Judge Limbaugh denied class certification, the named trustee plaintiffs filed a Suggestion for Remand, asking that this court suggest (to the MDL Panel) the remand of this case to the District of Connecticut.  That motion was fully briefed as of June 2009 and awaits this Court's ruling.[9]

2.      *Washington Wholesalers Health and Welfare Fund (Habermehl) v. ESI, Case No. 4:06-cv-01007-HEA*

The Washington Wholesalers Health and Welfare Fund is a Taft-Hartley Fund based in Beltsville, MD.  Approximately 1,500 plan participants receive prescription drug benefits under the Washington Wholesalers Plan.  From 1994 to 2003, ESI and/or its predecessors provided PBM services to the Plan and its participants under various agreements with a coalition of health and welfare trust funds called Healthcare Cost Containment Corporation of the Mid-Atlantic

---

9   Because 1199 NEHC's Suggestion for Remand concerns the jurisdiction of this court, the court should first rule on the motion before addressing ESI's partial summary judgment as applied to 1199 NEHC.  *Cf. City of St. Louis, Mo., v. Cernicek*, No. 4:00-CV-1895-CEJ (E.D. Mo. Sept. 25, 2001) (declining to reach merits of the parties' motions to dismiss when the court no longer has jurisdiction over the action).

Region, Inc. ("HCCC").[10]  During that eight-year period, the Washington Wholesalers Fund paid ESI over $4 million for prescription drugs dispensed to plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346, Exh. 1).

On June 30, 2006, the Fund, through its trustees Scott Habermehl and C. James Lowthers, sued ESI in this Court alleging ERISA claims and a separate state common law claim for breach of contract.  (4:06-cv-01007-HEA, Doc. No. 1).  After accepting service of the Complaint, ESI's counsel wrote to the Fund's counsel requesting that the Fund file an amended complaint that:  (1) alleges each cause of action in a separate count; and (2) drops the request for a jury trial.[11]  In response, the Fund filed an amended complaint that dropped the request for a jury trial but did not delineate separate counts for each ERISA claim or the breach of contract claim.  On August 30, 2006, ESI answered the Fund's First Amended Complaint.  (4:06-cv-01007-HEA, Doc. No. 5).  In doing so, ESI pointed to the HCCC-ESI contract, identified three separate invoices for payment that the Fund allegedly failed to pay in full, and alleged three state law counterclaims to recover from the Fund, including a claim for breach of contract.[12]

On September 21, 2006, the Fund answered ESI's common law counter claims.  Since that time, this case has been in a holding pattern with no discovery pending Judge Limbaugh's ruling on class certification and the entry of a revised scheduling order in the aftermath of his

10   ESI Answer and Counterclaim Dated August 30, 2006 (*4:06-cv-01007-HEA*, Doc. No. 5) at ¶¶ 2, p. 9.

11   July 31, 2006 letter from T. Dee to Plaintiffs' counsel.  Copy attached as Exh. 1 to Plaintiffs' Response to ESI Statement of Fact.

12   ESI Answer, Affirmative Defenses and Counter Claims to Plaintiff's First Amended Complaint (4:06-cv-01007-HEA, Doc. No. 5, dated Aug. 30, 2006).

retirement.  Most recently, the Fund agreed to stay discovery pending the outcome of ESI's current motion.

       3.     *Food Employers Labor Relations Associations and United Food and Commercial Workers Health and Welfare Fund (Weiss) v. ESI, Case No. 4:06-cv-01612-HEA*

The FELRA Fund is a Taft-Hartley Fund based in Sparks, MD.  Approximately 50,000 plan participants obtain prescription drug benefits under the terms of the FELRA Plan.  From 1994 to 2004 ESI and/or its predecessors provided PBM services to the FELRA Plan and its participants under various agreements between ESI and HCCCC.  During that ten-year period, FELRA paid ESI over $200 million for prescription drugs dispensed to FELRA plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346, Exh. 1).

On November 6, 2006, FELRA, through its trustees Eric Weissad and C. James Lowthers, sued ESI in this Court alleging ERISA claims and a common law breach of contract claim.  (4:06-cv-01612-HEA, Doc. No. 1).  ESI filed its Answer on January 8, 2007.  Since that time, this case has been in a holding pattern with no discovery pending Judge Limbaugh's ruling on class certification and the entry of a revised scheduling order in the aftermath of his retirement.  Most recently, FELRA agreed to stay discovery pending the outcome of ESI's current motion.

       4.     *United Food and Commercial Workers Unions and Participating Employers Health and Welfare Fund (Lowthers) v. ESI, Case No. 4:06-cv-01541-HEA.*

This UFCW Fund is a Taft-Hartley Fund based in Landover, MD.  Approximately 16,000 plan participants obtain prescription drug benefits under the terms of the UFCW's Plan.  From 1994 to 2005, ESI and/or its predecessors provided PBM services to the UFCW Plan and its

14

participants under various agreements between ESI and HCCCC.  During that eleven-year period, the UFCW Fund paid ESI over $60 million for prescription drugs dispensed to UFCW plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346, Exh. 1).

On October 20, 2006, the UFCW Fund, through its trustees C. James Lowthers and Stephen A. Woods, sued ESI in this Court alleging ERISA claims and a common law breach of contract claim.  (4:06-cv-01541-HEA, Doc. No. 1).  ESI filed its Answer on December 21, 2006. (4:06-cv-01541-HEA, Doc. No. 3).  Since that time, this case has been in a holding pattern with no discovery pending Judge Limbaugh's ruling on class certification and the entry of a revised scheduling order in the aftermath of his retirement.  Most recently, the Fund agreed to stay discovery pending the outcome of ESI's current motion.

