STATE OF NEW YORK
SUPREME COURT                    COUNTY OF ALBANY

PEOPLE OF THE STATE OF NEW YORK,
by ELIOT SPITZER, Attorney General of the State
of New York, NEW YORK STATE DEPARTMENT
OF CIVIL SERVICE, and STATE OF NEW YORK,

                              Plaintiffs,

                                                    **DECISION AND ORDER**

        -against-
                                                    Index No. 4669-04
                                                    RJI No. 01-04-079765

EXPRESS SCRIPTS, INC., ESI MAIL PHARMACY
SERVICE, INC., CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, and CIGNA LIFE INSURANCE
COMPANY OF NEW YORK,

                              Defendants.

(Supreme Court, Albany County, All Purpose Term)

APPEARANCES:                     Hon. Eliot Spitzer
                                 Attorney General of the State of New York
                                 Attorney for Plaintiffs
                                 (Joseph R. Baker, III, Thomas G. Conway, Troy J.
                                 Oechsner, Mary Bernet, Carol Beyers, Vincent P.
                                 Esposito, Jr., Emily Granrud, John Powell,
                                 Shirley Stark, and Henry Weintraub, Esqs., of
                                 counsel)
                                 The Capitol
                                 Albany, New York   12224-0341

                                 HUNTON & WILLIAMS, LLP
                                 Attorneys for Defendants Connecticut General Life
                                 Insurance Company and CIGNA Life Insurance
                                 Company of New York
                                 (Gregory G. Little, Ryan A. Becker, and Neil K.
                                 Gilman, Esqs., of counsel)
                                 200 Park Avenue, 52nd Floor
                                 New York, NY   10166-0136

EXHIBIT
6

HINMAN STRAUB, PC.
Attorneys for Defendants Connecticut General Life
Insurance Company and CIGNA Life Insurance
Company of New York
(James Potter, Esq., of counsel)
121 State Street
Albany, New York   12207

NIXON PEABODY LLP
Attorneys for Defendants Express Scripts, Inc., and
ESI Mail Pharmacy Service, Inc.
(Andrew C. Rose, Esq., of counsel)
Omni Plaza
30 South Pearl Street, Suite 900
Albany, New York   12207

ROPES & GRAY LLP
Attorneys for Defendants Express Scripts, Inc., and
ESI Mail Pharmacy Service, Inc.
(William E. Sussman and Brien T. O'Connor, Esqs.,
of counsel)
45 Rockefeller Plaza
New York, New York   10111

McCarthy, J.:

Pursuant to CPLR 3211 (a) (1), (7) and CPLR 3016 (b), defendants Express Scripts, Inc.

(hereinafter "Express Scripts") and ESI Mail Pharmacy Service, Inc. (hereinafter "ESI Mail")

(collectively, hereinafter, "ESI defendants") move to dismiss the second, fourth, fifth, sixth, ninth,

tenth, eleventh, twelfth and thirteenth causes of action as asserted against either or both of the ESI

defendants. Defendants Connecticut General Life Insurance (hereinafter "CGL") and CIGNA Life

Insurance Company of New York (hereinafter "CIGNA") (hereinafter, collectively, "CGL

defendants") also move pursuant to CPLR 3211 (a) (1), (7) and CPLR 3016 (b) to dismiss the first

2

(in part), third, fourth, fifth, sixth, seventh, eighth and tenth causes of action in the complaint as asserted against either or both of the CGL defendants. The CGL defendants also seek dismissal of the sixth request for relief as against them. Plaintiffs the People of the State of New York, the New York State Department of Civil Service (hereinafter "DCS") and the State of New York (hereafter, collectively, the "State") oppose both motions.

DCS administers the New York State Health Insurance Program, which, in part, offers prescription drug coverage through the Empire Plan for approximately 1 million active and retired State and local government employees and their dependents. In 1998, DCS contracted with CGL to provide and insure the Empire Plan's prescription drug program ("1998 contract") – a contract that was similar to previous agreements between the parties for the years 1994 - 1997. Again, in 1999, the parties contracted for the same services for the years 1999 - 2003 ("1999 contract"). The 1998 and 1999 contracts allowed CGL to subcontract the prescription benefit management services to a qualified organization, which CGL did by subcontracting in 1998 with ValueRX Pharmacy Program, Inc. In April 1998, Express Scripts acquired ValueRX. In addition, pursuant to the 1998 and 1999 contracts, CGL needed to issue an annual renewable group insurance policy to DCS for each contract year to provide pharmacy benefit insurance coverage under the Empire Plan, which CGL's affiliate – CIGNA – provided.