> 5.    *United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania (Kessler) v. ESI, Case No. 4:06-cv-01526-HEA.*

This UFCW Fund is a Taft-Hartley Fund based in Pittson, PA.  Approximately 5,000 plan participants obtain prescription drug benefits under the terms of the UFCW's Plan.  From 1998 to 2002 ESI provided PBM services to the UFCW Plan and its participants under the terms of a series of contracts between the Fund and ESI and its acquisition ValueRx.  During that four-year period, this UFCW Plan paid ESI over $6 million for prescription drugs dispensed to plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346, Exh. 1).

On October 17, 2006, the UFCW Fund, through its trustees Michele Kessler and T. J. Valeski, sued ESI in this Court alleging ERISA claims and a common law breach of contract claim.  (4:06-cv-01526-HEA, Doc. No. 1).  ESI filed its Answer on December 19, 2006.  Since that time, this case has been in a holding pattern with no discovery pending Judge Limbaugh's

15

ruling on class certification and the entry of a revised scheduling order in the aftermath of his retirement.  Most recently, the Fund agreed to stay discovery pending the outcome of ESI's current motion.

     6.  *Local 888 Health Fund (Bruny) v. ESI, Case No. 4:06-cv-01611-HEA*

  The Local 888 Health Fund is a Taft-Hartley fund based in Mt. Vernon, NY. Approximately 3,000 plan participants obtain prescription drug benefits under the terms of the Local 888 Plan.  From 2002 to 2005, ESI provided PBM services to the Local 888 Plan and its participants under the terms of a contract between the Fund and ESI.  During that four year period, the Local 888 Plan paid ESI over $3 million for prescription drugs dispensed to plan participants.  Plaintiffs' Case History Chart (MDL Doc. No. 346, Exh. 1).

  On November 6, 2006, the Local 888 Fund, through its trustees Max Bruny and Steven Howard, sued ESI in this Court alleging ERISA claims and a common law breach of contract claim.  (4:06-cv-01611-HEA, Doc. No. 1).  ESI filed its Answer on January 8, 2007.  (4:06-cv-01611-HEA, Doc. No. 3).  Since that time, this case has been in a holding pattern with no discovery pending Judge Limbaugh's ruling on class certification and the entry of a revised scheduling order in the aftermath of his retirement.  Most recently, the Fund agreed to stay discovery pending the outcome of ESI's current motion.

## LEGAL ANALYSIS AND ARGUMENT

**IV.   JUDGE LIMBAUGH'S RULING ON THE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT IN *MINSHEW* DOES NOT BAR THE OTHER ERISA TRACK PLAINTIFFS FROM PURSUING ERISA CLAIMS.**

In seeking summary judgment, ESI states that it "relies solely on the factual and legal findings in Judge Limbaugh's July 30, 2008 Order in *Minshew,* as specifically cited herein, and the Statement of Undisputed Material Facts filed in conjunction with this motion." Def.'s Br at 3 n.1.  In doing so, ESI fails to acknowledge that in his July 30, 2008 Order, Judge Limbaugh also denied class certification in the ESI ERISA Track.  The interplay between Judge Limbaugh's summary judgment and class certification rulings demonstrates that ESI's current motion is baseless.

In relying on Judge Limbaugh's summary judgment ruling in *Minshew*, ESI conveniently ignores the following:

- In asserting cross motions for partial summary judgment, both Minshew and ESI submitted evidence limited to the contractual relationship between Goodyear and ESI. Indeed, in filing its cross motion, ESI expressly advised the court, via the case caption, that its motion pertained to *Minshew* only.

- and -

- In ruling on the cross motions, Judge Limbaugh expressly limited his rulings to the specific terms of the Goodyear-ESI contracts. *See, e.g.*, July 30, 2008 Order at 9 ("The Court will first turn to address the parties' cross-motion for summary judgment, i.e., resolving whether ESI is an ERISA fiduciary under the subject PBM contracts").

17

Simply stated, ESI does not and cannot cite any passage in the July 30, 2008 Order that remotely suggests that Judge Limbaugh intended to bar all ERISA Track plaintiffs from pursuing ERISA claims against ESI.

Indeed, Judge Limbaugh expressly stated that one or more of those plaintiffs could, depending on the terms of their contracts with ESI, establish that ESI was as an ERISA fiduciary. For example, in finding that ESI was not an ERISA fiduciary in setting the MRA prices that Goodyear paid for generic prescription drugs, Judge Limbaugh reasoned that the MRA guarantees in the Goodyear-ESI contracts capped ESI's discretionary authority over MRA prices. *In re Express Scripts, Inc.*, 2008 WL 2952787, at *9 n.9. In denying certification of a MRA (aka MAC) pricing class, however, Judge Limbaugh recognized that ESI could be deemed an ERISA fiduciary if the particular contract at issue did not have any MRA guarantees:

> These [MRA] guarantees effectively curbed ESI's grant of discretion over adjusting MRAs; therefore, the absence of such contractual provisions, e.g., 1999 NEHC/ESI Addendum, may compel different results.

*Id.* at *19. Moreover, in the very next paragraph of his July 30, 2008 opinion, Judge Limbaugh *emphasized* that ESI's status as an ERISA fiduciary rises and falls on the distinct terms of each plan's contract with ESI:

> Accordingly, whether the PBMs were ERISA fiduciaries in adjusting MRAs involve the interpretation of distinct contracts, and gives rise to a myriad of several *fact-specific* legal questions.