The 1998 policy that CIGNA issued provided, among other things, that CIGNA would pass onto the State all of the rebates it received from drug manufactures through December 15, 1999. These rebates were generated from a program referred to as the "Market Share" rebate program that Express Scripts administered for the Empire Plan under the terms of the subcontract. Essentially, under the "Market Share" rebate program, drug manufactures agree to pay Express Scripts a rebate

3

if plans participating in the program purchased a larger "market share" of that manufacturer's drug than the drug's national market share.

In August 2004, the State commenced this action against defendants.   In a preliminary statement in the complaint the State asserts that it commenced this action

> seeking injunctive relief, restitution, damages, indemnification and civil penalties resulting from defendants' breaches of contracts, and for Express Scripts Inc. . . . fraudulent, deceptive and illegal schemes to (a) conceal and retain millions of dollars in rebates and other payments from pharmaceutical manufacturers that belong to New York State's principal employee health plan, the Empire Plan, (b) enrich itself at the expense of the Empire Plan and its members by artificially inflating prices of prescription drugs, and (c) operate drug preference programs, including 'switching' programs, that enrich [Express Scripts] but often result in higher drug costs for the Empire Plan and other governmental employee benefit plans and their members, while failing to take into account patient health and safety (Complaint at ¶ 1).

Further, the complaint details allegations of the above-recited acts, alleging thirteen causes of actions against the various defendants, including claims of breach of the 1998 and 1999 contracts and 1998 policy, unjust enrichment, breach of fiduciary duties, indemnification, fraudulent inducement, negligent misrepresentation, violations of Executive Law § 63 (12), deceptive business practices pursuant to General Business Law § 349 and violations of the Education Law and an associated regulation.

In October 2004 and prior to answering the complaint, ESI defendants and CGL defendants moved pursuant to CPLR 3211 (a) to dismiss the majority of the complaint.   On June 8, 2005 – before the motion practice was resolved – the Court (Cannizzaro, J.) stayed this action pending the outcome of separate federal litigation commenced against Express Scripts and others.   On February 3, 2006, the Court (McNamara, J.) vacated the stay.   Thereafter, the parties stipulated to submit updates to their original papers regarding the motion to dismiss and to a return date of the pending motion practice of May 26, 2006.

CPLR 3211 (a) (7) provides: "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that the pleading fails to state a cause of action." In determining a motion to dismiss premised on CPLR 3211 (a) (7), this Court "'must afford [plaintiff's] complaint a liberal construction, accept as true the allegations contained therein, accord . . . plaintiff the benefit of every favorable inference and determine only whether the facts alleged fit within any cognizable legal theory'" (*Skibinsky v State Farm Fire & Cas. Co.*, 6 AD3d 975, 976 [3d Dept 2004] [quoted case omitted]; *see Frank v DaimlerChrysler Corp.*, 292 AD2d 118, 120-121 [1st Dept 2002]). "Stated another way, the court's role in a motion to dismiss is limited to determining whether a cause of action is stated within the four corners of the complaint, and not, whether there is evidentiary support for the complaint" (*Frank*, 292 AD2d at 121).

As a threshold matter, defendants contend that the sixth cause of action sounding in breach of fiduciary duty is partially barred by the statute of limitations. Defendants maintain that the applicable statute of limitations is three years since the complaint seeks monetary damages for the breach of fiduciary duty claim. The State contends that the applicable statute of limitations is six years since the complaint claims unjust enrichment stemming from an alleged breach of fiduciary duty.

Generally, breach of fiduciary duty claims "fall under either a three-year or six-year limitations period, depending on the nature of the relief sought " (*Tatko v Sheldon Slate Products Co.*, 2 AD3d 1030, 1031 [3d Dept 2003]; *see Nathanson v Nathanson*, 20 AD3d 403, 404 [3d Dept 2005]). However, case law holds that "a cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period" except where "the fraud allegation is only incidental to the claim asserted" (*Kaufman v Cohen*, 307 AD2d 113, 119 [1st Dept

2003]; *see Klein v Gutman*, 12 AD3d 417, 419 [2d Dept 2004]; *see also Serio v Rhulen*, 24 AD3d 1092 [3d Dept 2005]).

Here, beginning with the preliminary statement and continuing on, the complaint alleges that defendants acted fraudulently. For instance, plaintiffs allege that Express Scripts acted fraudulently in performing in its role as the pharmacy benefit manager. The complaint further alleges that Express Scripts acted fraudulently by participating in "drug switching" or "drug preference" programs. Moreover, the complaint asserts that defendants misrepresented information to the State that they knew to be false and inflated drug prices to enrich themselves. In asserting its breach of fiduciary duty claim, the State relies on the above-discussed allegations. Thus, here, the breach of fiduciary duty claim is premised on fraud and, accordingly, subject to the six-year statute of limitations (*see Klein*, 12 AD3d at 419; *Kaufman*, 307 AD2d at 119; *see also Serio*, 24 AD3d at 1092). Plaintiff commenced this action on August 4, 2004; therefore, any claims of breach of fiduciary duty prior to August 4, 1998 are untimely.