*Id*. (emphasis original). Accordingly, under the law of the ESI-ERISA Track, each ERISA Track plaintiff is free to pursue ERISA claims based on the distinct terms of their contracts with ESI.

18

## V.       IN THE EVENT ESI IS NOT AN ERISA FIDUCIARY, ERISA DOES NOT PREEMPT PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT.

Despite having entered into a contractual relationship with each of the ERISA Track plaintiffs and/or their ERISA Plans, ESI contends that those Plaintiffs have no right to sue ESI for any breach of those service contracts, even if ESI is *not* an ERISA fiduciary.  In doing so, ESI relies on *dicta* found in a ruling by Judge Limbaugh in a case that now resides in the NPA-ERISA Track.  Moreover, ESI fails to advise the court that ESI itself is pursuing state common law counter claims in two of the ERISA Track cases, including a breach of contract claim.  As detailed below, ESI's own pleading practice, coupled with a proper legal analysis, leads to the inescapable conclusion that ERISA does not preempt Plaintiffs' breach of contract claims.[13]

### A.       ESI's Pleading Practice Demonstrates the Futility of its ERISA Preemption Defense.

In two of the nine ESI-ERISA Track cases, ESI itself is pursuing state common law claims against an ERISA Fund.  In the *Washington Wholesalers*, ESI alleges that the Fund did not pay certain invoices for prescription drugs dispensed to plan participants and has sued the Fund for breach of contract to recover those monies.  (4:06-cv-01007-HEA Doc. No. 5 at Counter Claim, pp. 9*14).  In *1199 NEHC*, ESI alleges that it overpaid rebates to the Fund and has sued the Fund for unjust enrichment and *quantum meruit* to recover those overpayments.  ESI has not withdrawn any of its counterclaims.  In essence then, ESI is asking this Court to rule that ESI can pursue state law claims against an ERISA fund to recover its overpayments, but that

---

13  ESI bears the burden of establishing ERISA preemption.  *See Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp.*, 523 F.3d 266, 270 (4th Cir. 2008) ("As [defendant] seeks to use ERISA preemption as an affirmative defense to [plaintiff's] state law claims, [defendant] bears the burden of proving the defense's applicability.").

same ERISA fund cannot pursue state law claims against ESI to recover its overpayments.  ESI's

pleading practice in *1199 NEHC* underscores the inconsistencies in ESI's bizarre request.

In 2004, 1199 NEHC sued ESI in the District of Connecticut alleging ERISA claims and,

in the alternative, two state law claims:  (1) breach of contract; and (2) a state statutory claim

under the Connecticut Consumer Protection Act.  (3:04-cv-1822-AWT, Doc. No. 1).  ESI filed a

motion to dismiss, arguing that ERISA preempted the state statutory claim.  ESI did not seek

dismissal of the breach of contract claim.  (3:04-cv-1822-AWT, Doc. No. 11).  By Order dated

April 15, 2005, the District of Connecticut granted ESI's motion and dismissed the state statutory

claim without prejudice.  In doing so, the court recognized that 1199 NEHC should be permitted

leave to amend if ESI ultimately is deemed not an ERISA fiduciary:

> [ESI] contests plaintiff's allegations that defendant is an ERISA
> fiduciary.  As the case develops, the plaintiff may develop a basis
> for factual allegations that would demonstrate not only that [ESI] is
> not an ERISA fiduciary, or any other category of persons covered
> by ERISA, but also that the plaintiff has a claim that is not
> preempted by ERISA.  In such an event, the plaintiff should be able
> to amend or file a motion for leave to amend the complaint.

(3:04-cv-1822-AWT, Doc. No. 50 at 1-2).  After securing the dismissal of the state statutory

claim on the basis of ERISA preemption, ESI proceeded to answer the 1199 NEHC complaint

and assert two common law counterclaims against 1199 NEHC.  To date, ESI has not withdrawn

those counterclaims.

Against this backdrop of ESI pursuing state common law claims (including a breach of

contract claim) against ERISA funds, Plaintiffs turn to ESI's argument that ERISA nonetheless

preempts the ERISA plaintiffs' state common law claims.

20

### A.    ESI's ERISA Preemption Defense Fails Under Eighth Circuit Law.

While the Supreme Court initially described the scope of ERISA preemption as

"deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987), it subsequently

narrowed it, recognizing that:

> If [§1144(a)'s] 'relate to' [language] were taken to extend to the
> furthest stretch of its indeterminacy, then for all practical purposes
> pre-emption would never run its course, for really, universally,
> relations stop nowhere.  But that, of course, would be to read
> Congress's words of limitation as mere sham, and to read the
> presumption against preemption out of the law whenever Congress
> speaks to the matter with generality.

*New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645,

655-57 (1995); *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr. N.A.,*

*Inc.*, 519 U.S. 316, 335 (Scalia, J., concurring) ("But applying the 'relate to' provision according

to its terms was a project doomed to failure, since, as many a curbstone philosopher has

observed, everything is related to everything else."); *Coyne & Delaney Co. v. Selman*, 98 F.3d

1457, 1469 n.14 (4th Cir. 1996) (recognizing that *Travelers* narrowed scope of ERISA

preemption).

To ensure that state law claims that "affect employee benefit plans in too tenuous, remote,

or peripheral a manner" are not preempted by ERISA, the Eighth Circuit has enumerated the

following six factors that courts should consider in determining if a claim is preempted:

> (1) whether the state law negates a plan provision; (2) the effect on
> primary ERISA entities and impact on plan structure; (3) the
> impact on plan administration; (4) the economic impact on the
> plan; (5) whether preemption is consistent with other provisions of
> ERISA; and (6) whether the state law at issue is an exercise of
> traditional state power.