Otherwise, defendants essentially contend that the majority of plaintiffs' complaint should be dismissed because what exists here is, at heart, a contract dispute between sophisticated business persons. Defendants maintain that the causes of action premised on tort should accordingly be dismissed. Specifically, defendants contend that the breach of fiduciary duty claim (sixth cause of action) should be dismissed as against both Express Scripts and CGL because a fiduciary relationship did not exist between the parties. Instead, Express Scripts and CGL maintain that the parties had an arm's length business relationship, which was manifest in the various contracts between the parties.

"A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give for the benefit of another upon matters within the scope of the relationship'" (*EBC*

6

*I, Inc. v Goldman Sachs & Co.*, 5 NY3d 11, 19 [2005] [citing Restatement (Second) of Torts § 874, Comment a]; *see Mandelblatt v Devon Stores*, 132 AD2d 162 [1st Dept 1987] [citing same source]; *see also WIT Holding Corp. v Klein*, 282 AD2d 527, 529 [2d Dept 2001]). "Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arms-length business transactions" (*EBC I, Inc.*, 5 NY3d at 19). In a contractual relationship, a court looks at the subject contract "'to discover the nexus of the parties relationship and the particular contractual expression establishing the parties' interdependency'" (*id.* [quoting *Northeast Gen. Corp. v Wellington Adv., Inc.*, 82 NY2d 158, 1652 (1993)]). As a general rule, where the parties do not establish a fiduciary relationship, courts should not find such a relationship (*id.* at 20; *WIT Holding Corp.*, 282 AD2d at 529; *Weiner v Lazard Freres & Co.*, 241 AD2d 114, 122 [1st Dept 1998]). However, conduct independent of an expressed contractual relationship may also be evidence of a fiduciary relationship (*see EBC I, Inc.*, 5 NY3d at 20; *Sergeants Benevolent Ass'n Annuity Fund v Renck*, 19 AD3d 107, 110 [1st 2005] [noting that "the ongoing conduct between parties may give rise to a fiduciary relationship that will be recognized by courts"]).

In response, the State contends that the complaint sufficiently alleges a breach of the fiduciary duty to sustain a motion to dismiss at this juncture, relying on allegations in paragraphs 58, 104 and 117 of the complaint. Those allegations are as follows:

> [Express Script] and CGL in fact held unique and special experience in providing PBM services, and DCS and the State placed their trust and confidence in CGL and [Express Scripts] with respect to [Pharmacy Benefit Management] services that [Express Scripts] and CGL had been providing to DCS, and would continue to provide under the 1999 contract (Complaint at ¶ 58).

> Under the pass-through pricing reimbursement system, DCS relied on [Express Script's] good faith, expertise and ability to negotiate and set prices on the Empire

7

Plan's behalf. Negotiating pricing arrangements with pharmacies was solely the responsibility of [Express Scripts]. Therefore, DCS requested and obtained specific promises from ESI regarding the process to be employed in negotiating and setting prices with pharmacies that would be passed through to the Empire Plan (*id.* at ¶ 104).

[Express Scripts] represented that for each drug that met these criteria, it would establish a price known as the Maximum Allowable Cost (MAC) or MAC price. The MAC price was the maximum amount DCS would be charged whether a brand or any equivalent generic of that brand was dispensed. Setting MAC prices was within the complete control of [Express Scripts], and DCS placed its trust in [Express Scripts] and relied on [Express Script's] expertise and good faith in setting MAC prices (*id.* at ¶ 117).

The State argues that Express Scripts ongoing relationship with DCS gave rise to a fiduciary duty because Express Scripts acted on behalf of DCS to negotiate drug prices, allocate rebates, administer a generic drug substitution plan and set "Maximum Allowable Cost" prices in the best interest of the Empire Plan. Accordingly, the State urges this Court to allow this claim to stand at this early point in this action.