*Bannister v. Sorenson*, 103 F.3d 632, 635 (8th Cir. 1996) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see also Wilson v. Zoellner*, 114 F.3d 713, 717 (8th Cir. 1997).

An application of these factors, as well as an examination of decisions from other jurisdictions, shows that "[c]laims on behalf of *plans* . . . against third-party administrators for breach of contract or professional malpractice generally have not been found to be preempted." *W.E. Aubuchon Co., Inc. v. Benefirst, LLC*, 661 F. Supp. 2d 37, 46 (D. Mass. 2009) (listing cases); *see also Bannister*, 103 F.3d at 636 (provisionally holding that subcontractor's breach of contract claim against trustee and administrator was not preempted); *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 701 n.5, 703 (6th Cir. 2005) (finding no preemption of breach of contract claim against record keeper and broker of life insurance policies held as assets for plan, and recognizing that "the courts of appeals that have addressed the issue have held that state-law claims against non-fiduciaries seeking to recover damages on professional service contracts are not preempted by ERISA"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 190-91 (D. Mass. 2003) (stating that "[o]ther circuits have also held that an ERISA plan may bring a claim as a plaintiff against a third party, where the cause of action is based on statutory or common law of general applicability . . ." and listing cases).

### 1.    Negation of Plan Provision

The first factor weighs against a finding of preemption.  As one court recognized, "the typical analysis under this factor relates to whether the plaintiff is suing for plan benefits." *Wilbers v. Moneta Group Inv. Advisors, Inc.*, No. 406CV00005, 2006 WL 1360866, at *4 (E.D. Mo. May 17, 2006).  Here, plan participants are not asserting a claim for denial of benefits under

any of the plans (*e.g.*, a claim that the plan failed to pay for a prescription drug that plaintiff maintains is covered under his or her employee benefit plan).  A holding that ESI has breached its service agreements with Plaintiffs and/or the plans will not negate, or even affect, any provision of the ERISA plans.  A breach of contract claim is distinguishable from a common law breach of fiduciary duty claim because the latter potentially could subject plan fiduciaries to conflicting duties under ERISA and state law.  *See Wilbers*, 2006 WL 1360866, at *5.

> 2.     *Effect on Primary ERISA Entities and Impact on Plan Structure*

Application of the second factor, which analyzes the state law's effect on primary ERISA entities and its impact on plan structure, also counsels against preemption.  *Wilson*, 114 F.3d at 718.  Here, the analysis starts with the presumption that ESI is not an ERISA fiduciary, as the contract claims are pled in the alternative.

"ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity — *for instance, the relationship between* the plan and its own employees, or *the plan and its insurers or creditors*, or the plan and the landlords from whom it leases office space."  *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429, 432 (S.D. Miss. 1995) (emphases in original).  In this case, a finding that the contracts between ESI and the Plaintiffs and/or the Plans have been breached will not alter any of the relationships among the primary ERISA entities because the dispute is between an ERISA entity and, presumptively, a non-fiduciary service provider to the Plans.  That "ERISA is lurking in the background does not alter the fact that this is simply a contract dispute" between ESI and the Plaintiffs.  *Union Health*, 908 F. Supp. at 432.

### 3.    *Impact on Plan Administration*

The third factor, under which the court considers any impact of the claim on plan

administration, also weighs against a finding of preemption.  A holding that the contracts

between ESI and the plans have been breached will not prevent any primary ERISA entities from

fulfilling their duties and will not force any of those entities to perform their duties differently

than they otherwise would.  *Wilson*, 114 F.3d at 719.  Instead, enforcement of the contract would

*facilitate* administration of the plans by giving force to the binding commitments between the

plans and outside vendors.  *Penny/Ohlmann/Niemann*, 399 F.3d at 702 ("Allowing plans to

contract with third-party service providers and resort to traditional contract remedies in case of

breach helps to ensure 'the financial integrity of the plans Congress intended to protect.'"); *see*

*also W.E. Aubuchon*, 2009 WL 3272491, at *9.

### 4.    *Economic Impact on the Plan*

In considering the fourth factor, courts should consider whether there will be a direct

economic impact on the plan.  *Wilson*, 114 F.3d at 719.  Although a holding that ESI breached its

contract with the Plan will have a direct economic impact on the plan, that impact will be

positive and consistent with the Congressional goals underlying ERISA.  *See Airparts*, 28 F.3d at

1066 ("A recovery from defendants [service providers hired to provide expert benefit plan

consultation] will increase the coffers of the plan; a defeat will mean that the plan has expended

money in fruitless litigation.  Such a tangential effect, however, is not enough to relate these state

law claims to the plan itself.").  As the Seventh Circuit reasoned:

> ERISA is a remedial statute enacted to protect the interests of
> beneficiaries of private retirement plans by reducing the risk of loss
> of pension benefits . . . '[I]nsuring the honest administration of

24

> financial sound plans' is critical to the accomplishment of ERISA's
> mission . . . The unauthorized diminution of pension benefits . . . is
> squarely at odds with the congressional purpose of protecting
> pension benefits.

*Trustees of the Aftra Health Fund v. Biondi*, 303 F.3d 765, 779-80 (7th Cir. 2002) (quoting

*Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22-23 (2d Cir. 1996)). "It does not take much

foresight to see that the inability of plan insurers to enforce valid contracts . . . would have a

direct and substantial adverse financial effect on ERISA plans." *Union Health*, 908 F. Supp. at

435 (quoting *Consumer Benefit Ass'n v. Lexington Ins. Co.*, 731 F. Supp. 1510, 1517 (M.D.