This Court disagrees that a fiduciary relationship – apart from the terms of the contract – was formed here (*see EBC I, Inc.*, 5 NY3d at 20; *Sergeants Benevolent Ass'n Annuity Fund*, 19 AD3d at 110 ). Although the State may have relied on Express Scripts to manage the pharmacy benefits program for the Empire Plan and on its expertise in so doing, that was the very relationship which was the subject of the parties' agreement. Any alleged breach of that duty is already encompassed in the State's breach of contract causes of action (*see Brooks v Key Trust Co. Nat'l Ass'n*, 26 AD3d 628, 630 [3d Dept 2006], *lv dismissed* 2006 NY Lexis 1356]). Here, the parties had an arms-length business relationship, which does not give rise to a fiduciary relationship (*see WIT Holding Corp.*, 282 AD2d at 529; *see also Weiner*, 241 AD2d at 122; *Fourth Branch Assocs. Mechanicville v Niagara Mohawk Power Corp.*, 235 AD2d 962, 963 [3d Dept 1997]). Therefore, this Court grants

8

the branch of ESI defendants' motion to dismiss the sixth cause of action as against Express Scripts and, likewise, grants the branch of CGL defendants' motion to dismiss the sixth cause of action as against CGL.

Defendants next contend that this Court should dismiss the fourth cause of action – alleging that CGL, CIGNA and Express Scripts failed to act in good faith and fair dealing – as it is duplicative of the breach of contract causes of action also alleged in the complaint.[1] In response, the State argues that this is an alternative pleading to the contract claim, which is allowed pursuant to CPLR 3014. Further, the State contends that, at this early juncture where the issues are undeveloped, dismissal of this claim would be premature even if it is redundant of a breach of contract claim.

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'" (*511 W. 232nd Owners Corp. v Jennifer Realty Corp.*, 98 NY2d 144, 154 [2002] [quoted source omitted]). While a cause of action for breach of such a covenant is generally dismissed as redundant when it is "intrinsically tied to the damages allegedly resulting from a breach of contract" cause of action (*Canstar v J.A. Jones Constr. Co.*, 212 AD2d 452, 453 [1st Dept 1995]; *see Pier 59 Studios L.P. v Chelsea Piers, L.P.*, 2006 NY Slip Op 1529, at * 1 [1st Dept, March 2, 2006]), dismissal is not warranted where allegations in a complaint exist that "'a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under the agreement'" (*Fourth Branch Assocs. Mechanicville*, 235 AD2d at 965-966 [quoted case omitted]).

---

[1] CGL defendants concede that, as against them, the breach of contract cause of action is sufficiently pleaded.

Here, this Court agrees with the State that, at this juncture, the cause of action premised on breach of good faith and fair dealing should stand since it is pleaded in the alternative (*see* CPLR 3014) and the contract issues are not so defined as to determine whether this cause of action is truly redundant of the contract claims (*see Sims v First Consumers Nat'l Bank*, 303 AD2d 288, 290 [1st Dept 2003]; *see also Fourth Branch Assocs. Mechanicville*, 235 AD2d at 965-966). Therefore, this Court denies those branches of defendants' motions to dismiss the fourth cause of action as against all defendants.

Similarly, the State contends that this Court should not dismiss the fifth cause of action sounding in unjust enrichment as against Express Scripts and CGL defendants because it also is pled in the alternative. The State acknowledges case law cited by defendants holding that a claim for unjust enrichment – a cause of action sounding in quasi-contract – fails where an enforceable contract covers the parties' dispute (*see Clark-Fitzpatrick, Inc v Long Island R.R. Co.*, 70 NY2d 382, 288 [1987]; *Steven Strong Dev. Corp. v Washington Med. Assocs.*, 303 AD2d 878, 883 [3d Dept 2003]). However, the State argues that at this stage in the action the scope of the 1998 and 1999 contracts has not been determined to know whether these agreements would, in fact, cover the dispute at issue here. Again, this Court agrees that dismissal of this cause of action at this stage would be premature (*see American Tele. & Util. Cons. v Beth Israel Med. Ctr.*, 307 AD2d 834, 835 [1st Dept 2003]). Further, contrary to CGL defendants' argument, the unjust enrichment claim is properly pled (*cf Swits v New York Sys. Exchange*, 281 AD2d 833, 835-836 [3d Dept 2001]). Thus, this Court denies those branches of defendants' motion to dismiss the fifth cause of action as against Express Scripts, CGL and CIGNA.

Defendants argue that the tenth cause of action premised on negligent misrepresentation should be dismissed because the requisite special relationship is lacking. Defendants argue that a

10

special relationship is akin to a fiduciary relationship. Moreover, defendants contend that such a relationship must be distinct from duties imposed by the contract, arguing that a special relationship cannot exist here because the duty to provide accurate information arises from the contract. Since the State's claim lacks an independent foundation, defendants urge this Court to dismiss it.

Generally, "[a] claim for negligent misrepresentation can only stand where there is a special relationship of trust or confidence, which creates a duty for one party to impart correct information to another, the information given was false, and there was reasonable reliance on the information given" (*Zelber v Lewock*, 6 AD3d 1043, 1044 [3d Dept 2004]; *Fleet Bank v Pine Knoll Corp.*, 290 AD2d 792, 795 [3d Dept 2002]). "As a general rule, a claim for negligent misrepresentation is precluded in a breach of contract action absent a violation of a legal duty 'independent of that created by the contract'" (*Fleet Bank*, 290 AD2d at 795).