Ala. 1990)).

### 5. Consistency of Preemption with Other ERISA Provisions

Allowing Plaintiffs' breach of contract claims would not be contrary to or inconsistent

with any provisions of ERISA. The contrast between this breach of contract claim and a breach

of fiduciary duty claim for purposes of preemption is instructive.

Courts generally agree that common law claims for breach of fiduciary duty are

preempted because ERISA provides fiduciary standards that may differ from common law

standards, and Congress expressly addressed fiduciary standards, indicating that it intended for

ERISA to provide the sole mechanism for resolving fiduciary disputes. *See, e.g.*, *Noel v. Laclede

Gas Co.*, 612 F. Supp. 2d 1061, 1067 (E.D. Mo. 2009) (quoting 29 U.S.C. §§ 1104(a)(1)(A)-(B));

*AR BCBS*, 947 F.2d at 1350. ERISA does not expressly address breach of contract claims and

there is no other indication from the legislative history or statutory text that Congress intended

ERISA to govern breach of contract claims.

6.    *Exercise of Traditional State Power*

Courts are to tread carefully in finding that causes of action in fields of traditional state law or regulation are preempted, particularly where the cause of action is one of general application and "quite remote from the areas with which ERISA is expressly concerned — reporting, disclosure, fiduciary responsibility, and the like." *Wilson*, 114 F.3d at 721; *see also Berlin City Ford, Inc. v. Roberts Planning Group*, 864 F. Supp. 292, 295 (D.N.H. 1004) (recognizing that "state laws of general application that have only an incidental effect on the administration of ERISA plans and that do not affect relationships between a plan's fiduciaries and its beneficiaries have been ruled not to be preempted"). Resolution of breach of contract actions is a prototypical exercise of traditional state power. This factor, like all others, leads to the inescapable conclusion that ERISA does not preempt a breach of contract claim against ESI in its presumed role as a non-fiduciary service provider.

**B.    ESI's Reliance on Judge Limbaugh's *Dicta* in *Local 153* is Misplaced.**

In arguing preemption, ESI relies heavily on Judge Limbaugh's ruling on a motion to dismiss in *Local 153 Health Fund v. ESI*, No. 4:05-CV-00862 SNL, 2008 WL 1766777 (E.D. Mo. Feb. 6, 2008) ("*Local 153*"). For of the following give reasons, ESI's reliance on that case is misplaced.

**First**, *Local 153* does not involve an ESI contract or ESI's status as an ERISA fiduciary in performing its contractual obligation under an ESI contract. Local 153 contracted with a competitor of ESI, National Prescription Administrators, Inc. ("NPA"). When ESI purchased NPA in April of 2002, ESI assumed NPA's contractual obligations to serve as Local 153's pharmacy benefit manager and did so for a little over a year. While the case originally was

26

assigned to the ESI-ERISA track, it was re-assigned to the NPA-ERISA Track last year.14  To

date, there has been no ruling on the merits as to whether ESI is an ERISA fiduciary in

performing any of NPA's contractual obligations.  Stated otherwise, *Local 153* has not presented

the question that ESI presents here *(i.e.*, if ESI is not an ERISA fiduciary, does ERISA preempt

an ERISA fund's breach of contract claim against ESI in performing its contractual obligations as

a service provider to that Fund?).

**Second**, Judge Limbaugh's ruling in *Local 153* supports Plaintiffs' position that ESI is an

ERISA fiduciary.  Specifically, Local 153, through its trustees, filed a complaint that included

both ERISA claims and state common law claims.  ESI filed a motion to dismiss, arguing that

ERISA preempted the state law claims.  Judge Limbaugh agreed and granted ESI's motion.  In

doing so, however, Judge Limbaugh found that, taking the Fund's allegations as true, "the facts

establish that [ESI was] an ERISA fiduciar[y] in [its] management and administration of the

plan.  *See* 2008 WL 1766777, at *9.  Thus, Judge Limbaugh's actual holding supports plaintiffs,

not ESI.

**Third**, while Judge Limbaugh opined that the Local 153 Fund would be without a

remedy if ESI was ultimately deemed not an ERISA fiduciary in that case, that *dicta* is

inapposite.  Most importantly, the *dicta* was directed at harmonizing *Martens v. Hewitt*

*Associates*, 508 U. S. 248 (1993), in which the Supreme Court held that "equitable relief" under

29 U.S.C. § 1132(a)(3) — *a section not at issue here* — does not include compensatory

---

14  Joint Proposed Scheduling Order dated October 2, 2009 (MDL Doc. 366) at 16-17 (listing *Local 153* under the
NPA-ERISA Track).

damages.[15]  *Id.* at 253-54.

    **Fourth**, in opining on a question that was not before him, Judge Limbaugh relied on distinguishable cases.  *See* 2008 WL 176777, at *11.  Four were cases in which beneficiaries sued to recover their plan benefits under the terms of their plan documents.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 61 (1987); *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771 (8th Cir. 2006); *Johnson v. U.S Bancorp*, 387 F.3d 939, 942 (8th Cir. 2004); *Mathis v. Am. Group Life Ins. Co.*, 873 F. Supp. 1348, 1354 (E.D. Mo. 1994)).  In contrast to ESI's argument here, in *Walker v. Nat'l City Bank of Minn.*, 18 F.3d 630, 632 (8th Cir. 1994), and *Wilbers v. Moneta Group Inv. Advisors, Inc.*, No. 406CV00005, 2006 WL 1360866, at *4-*7 (E.D. Mo. May 17, 2006), the defendant was a *fiduciary* under the plan.  *Walker* and *Consolidated Beef Industries, Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 963 (8th Cir. 1991), pre-date the *Travelers* decision in which the Supreme Court recognized the logical bounds and limitations of the scope of ERISA preemption.[16]  And, in *Board of Trustees of Western Lake Superior Piping Industry Pension Fund v. American Benefit Plan Administrators, Inc.*, 925 F. Supp. 1424 (D. Minn. 1996), the plaintiff conceded preemption.  *Id.* at 1427.