Here, the State argues that the defendants' contentions are without merit because the claim for negligent misrepresentation arises from alleged misrepresentations that induced DCS into contracting with CGL in 1999. Thus, the State contends that such allegation rest outside the terms of any existing contract. While this Court agrees that the complaint alleges that Express Scripts and CGL represented certain facts to DCS that induced it to enter into a new contract with the parties for management of the pharmacy benefits for the Empire Plan, as discussed above, a special relationship did not exist between the parties. Rather, as discussed earlier, the parties had an arm-lengths business relationship which does not give rise to the necessary special relationship for a cause of action premised on negligent misrepresentation to lie (*see WIT Holding Corp.*, 282 AD2d at 529). Accordingly, this Court grants those branches of defendants' motion to dismiss the tenth cause of action.

11

CGL defendants contend the seventh and eighth causes of action should be dismissed. The seventh cause of action alleges that CGL has a duty to indemnify the State for the acts of CGL's subcontractors and CGL has breached that duty. The eighth cause of action alleges that CIGNA breached a duty to indemnify the State pursuant to the 1998 insurance policy.  As noted in the complaint, these causes of action arise from provisions in the 1998 and 1999 contracts and the 1998 policy.  For instance, as stated in the complaint, the 1998 contract provided:

> CGL . . . shall hold harmless and indemnify the State and [DCS], their officers and employees from and against any injury, damages, loss or liability to persons or property resulting from or arising out of (a) this Agreement and (b) the acts, omissions, liabilities or obligations of [CGL], any affiliate, or any person or entity engaged by [CGL] as an expert, consultant, independent contractor, subcontractor, employee or agent (Complaint at ¶ 48).

In addition, the 1998 policy issued by CIGNA provides:

> [CIGNA] . . . shall hold harmless and indemnify the State and [DCS], their officers and employees from and against any injury, damage, loss or liability to persons or property resulting from or arising out of (a) this Agreement and (b) the acts, omissions, liabilities or obligation of [CIGNA], any affiliate, or any person or entity engaged by [CIGNA] as an expert, consultant, independent contractor, subcontractor, employee or agent (*id.* at ¶ 49).

Again, the 1999 contract provides:

> [CGL] agrees to indemnify, defend and save harmless the DCS and the State, its officers, agents, and employees from any and all claims or losses caused by the acts or omissions of [CGL] . . . the Insurer, or any and all subcontractors . . . furnishing or supplying work, services, materials, or supplies in connection with the performance of the Agreement and from all claims and losses accruing or resulting to any person, firm, or corporation who may be injured or damaged by the Insurer in the performance of the Agreement, and against any liability, including, but not limited to, costs and expenses, for violation of proprietary rights, copyrights, patents, or rights of privacy, arising out of the publication, translation, reproduction, delivery, performance, use, or disposition of any material, information or data furnished under the Agreement. . . (*id.* at ¶ 65).

12

The 1999 contract also provides that CGL "'shall . . . provide indemnification against all losses, and/or cost expenses (including reasonable counsel fees) that may be incurred by reason of the [CGL's] breach of any term, provision, covenant, warranty, or representation contained herein and/or in connection with the enforcement of the [1999 Contract] or any provision hereof'" (*id.* at ¶ 66).

CGL defendants argue that the above-cited clauses are standard indemnification clauses and such clauses do not give rise to a separate cause of action by the indemnitee against the indemnitor -- or, stated another way, a first party claim. Since the State is not claiming that it is facing liability from any third party, CGL defendants argue that the seventh and eighth causes of action should be dismissed. In response, the State contends that the CGL defendants fail, as a matter of law, to demonstrate that the subject clauses do not encompass the losses alleged in the complaint.

An indemnity clause "should be construed so as to encompass only loss and damage which reasonably appear to have been within the intent of the parties" (*Niagara Frontier Transport Auth. v Tri-Delta Constr. Corp.*, 107 AD2d 450, 453 [4th Dept 1985], *aff'd* 65 NY2d 1038). Such a clause, "should not be extended to include damages which are neither expressly within the terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract" (*Id.*; *see Hooper Assocs. Ltd. v AGS Computers, Inc.*, 74 NY2d 487 [1989]).