    **Fifth**, although it mentioned the Eighth Circuit's ERISA preemption factors discussed above, *see* 2008 WL 1766777, at *7, the *Local 153* Order did not analyze them, s*ee id.* at *10.

---

15  *Mertens* highlights the lone exception — not applicable here — to the general rule that *non*-fiduciaries are not liable under ERISA.  *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000) (holding that ERISA authorizes action for equitable relief under 29 U.S.C. § 1132(a)(3) against a non-fiduciary that participates in a prohibited transaction under 29 U.S.C. § 1106(a)).

16  *See, e.g.*, *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1469 (4th Cir. 1996) (declining to follow *Consolidated Beef* because it did not "examine[]the preemption issue in light of Congress's objectives underlying ERISA preemption provision" and was "decided prior to *Travelers*, a case which . . . a narrowing of the Court's view of ERISA preemption.").

As explained, a proper application of those factors leads to the inescapable conclusion that, in the event ESI is not an ERISA fiduciary, ERISA does not preempt the Plaintiffs' breach of contract claims.  As one court found: "[i]nasmuch as ERISA nowhere provides for exclusive federal jurisdiction over claims against non-fiduciary service providers who commit . . . breach of contract, there is no basis for this Court to find that plaintiffs' state law claims actually present questions of federal law governed exclusively by ERISA."  *Richards v. Union Labor Life Ins. Co.*, 804 F. Supp. 1101, 1106 (D. Minn. 1992).

## VI.   THE PLAN TRUSTEE PLAINTIFFS ADEQUATELY PLEAD CLAIMS FOR BREACH OF CONTRACT

ESI concedes that 1199 NEHC's First Amended Complaint adequately pleads breach of contract.  Def. Br. at 15.  Therefore, the question presented is whether the other plan trustee plaintiffs' complaints adequately plead breach of contract.  Under the liberal pleading requirements, the answer to that question is yes.

### A.   The Complaints at Issue

ESI challenges the complaints filed in five plan trustee cases:  *Habermehl* (*Washington Wholesalers*), *Weiss* (*FELRA*), *Lowthers* (*UFCW*), *Kessler* (*UFCW/NEPa*), *Bruny* (*Local 888*).[17]  While each complaint focuses on the specific Plan-ESI relationship at issue, each one follows the same general form:

- The caption in each complaint identifies the Taft-Hartley fund  at issue and two of its trustees, and the first paragraph identifies the location of the fund;

- The second paragraph identifies the time period during which ESI

---

17  The complaints are found in the case dockets for each individual case as follows:  *Habermehl* (4:06-cv-01007-HEA, Doc. No. 1*), Weiss (*4:06-cv-01612-HEA, Doc. No. 1*)*, Lowthers (4:06-cv-01541-HEA, Doc. No. 1), *Kessler* (4:06-cv-01526-HEA, Doc. No. 1) and *Bruny (*4:06-cv-01611-HEA, Doc. No. 1).

(and/or its predecessors)  provided PBM services to the each fund;

- Paragraphs 8–39 identify the particular ESI services and/or conduct that each plaintiff is challenging;

- In particular, Paragraph 39 in each complaint identifies nine accounting and administrative errors committed by ESI, including "failing to price retail and mail order claims as specified in the Plan-ESI contracts;" and

- Paragraph 41 in each complaint expressly asserts a claim for breach of contract: "In addition, and in the alternative, ESI is liable to the Plan for breach of contract."

Taken as a whole, each plan trustee complaint adequately places ESI on notice of "what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 50 (2007).

  **B.** **ESI Has Acknowledged and Denied Each Breach of Contract Claim, and in One Case, Filed its Own Breach Contract Claim.**

  In claiming that the plan trustees' complaints are inadequate, ESI ignores the fact that over three years ago it answered each complaint by also alleging the existence of a contractual relationship and denying the breach of any of its contractual obligations:

- "Express Scripts actions under the Agreements comply with the intent of the parties in reaching a service provider agreement. Plaintiffs are essentially requesting the Court rewrite these Agreements."[18]

- "Plaintiff's claims are barred because Express Scripts complied with each of its contractual obligation concerning the Plan."[19]

Indeed, as noted *supra* at 12-13, in the *Washington Wholesalers* case, ESI initially objected to the

---

[18]  ESI's Answer in each plan trustee case follows the same form and includes many of the same affirmative defenses.  The quoted language here is presented as Affirmative Defenses No. 12 in each Answer.  *See, e.g.*, ESI Answer in *Washington Wholesalers* (4:06-cv-01007- HEA, Doc. No. 5).

[19]  The quoted language appears as Affirmative Defense No. 14 in ESI's Answers in each plan trustee case.  *See, e.g.* ESI Answer in *Local 888* (4:06-cv-01611-HEA, Doc. No. 5).

pleading but chose to answer the breach of contract claim and not challenge whether it was pleaded properly. Given ESI's informed response to each pleading over three years ago, ESI's late in the day attack appears more about delay than a true concern with the adequacy of those complaints. Regardless, as shown below, the plan trustees' complaints properly allege claims for breach of contract.