This Court agrees with the State that the 1999 contract contains an indemnification clause that would be applicable to the claims alleged in the complaint (*see Promuto v Waste Management, Inc.*, 44 F Supp 2d 628, 650-655 [SDNY 1999]; *Star Diamond Group v CoMac Intern, N.V.*, 297 AD2d 576, 577 [1st Dept 2002], *lv dismissed* 99 NY2d 651 [2003]). That clause, as recited at paragraph 66 of the complaint, specifically states that CGL shall indemnify the State against all loss or costs that may be incurred "by reason of [CGL's] breach" of the 1999 contract. Clearly, this

13

language indicates the parties' intent to provide for indemnification of the type of claims asserted here -- first party claims (*see Niagara Frontier Transport Auth.*, 107 AD2d at 453).

As for the 1998 contract and policy, the State contends that the indemnification clauses there also affords the same type of coverage as in the 1999 contract. This Court disagrees because those indemnification clauses do not contain the same specific language which clearly manifest the parties' intent to hold CGL responsible for first-party claims (*see id.; Hooper Assocs. Ltd.*, 74 NY2d at 487). Accordingly, this Court grants CGL defendants' motion to dismiss the seventh cause of action to the extent it seeks indemnification from CGL under the 1998 contract and to dismiss the eighth cause of action as against CIGNA as it seeks indemnification under the 1998 policy.

ESI defendants contend that the ninth cause of action sounding in fraudulent inducement as against Express Scripts should be dismissed because it is redundant of the breach of contract claim and the State failed to plead reasonable reliance. ESI defendants maintain that it made representations to the State as part of its contractual obligations and, thus, the cause of action for fraudulent inducement must fail.

To plead a claim for fraudulent inducement, a plaintiff must allege that a defendant knowingly made a false statement with the intent to deceive plaintiff upon which plaintiff justifiably relied and was damaged by such reliance (*see e.g. Llama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). Moreover, "[i]n a fraudulent inducement claim, the alleged misrepresentation should be one of then-present fact, which would be extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract, and not merely a misrepresented intent to perform" (*The Hawthorne Group, LLC v RRE Ventures*, 7 AD3d 320, 323-324 [1st Dept 2004]; *see US Fidelity and Guarantee Co v DelMar Dev. Partners*, 22 AD3d 1017 (3d Dept 2005]; *see also Fourth Branch Assocs. Mechanicville*, 235 AD2d at 963).

14

Here, the complaint contains allegations that the Sate reasonably relied on misrepresentations made by Express Script (*see* Complaint at ¶¶ 72, 79). Accordingly, this Court will not dismiss this cause of action on the basis it is missing allegations of reasonable reliance (*see Llama Holding,* 88 NY2d at 421). Further, in as much as Express Scripts defendants contend that this cause of action should be dismissed because of the truthfulness of the representations it made, this issue is not properly before this Court in this pre-answer motion to dismiss (*see Frank,* 292 AD2d at 121). Finally, the allegations regarding negligent representations made by Express Scripts rests on acts committed prior to the contract and do not concern a duty arising from the contract (*see The Hawthorne Group, LLC,* 7 AD3d at 323-324; *see also Deerfield Communications Corp. v Cheesebrough-Ponds, Inc.,* 68 NY2d 954, 956 [1986]). Therefore, this Court denies that branch of ESI defendants' motion to dismiss the ninth cause of action.

ESI defendants seek to dismiss the twelfth cause of action against them premised on deceptive business practices pursuant to General Business Law § 349. As a threshold matter, ESI defendants argue that any claims premised on General Business Law § 349 that accrued prior to August 4, 2001 are untimely. Otherwise, ESI defendants contend that section 349 does not apply here because the State has failed to plead that the alleged acts by ESI defendants were consumer oriented. ESI defendants maintain that any alleged harm to members of the Empire Plan would be derivative in nature, stemming from what is a private contract dispute between sophisticated business entities.

As to the statute of limitations issue, in *Gaidon v Guardian Life Ins. Co.* (96 NY2d 201, 209 [2001]), the Court of Appeals held that the applicable statute of limitations for a claim premised on General Business Law § 349 is three years. Further, that Court held that a General Business Law §

349 claim accrues "when [a] plaintiff has been injured by a deceptive act or practice violating section 349" (*id.* at 210; *see also* General Business Law § 349 [h]).  Thus, here, any claim the State has that is premised upon a violation of section 349 prior to August 4, 2001 is untimely.

As to the merits, General Business Law §349 was intended to prohibit deceptive acts or practices.  In *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, the Court of Appeals observed that, since General Business Law § 349 was intended to protect consumers, defendant's conduct must be consumer-oriented to fall under the ambit of the statute (*see* 85 NY2d 20, 25 [1995]).  The Court of Appeals explained that "while consumer oriented conduct does not require a repetition or pattern of deceptive behavior . . . [or] recurring conduct," it does exclude "single shot transactions" which are not typical consumer transactions (*id.; see New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 320 -321 [1995]; *U.W. Marx, Inc. v Bonded Concrete*, 7 AD3d 856, 857-858 [2004]; *accord Teller v Bill Hayes, Ltd.*, 213 AD2d 141 [2nd Dept 1995], *lv. to appeal dismissed in part and denied in part,* 87 NY2d 937 [1996]).