### C.   The Plan Trustee Plaintiffs' Complaints Satisfy the Liberal Pleading Requirements of FRCP Rule 8.

In arguing that the five complaints are inadequately pleaded, ESI seeks to impose a much greater pleading standard than that required by Rule 8 of the Federal Rules of Civil Procedure and the Supreme Court's recent decisions in *Twombly* and *Iqbal*. Even in the aftermath of those cases, Rule 8(a) still requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[20] *Twombly*, 550 U.S. 544, 50 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003) ("ERISA preemption often presents the sort of situation for which Rule 8's alternative pleading provision is designed.").[21]

To plead a breach of contract under Missouri law, a plaintiff must plead "'(1) a contract

---

20   The fact that these breach of contract claims are not set forth in a separate count in each complaint is of no moment. Federal Rule of Civil Procedure Rule 10(b) requires claims to be set forth in separate counts only "[i]f doing so would promote clarity" and "each claim [is] founded on a separate transaction or occurrence." *Bautista v. Los Angeles County*, 216 F.3d 837, 844 (9th Cir. 2000); *Pullen v. Northstar Presidio Mgmt Co., LLC*, No. 3:98 CV 771, 1998 WL 696010, at *2, *3 n.1 (D. Conn. Sept. 11, 1998) (holding that breach of contract and ERISA claims need not be stated in separate counts because such separation is not mandated by the Rules and would not significantly clarify complaint without causing unnecessary delay).

21   In any event, the five complaints at issue were all filed prior to *Twombly* and *Iqbal,* and ESI answered each complaint without challenging the adequacy of the pleadings.

between the plaintiff and defendant; (2) rights of the plaintiff and obligations of the defendant

under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the

plaintiff.'" *Skillington v. Activant Solutions, Inc.*, No. 4:09 CV 673, 2009 WL 1588280, at *6

(E.D. Mo. June 5, 2009) (quoting *Teets v. Am. Family Mut. Ins. Co.*, 272 S.W.3d 455 (Mo. Ct.

App. 2008) (internal citation omitted)).

      The complaints at issue adequately plead these elements.  First, the complaints expressly

refer to the contracts between ESI and Plaintiffs and ESI's breaches of those contracts.  ¶¶ 2, 39,

41.  Second, the complaints detail the many obligations ESI had to Plaintiffs under the contracts.

¶¶ 8-39.  Third, the complaints set forth in detail the ways in which ESI breached its contracts

with Plaintiffs, even though each breach is not expressly labeled as "a breach of contract."  *See*

*e.g.*  ¶¶ 24-25, 35, 38-41.  In particular, Paragraph 39 in each complaint identifies nine specific

accounting and administrative errors committed by ESI, including "failing to price retail and mail

order claims as specified in the Plan-ESI contracts."  And, fourth, the complaints describe the

ways in which ESI's breaches have caused Plaintiffs to be damaged.  *See ¶¶* 11, 19-20, 24, 28,

35-37, 39, Prayer for Relief.

      Any argument that these allegations are insufficient because the words "breach of

contract" does not appear in each of these paragraphs must fail.  As the Eighth Circuit has

recognized, "the complaint should be read as a whole, not parsed piece by piece to determine

whether each allegation, in isolation, is plausible," and the evaluation of a complaint is "'a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'"  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal

citations omitted).  A common-sense interpretation of the complaints here leads to the

inescapable conclusion that the shortcomings, violations and errors described therein were caused by ESI's contract breaches.

Likewise, the Court should reject ESI's argument that Plaintiffs' breach of contract claims fail because they "do not even plead that the plaintiffs have performed their end of the bargain." Def. Br. at 15. This argument depends on an overly literal interpretation of the elements of the cause of action and a strained reading of the complaints. The only reasonable inference from the complaints is that Plaintiffs' allegations include that they fulfilled all of their obligation under the contracts. *See Weidner v. Anderson*, 174 S.W.3d 672, 682 (Mo. Ct. App. 2005) (finding that where even not expressly alleged, the only "reasonable inference" from defendant's breach of contract counterclaim allegations was that "[d]efendant did not breach the contract and performed her duties thereunder… [a]ny other reading of these allegations would be unduly strained."). Any contrary inference is not reasonable and should not be a basis for finding plaintiffs have failed to state a claim for breach of contract.

## VII.   THERE IS NO GOOD REASON TO DENY THE PLAN PARTICIPANT PLAINTIFFS LEAVE TO AMEND TO ADD A BREACH OF CONTRACT CLAIM.

Admittedly, the plan participant plaintiffs' complaints do not expressly allege an alternative claim for breach of contract. Those cases, however, were filed before the ESI MDL and, aside from *Minshew,* were not actively litigated after the MDL transfer order in deference to the class certification proceedings in this ESI-ERISA Track. Indeed, at ESI's request, the plan participant plaintiffs agreed to stay discovery after Judge Limbaugh's ruling so that ESI could brief the issue of those plaintiffs' standing to sue for breach of contract. Even after ESI switched horses at the last minute and filed the motion at bar, those plaintiffs again agreed to stay

discovery pending the outcome of that motion.  Under these circumstances, there in no good

reason to deny plaintiffs leave to amend to add an alternative claim for breach of contract.[22]

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when

justice so requires."  The Eighth Circuit has interpreted this to mean that leave to amend "should

normally be granted absent good reason for a denial."  *Popp Telcom v. Am. Sharecom, Inc.*, 210

F.3d 928, 943 (8th Cir. 2000).  Denial of leave to amend is only appropriate "in those limited

circumstances in which undue delay, bad faith on the part of the moving party, futility of the

amendment, or unfair prejudice to the non-moving party can be demonstrated."  *Roberson v.*

*Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).  None of these factors justifies denial of

leave to amend or assert breach of contract claims in each case.