Here, the complaint alleges that ESI defendants engaged in acts that "have a broad . . . impact on consumers at large" (*Oswego Laborers Local 214 Pension Fund*, 85 NY2d at 25).  Although, as ESI defendants contend, private contracts do not generally fall under the ambit of section 349, the contract at issue here was for the benefit of the members of the Empire Plan receiving pharmacy benefits – approximately 1 million individuals (*cf U.W. Marx*, 7 AD3d at 856).  Thus, under the facts here, the contract does appear consumer oriented and any alleged breach of the contract would have a direct effect on a large number of consumers (*see Empyre Inground Pools Inc.*, 227 AD2d at 732).  Accordingly, this Court grants that branch of ESI defendants' motion to dismiss the twelfth cause of action as against them to the extent that any claims that accrued prior to August 4, 2001 are untimely; otherwise, this Court denies that branch of the motion.

16

ESI defendants contend that the eleventh cause of action should be dismissed as against them because the complaint fails to state a cause of action premised on Executive Law § 63 (12). First, ESI defendants argue that Executive Law § 63 (12) does not create a separate cause of action as presented here. Second, ESI defendants contend that the complaint fails to allege "persistent and repeated" conduct as necessary under a section 63 (12) claim. These arguments fail.

Executive Law § 63 (12) allows the Attorney General to seek injunctive relief, damages and restitution where a business has engaged in fraudulent or illegal acts (*see Matter of the State of New York v Ford Motor Co.*, 136 AD2d 154, 156 [3d Dept 1988] *affd* 74 NY2d 495 [1989]). Moreover, pursuant to Executive Law § 63 (12), a violation of a state, federal or local statute constitutes illegality and becomes actionable if persistent or repeated (*see State of New York v Princess Prestige Co.*, 42 NY2d 104, 107 [1977]). "While the authority of the Attorney-General is restricted to seeking injunctive relief against *repeated* illegal or fraudulent acts, he is not required to establish a large percentage of violations" (*id.* [emphasis in original]).

Here, as discussed above, allegations exist that ESI defendants violated General Business Law § 349, which would provide a sufficient basis for a violation of Executive Law § 63 (12) (*see Empyre Inground Pools*, 227 AD2d at 732). Moreover, the complaint also alleges that ESI defendants repeatedly violated the Education Law and an associated regulation. Thus, grounds exists at this juncture for this cause of action to remain. In addition, unlike the breach of contract claims, Executive Law § 63 (12) also provides the basis for the injunctive relief and restitution sought by the State. Thus, this Court denies that branch of ESI defendants' motion to dismiss the eleventh cause of action as against them.

However, this Court will grant that branch of ESI defendants' motion to dismiss the thirteenth cause of action as against them premised on violations of the Education Law. That claim

is redundant of the eleventh cause of action premised on violations of the Executive Law § 63 (12).
In the thirteenth cause of action, the State alleges: "By repeatedly and persistently violating
Education Law §§ 6509, 6808, 6810 and 6816-a and 8 NYCRR 29.1, [ESI defendants] individually
and through their pharmacists, have engaged in repeated and persistent illegal conduct in violation
of Executive Law § 63 (12)" (Complaint at ¶ 176).[2] Contrary to ESI defendants' argument, whether
the State can prove allegations of violations of the subject Education Laws is not at issue at this
juncture (see Frank, 292 AD2d at 121).

This Court denies that branch of ESI defendants' motion to dismiss the third cause of action
sounding in breach of contract as against them. This Court disagrees that the pleading with regard
to this cause of action is insufficiently pled. While the State did not attach to the complaint a copy
of the agreements which are the subject of the complaint (see Valley Cadillac Corp. v Dick, 238
AD2d 894, 894 [4th Dept 1997]), the complaint certainly referenced the agreements and, in many
paragraphs, quoted from the various agreements to give notice to ESI defendants of the various
claims asserted by the Complaint (see CPLR 3013). Certainly, any deficiency as to the lack of the
agreements being attached has been rectified during this instant motion practice.