### 1.    *Undue Delay and Unfair Prejudice*

"Delay alone is not a reason in and of itself to deny leave to amend; the delay must have

resulted in unfair prejudice to the party opposing amendment."  *Id.*; *Southeast Mo. Hosp. v. C.R.*

*Bard, Inc.*, No. 1:07 CV 0031, 2008 WL 199567, at *11 (E.D. Mo. Jan. 22, 2008).  In this case,

ESI is unable to show prejudice because the breach of contract claims are based on the same

underlying facts as Plaintiffs' other claims and, therefore proving and defending all claims will

require the same discovery.  Moreover, all but one of the cases at issue have been "idle" and not

moving forward while the parties have been litigating only the ERISA fiduciary issues in

*Minshew* and class certification in this track.  Thus, no time or resources have been invested in

---

22  In the event the Court concludes that the five plan trustee complaints do not adequately plead breach of contract, those plaintiffs join in this argument as there is no good reason to deny them leave to amend to further detail their breach of contract claims.  As discussed above, each of the five plan trustee cases has been in a holding pattern with no discovery pending resolution of the class certification motion, the entry of a revised scheduling order, and most recently, ESI's current motion.

litigating these idle cases, and ESI can claim no such prejudice.

### 2. Bad Faith

Any claim that plan participant plaintiffs are acting in bad faith by seeking leave to add a contract claim is baseless.  Plaintiffs are only doing as all parties have known and expected since consolidation:  pursuing state law claims when and if ESI is deemed not an ERISA fiduciary in its relationships with each plan.  Indeed, in the aftermath of Judge Limbaugh's July 30, 2008 Order, the Plaintiffs, at ESI's request, agreed to stay all proceedings pending the outcome of ESI's motion that challenged a plan participant's standing to sue for breach of contract.  (MDL Doc. No. 366 at 8, discussing ESI's intent to challenge plan participant standing to sue for breach of contract).  Now that ESI has switched horses and filed its current motion, it has no basis to claim that any plaintiff has in any way acted in bad faith.

### 3. Futility of Amendment

To the extent ESI contends Plaintiffs' breach of contract claims are futile because they are preempted by ERISA, this argument against amendment must also fail.  "[A] court should not consider the likelihood of success unless the claim is "clearly frivolous."  *Popp Telcom*, 210 F.3d at 944.  And, as demonstrated above, ERISA does not preempt Plaintiffs' breach of contract claims.

With respect to standing, there is no question that the plan trustees have standing to pursue breach of contract claims against ESI.  As for plan participant standing to pursue breach of contract claims, Judge Limbaugh already has found that the Goodyear plan participants, including Minshew, are third-party beneficiaries of the Goodyear-ESI contracts.  *In re Express Scripts, Inc.*, 2008 WL 2952787 at *8 (emphasis original) (citations and internal quotations

35

marks omitted).  In the even this Court applies Judge Limbaugh's ERISA fiduciary ruling in *Minshew* across all cases, plaintiffs respectfully request that the Court likewise apply his third-party beneficiary ruling across all cases and find that Mixon, Clay and Cameron are third-party beneficiaries of the contracts between ESI and their respective plans.

## VIII.   CONCLUSION

Based on the foregoing reasons, Plaintiffs request that the Court deny ESI's motion in its entirety and rule that each plaintiff, with the exception of Minshew, is free to pursue ERISA fiduciary claims against ESI based on the terms of their respective contracts with ESI. Alternatively, in the event that the Court rules that ESI is not an ERISA fiduciary in its relationships with any of them and/or their ERISA plans, Plaintiffs respectfully request that the Court rule that:  (1) ERISA does not preempt a breach of contract claim against ESI in its capacity as a non-fiduciary; (2) the plan trustee plaintiffs' complaints adequately plead breach of contract; and (3) as needed, any plaintiff shall be allowed leave to file an amended complaint that cures any pleading defect.

Date:  February 26, 2010

Respectfully submitted,

**FOR THE PLAINTIFF STEERING COMMITTEE**

**MAURY A. HERMAN**
**MIKE MILLER**
**GARY KENDALL**
**WILLIAM H. NARWOLD**
**RONALD S. GOLDSER**
**STEPHEN J. HERMAN**
**JEFFREY L. KODROFF**
**THOMAS M. SOBOL**
**KENNETH WEXLER**

**JEFFREY R. KRINSK**
**CHET WALDMAN**
**JOHN J. STOIA, JR.**

s/ David A. McKay
**MAURY A. HERMAN**
**DAVID A. McKAY**
**HERMAN GEREL LLP**
230 Peachtree Street, NW, Suite 2260
Atlanta, GA 30303
Telephone: (404) 880-9500
Fax No. (404) 880-9605
E-Mail: esileadcounsel@hermanmathis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of February, 2010, the above and foregoing

Plaintiffs' OPPOSITION TO DEFENDANTS'MOTION FOR PARTIAL SUMMARY

JUDGMENT was filed electronically with the Clerk of Court to be served by operation of the

Court's electronic filing system upon:


Joseph P. Conran, Esq.
Thomas M. Dee, Esq.
Jeanine R. Bermel, Esq.
Joe.conran@husch.com
Tom.dee@husch.com
Jeanine.bermel@husch.com


In addition, the Request for Oral Argument was served upon Defense Counsel, *via* E-MAIL, to:

esicounsel@husch.com


\_\_\_\_/s/ David A. McKay_____