Finally, CGL defendants maintain that the sixth request for relief in the complaint should be
dismissed as against them because there is no basis in the complaint for that requested relief. In that
request, the State seeks a judgment "[d]irecting defendants to pay restitution and damages to injured
members of the Empire Plan and other non-ERISA health and prescription drug benefit plans of the

---

[2] Education Law § 6509 provides definitions for professional misconduct, which includes
a provision that violation of certain regulations may constitute misconduct. In addition, 8
NYCRR 29.1 further defines professional misconduct. Education Law § 6808 pertains, in part,
to the registration and operation of pharmacies in New York. Section 6810 concerns the
distribution of prescription drugs in the State. Finally, section 6816-a directs when a substitution
of a prescription drug should occur.

State and its political subdivisions." The State fails to raise any opposition to this branch of CGL defendants' motion. This Court agrees that dismissal of this relief as against CGL defendants is appropriate since there are no allegations against CGL defendants in the complaint that would provide for them to pay restitution – such as under Executive Law § 63 (12). Otherwise, the other requested relief seeks damages under breach of the contract and for indemnification from CGL defendants. Thus, this Court grants that branch of CGL defendants' motion to dismiss the sixth item of requested relief in the complaint as against them.

Accordingly, it is

**ORDERED** that the branch of ESI defendants' motion to dismiss the sixth cause of action as against Express Scripts is granted; and it is further

**ORDERED** that the branch of CGL defendants' motion to dismiss the sixth cause of action as against CGL is granted; and it is further

**ORDERED** that the sixth cause of action is dismissed in its entirety; and it is further

**ORDERED** that the branch of ESI defendants' motion to dismiss the fourth cause of action is denied; and it is further

**ORDERED** that the branch of CGL defendants' motion to dismiss the fourth cause of action is denied; and it is further

**ORDERED** that the branch of ESI defendants' motion to dismiss the fifth cause of action is denied; and it is further

**ORDERED** that the branch of CGL defendants' motion to dismiss the fifth cause of action is denied; and it is further

**ORDERED** that the branch of ESI defendants' motion to dismiss the tenth cause of action is granted; and it is further

19

ORDERED that the branch of CGL defendants' motion to dismiss the tenth cause of action is granted; and it is further

ORDERED that the tenth cause of action is dismissed in its entirety; and it is further

ORDERED that the branch of CGL defendants' motion to dismiss the seventh cause of action is granted to the extent that it seeks indemnification from CGL under the 1998 contract; and it is further

ORDERED that the seventh cause of action is dismissed as against CGL to the extent that it seeks indemnification from CGL under the 1998 contract; and it is further

ORDERED that the branch of CGL defendants' motion to dismiss the eighth cause of action as against CIGNA is granted; and it is further

ORDERED that the eighth cause of action as against CIGNA is dismissed it its entirety; and it is further

ORDERED that the branch of ESI defendants' motion to dismiss the ninth cause of action is denied; and it is further

ORDERED that the branch of ESI defendants' motion to dismiss the twelfth cause of action is granted to the extent that any claims accrued prior to August 4, 2001 are dismissed; and it is further

ORDERED that the twelfth cause of action as against ESI defendants is dismissed as to any claims that accrued prior to August 4, 2001; and it is further

ORDERED that the branch of ESI defendants' motion to dismiss the eleventh cause of action is denied; and it is further

ORDERED that the branch of ESI defendants' motion to dismiss the thirteenth cause of action is granted; and it is further

20

**ORDERED** that the thirteenth cause of action as against ESI defendants is dismissed in its entirety; and it is further

**ORDERED** that the branch of ESI defendants' motion to dismiss the second cause of action as against them is denied; and it is further

**ORDERED** that the branch of CGL defendants' motion to dismiss the sixth item of requested relief as against them is granted; and it is further

**ORDERED** that the sixth item of requested relief as against CGL defendants is dismissed.

This shall constitute both the decision and order of the Court. All papers, including this decision and order, are being returned to counsel for CGL defendants The signing of this decision and order shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of that section relating to filing, entry and notice of entry.

SO ORDERED!

ENTER.

Dated: JULY 28, 2006
Albany, New York

William E. McCarthy, J.S.C.

21

Papers Considered:

1.  Notice of Motion dated October 6, 2004;
2.  Affidavit of Paula Gazeley-Daily sworn to October 5, 2004, with accompanying Exhibits A-R;
3.  Notice of Motion dated October 6, 2004,
4.  Affirmation of Matthew J. Merrick, Esq., affirmed October 6, 2004, with accompanying Exhibit A;
5.  Affirmation of Troy J. Oeschsner, Esq., affirmed December 3, 2004 with accompanying Exhibit 1.[3]

---

[3] The above-recited papers considered were previously filed with the Albany County Clerk's Office and were obtained from that office for the purposes of considering this motion. The above-recited papers will be returned to the Albany County Clerk's Office by the Court and will not returned with the original decision and order to counsel. All submitted memorandums of law not previously filed with the Albany County Clerk's Office will be retained by the Court.