# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re EXPRESS SCRIPTS, INC., PBM LITIGATION ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 4:05MD01672HEA |
| This Document Relates to: | |
| *NPA-ERISA Track Cases Only* | |
| *Lanigan as Trustee on Behalf of Local 153 Health Fund v. Express Scripts, Inc., et al.* Case Number 4:05CV862 | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Class Certification [Doc. No. 426]. A Class Certification Hearing has been conducted in the matter and the motion has been briefed and argued. For the reasons set forth below, the Motion for Class Certification is denied.

## FACTS AND BACKGROUND

The current posture of this Multi-District litigation stands at one action, the instant action, pending. All other cases have been resolved either on the merits, (*Lynch v. NPA, et al.*, currently on appeal), or through voluntary dismissal. Since the filing of the motion for class certification, two of the three movants have

voluntarily dismissed all of their claims.  Richard Lanigan, as Trustee of the Local 153 Health Fund remains the sole Plaintiff and the sole proposed class representative of a proposed class against National Prescription Administrators, Inc. (NPA).  Curiously, and interestingly enough, Lanigan's individual suit is against Express Scripts, Inc., not NPA, the named Defendant in this subclass.

Plaintiff is the Trustee of Local 153 Health Fund.  His First Amended Class Action Complaint alleges that the action is brought on behalf of himself and all other similarly situated self-funded prescription drug plans that utilize or have utilized the services of *Express Scripts, Inc*., (ESI), and its subsidiaries and/or affiliates as a pharmacy benefits manager (PBM).  Further, the First Amended Complaint alleges that Local 153 contracted with NPA for prescription benefit management services, that Express Scripts purchased NPA in April, 2002 and that Express Scripts took over NPA's contractual obligations to Local 153 and acted as the Fund's PBM, administering the prescription benefits available to the Fund and its participants and beneficiaries until approximately December, 2003.

Plaintiff alleges ESI retained undisclosed rebates from manufacturers and enriched itself through various practices at the expense of the beneficiaries of the fund.  Plaintiff sets out allegations which it contends establish ESI as a fiduciary, both at common law and under ERISA.  Count I is brought under a theory of

Breach of Fiduciary Duty; Count II, Deceptive Practices, in violation of NY General Business Law § 349; Count III, Breach of Contract, Count IV, Conversion; Count V, Breach of the Covenant of Good Faith and Fair Dealing; and Count VI, Unjust Enrichment.

Plaintiff seeks certification of a class consisting of:

> All self-funded ERISA employee benefit plans ("ERISA Plans") for which *NPA*, at least initially, served as the ERISA Plans' PBM, and which utilized the NPASelect Formulary, at any time from January 1, 1996 through April 13, 2002. (Emphasis added).

Based on this proposed definition, Plaintiff asks this Court to certify a class under Rule 23(b)(3).

## CLASS CERTIFICATION STANDARD

Under the Federal Rules of Civil Procedure, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The four Rule 23(a) requirements applicable to all class actions are more commonly referred to as: (1) numerosity (a class so large that

joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). To initiate a class action, a group of Plaintiffs must establish that the filed case meets all of these requirements. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). Courts should not suppress "doubt" as to whether a Rule 23 requirement is met—no matter the area of substantive law. *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 321 (3d Cir. 2009).

If a plaintiff is able to sufficiently demonstrate that they can meet the requirements of 23(a), he or she can then maintain the class action by establishing that the case fits under 23(b). The applicable section cited by the Plaintiffs here is 23(b)(3)(" the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.")

To determine whether a plaintiff has met the requirements of Rule 23, the Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," … and that certification is proper only if "'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. . . ("'[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable"). *Wal-Mart*, 131 S. Ct. at 2551-52 (internal citations omitted). The court's initial "inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005); *see also Wal-Mart*, 131 S. Ct. at 2551-52 ("Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' ") "Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Id.* Whether or not a plaintiff has met its burden of demonstrating that it has satisfied the requirements of both Rule 23(a) and one of

the categories of Rule 23(b) "necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims." *Id.* at 568-69.

There are three related threshold requirements found by implication in Rule 23(a) which should begin any analysis of a putative class: (1) that a class must exist; (2) that the representative parties are members of the class; and (3) that at least one named class representative has Article III standing. *Bynum v. District of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 877 (D.S.D.1982); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000).

The first of these related requirements, that a class must exist, is interchangeably referred to as ascertainability or identifiability. "If a class is so vague that it is not susceptible to ready identification, problems may arise regarding the provision of notification to class members, the binding effect of any judgment rendered in the case and the general concerns of propriety of an overly large class." *See Ad Hoc Committee to Save Homer G. Phillips Hosp. v. City of St. Louis*, 143 F.R.D. 216, 219 (E.D.Mo. 1992). A proposed class may not be defined in such a way as to make the actual composition of the class only determinable at the conclusion of the proceedings. *In re Paxil Litigation,* 212 F.R.D. 539, 545

(C.D.Cal.2003); *see also, McElhaney v. Eli Lily & Co.,* 93 F.R.D. 875, 877-88 (D.S.D.1982). A class should not be certified unless the class description is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Kirkman v. N. Carolina R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004)(*quoting* 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1760 (3d ed.2005)). Certification is not appropriate where the court would be required to engage in fact-intensive individualized analysis to identify class members. *Adair v. Johnston*, 221 F.R.D. 573, 577-79 (D.Ala.2004); *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y.2001); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981). Additionally, the inability to ascertain which particular plaintiffs belong in the class makes it difficult for the Court to determine whether requirements such as numerosity and typicality are met. *In re Paxil Litigation*, 212 F.R.D. at 545.

The second requirement is that, inherent in Rule 23, is the requirement that the class representatives are members of the class, and a proffered representative cannot represent the class where they cannot maintain their own claim. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 n. 8 (8th Cir. 1996); *Great Rivers Co-op. of S.E. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997); *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196-97 (8th Cir. 1998).

Finally, it is well-settled that at least one named class representative must have Article III standing to raise each class subclaim. *Prado-Steiman*, 221 F.3d at 1279; *see also Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D.Fla.2006). The constitutional requirements of Article III standing are well known. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, there must be a causal connection between the injury and the conduct complained of, i.e. the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. 2130.

## THE FOUR EXPLICIT REQUIREMENTS OF RULE 23(a)

**Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires an inquiry into whether the class is so numerous that joinder of all members is impracticable. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). Factors relevant to this inquiry include the number of persons in the proposed class, although no arbitrary rules regarding the necessary size of

classes have been established. *Id.* Moreover, the number of persons in the proposed class is merely one of several factors. The court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Id.* at 559-60. Courts have held that the geographical dispersion of class members is among the factors which may be considered in determining numerosity – that is, whether the individuals affected could be simply joined into one cause of action, rather than proceeding as a class. Cf. *Morgan v. United Parcel Service of America, Inc.*, 169 F.R.D. 349, 355 (E.D.Mo. 1996)(finding joinder impractical where potential class members were dispersed throughout the eleven UPS regions in the United States); and *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 486 (N.D. Iowa 2008)(finding insufficient geographic dispersion where substantially all of the proposed class members lived within the boundaries of the judicial district). Finally, Courts have also considered the fact that the members of a prospective class are able to be identified when contemplating whether joinder is impracticable and a class action required. *Gries*, 252 F.R.D. at 486 (finding that since the plaintiff could contact each class member, joinder was not impracticable).

      Here, Plaintiff is now the single willing participant, asserting that he has

satisfied the numerosity requirement because there are at least 59 plans effected by NPA's practices in administering the plans' pharmacy benefits. They are allegedly identifiable from NPA's records and that they are disbursed throughout the country.

**Rule 23(a)(2): Commonality**

The commonality determination "requires a plaintiff to show that there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). As the Supreme Court has observed, that language is easy to misread, because any competently crafted class complaint literally raises common "questions." *Id.* at 2551. Merely reciting questions is not sufficient to obtain class certification; rather, commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Id.* Further, the claims must depend upon a common contention which must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Id.* The *Wal-Mart* Court quoted Professor Nagareda to explain:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)).

Plaintiff contends that standardized contracts were used with all plans. Plaintiff, however, does not provide any proof of a standardized contract used for all members of the class.

> Plaintiffs assume, without proving, that the provider contracts, and the services offered and provided thereunder, were substantially similar. The parties' contracts, i.e., the language used and services for which the parties were contracting, belie this conclusion.

*In re Express Scripts, Inc., PBM Litigation*, 2008 WL 2952787 at *18 (E.D. Mo. July 30, 2008).

For instance, Deposition testimony highlights the pervasive individualized questions here, e.g.: whether the contracts in question were the result of a mere printing of the contract to fill in the blanks or whether the contracts were the result of individual, independent negotiation. See, Deposition of Ellen Perlman, former senior vice president of sales of NPA discussing the customization of the materials presented to NPA clients, Exhibit 2, Perlman Depo. At 9:17-24 and 29:9-18.)

Some contracts were executed; some were not. There are variations regarding how the contracts address rebates. Indeed, the issue of the rebates received and how they were disbursed or retained by NPA is a major complaint of

Plaintiff. Thus the question cannot be answered on a classwide basis.

The Eighth Circuit defines typicality as requiring "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990). A demonstration of typicality requires a plaintiff to demonstrate something more than general conclusory allegations that prospective class members have suffered the same injury as the plaintiff. *Paxton*, 688 F.2d at 562. A typicality analysis necessarily involves a comparison of the plaintiffs and the prospective class members. Thus, it is incumbent upon the plaintiff to submit sufficient evidence for the court to conclude that prospective class members do, in fact, share in the plaintiff's claims. *TBK Partners v. Chomeau*, 104 F.R.D. 127, 131 (E.D.Mo. 1985). Conversely, if the parties seeking to represent the class have claims or defenses which are not shared by the proposed class members, then the class fails for lack of typicality. *TBK Partners*, 104 F.R.D. at 131.

The typicality requirement also is not met where there is an apparent conflict between a plaintiff's requested relief and those of potential class members. *TBK Partners*, 104 F.R.D. at 131.

Here, Plaintiff fails to meet the test for typicality. Plaintiff's action is against ESI, not NPA, the named defendant in this track. Additionally, while Plaintiff's

plan has terminated the relationship with ESI, other proposed class members continue to be serviced by ESI. This not only defeats the typicality requirement, but raises conflict issues which cannot be ignored *vis a vis* the proposed class.

Plaintiff also offers no basis for comparison of his claims across the class – only conclusory allegations that assume prospective class members are similar. There is no specific comparison of Plaintiff to any prospective class member in terms of their contracts with NPA/ESI, the circumstances surrounding their negotiations, or the relief they may seek.

**Rule 23(a)(4): Adequacy**

The adequacy of representation requirement under Rule 23(a)(4) seeks to discover conflicts of interest between named representatives and the class they seek to represent. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). A class representative must be part of the class, possess the same interest, and suffer the same injury as the prospective class members. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

As previously noted, Plaintiff's plan no longer utilizes the services of ESI as a PBM. Others in the proposed class are still affiliated with ESI. As such, in seeking recovery, Plaintiff's interests may conflict with those class members Plaintiffs assert claims only for property damage, they are not adequate

representatives and their proposed classes fail to meet this requirement.

## RULE 23(b)(3) REQUIREMENTS

Plaintiffs claim that the instant action is also maintainable under (b)(3). A class action may be maintained pursuant to Rule 23(b)(3) where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In deciding whether a class is maintainable under Rule 23(b)(3), this court must consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." *Id.* The issue of manageability of a proposed class action is always a matter of justifiable and serious concern for the trial court and peculiarly within its discretion. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d124, 140-41. (2d Cir.2001). The overwhelming majority of courts refuse to certify mass tort actions brought pursuant to Rule 23(b)(3). *In re MTBE 2002*, 209 F.R.D. at 349.

**Predominance**

Based on the predominance requirement of Rule 23(b)(3), courts deny certification where individualized issues of fact abound. See, e.g., *In re LifeUSA*

*Hldg., Inc.*, 242 F.3d 136, 144-46 (3d Cir.2001); *Neenan v. Carnival Corp.*, 199 F.R.D. 372, 375 (S.D.Fla.2001). A claim is not appropriate for class treatment where it requires individualized, fact intensive inquiry into facts and circumstances unique to each putative class member. *Blades v. Monsanto*, 400 F.3d 562, 569-72 (8th Cir. 2005); see also *Amchem Prods. v. Windsor*, 521 U.S. 591, 624-25 (1997). Simply showing that common questions of law or fact may exist is insufficient to satisfy Rule 23(b)(3)'s predominance requirement. *Smith v. Brown & Williamson Tobacco*, 174 F.R.D. 90, 94 (W.D. Mo. 1997). The standard for certification imposed by Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem*, 521 U.S. at 624; *In re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 397 (E.D. Mo. 2008).

Common questions do not predominate over individual questions in this matter because of the individualized negotiations and relationships with each plan. Whether a fiduciary relationship exists must be ascertained by analyzing the contracts and the contractual relationships between NPA and the plans.

Regarding whether a breach of a fiduciary duty has occurred, the Court would be required to examine each relationship, the manner of dealing between the parties and the results thereof on a case by case basis, thus precluding certification of the class. See *Parke v. First Reliance Standard Life Ins. Co.*, 368

F.3d 999, 1004-05 (8th Cir. 2004). As such, Plaintiffs' ability to satisfy the predominance requirement of Rule 23(b)(3) is obviated by the very nature of Plaintiffs' claims.

**Affirmative defenses**

Individualized assessment of a statute of limitations issue may cause individual considerations to predominate, especially where plaintiff-specific timeliness defenses could reasonably be expected to become a focal point of the litigation, overshadowing common issues and negating the benefits of the class certification mechanism. *Fisher v. Ciba Specialty chemicals* Corp., 238 F.R.D. 273, 309-10 (S.D. Ala. 2006).

Defenses such as the statute of limitations, mitigation or affirmative release of claims will require an individualized determination for each class member because these defenses turn in large part on each class member's knowledge and conduct, or a prior owner's knowledge and conduct.

The individual issues raised by affirmative defenses can "clearly" preclude certification. *Barnes v. Am. Tobacco. Co.*, 176 F.R.D. 479, 502 (E.D. Pa. 1997); *see also In re Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d at 853 (individual issues may outnumber common issues where affirmative defense "may depend on facts peculiar to each plaintiff's case"). As noted in *Barnes v. Am. Tobacco Co.*,

175 F.R.D. 479, 502 (E.D. Pa. 1997), "the individual issues that are involved in determining whether affirmative defenses and the statute of limitations apply to each and every plaintiff" can be "staggering" and preclude certification. In *Barnes v. Am. Tobacco Co.*, 175 F.R.D. 479, 502 (E.D. Pa. 1997), the Court noted that in determining a limitations defense, it would "have to examine when plaintiff's injury accrued, and whether plaintiff knew or should have known of the injury and its cause" which the Court recognized was "clearly an individual issue." In *LaBauve*, the court cited limitations issues among other problems requiring plaintiff-by-plaintiff scrutiny in concluding the plaintiffs had failed to meet Rule 23(b)(3)'s predominance requirement. 231 F.R.D. at 673, 678.

Likewise here, the Court would have to examine when a putative plaintiff's injury accrued, whether a plaintiff knew or should have known of the injury. Here, the individual issues for each affirmative defense would be complex and require an individual assessment for each and every putative class member.

**Breach of contract**

Plaintiffs offer no common proof to establish a "classwide breach," as they would need to show whether defendant NPA breached its contract vis-a-vis the individual signatory to each contract. This type of claim requires proof – in each instance for each particular plan. There is no potential for common or classwide

175 F.R.D. 479, 502 (E.D. Pa. 1997), "the individual issues that are involved in determining whether affirmative defenses and the statute of limitations apply to each and every plaintiff" can be "staggering" and preclude certification. In *Barnes v. Am. Tobacco Co.*, 175 F.R.D. 479, 502 (E.D. Pa. 1997), the Court noted that in determining a limitations defense, it would "have to examine when plaintiff's injury accrued, and whether plaintiff knew or should have known of the injury and its cause" which the Court recognized was "clearly an individual issue." In *LaBauve*, the court cited limitations issues among other problems requiring plaintiff-by-plaintiff scrutiny in concluding the plaintiffs had failed to meet Rule 23(b)(3)'s predominance requirement. 231 F.R.D. at 673, 678.

Likewise here, the Court would have to examine when a putative plaintiff's injury accrued, whether a plaintiff knew or should have known of the injury. Here, the individual issues for each affirmative defense would be complex and require an individual assessment for each and every putative class member.

**Breach of contract**

Plaintiffs offer no common proof to establish a "classwide breach," as they would need to show whether defendant NPA breached its contract vis-a-vis the individual signatory to each contract. This type of claim requires proof – in each instance for each particular plan. There is no potential for common or classwide

175 F.R.D. 479, 502 (E.D. Pa. 1997), "the individual issues that are involved in determining whether affirmative defenses and the statute of limitations apply to each and every plaintiff" can be "staggering" and preclude certification. In *Barnes v. Am. Tobacco Co.*, 175 F.R.D. 479, 502 (E.D. Pa. 1997), the Court noted that in determining a limitations defense, it would "have to examine when plaintiff's injury accrued, and whether plaintiff knew or should have known of the injury and its cause" which the Court recognized was "clearly an individual issue." In *LaBauve*, the court cited limitations issues among other problems requiring plaintiff-by-plaintiff scrutiny in concluding the plaintiffs had failed to meet Rule 23(b)(3)'s predominance requirement. 231 F.R.D. at 673, 678.

Likewise here, the Court would have to examine when a putative plaintiff's injury accrued, whether a plaintiff knew or should have known of the injury. Here, the individual issues for each affirmative defense would be complex and require an individual assessment for each and every putative class member.

**Breach of contract**

Plaintiffs offer no common proof to establish a "classwide breach," as they would need to show whether defendant NPA breached its contract vis-a-vis the individual signatory to each contract. This type of claim requires proof – in each instance for each particular plan. There is no potential for common or classwide

proof. See *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2003) (denying certification for breach of contract claim where individualized extrinsic evidence would be needed and liability could not be established on classwide basis).

**Superiority**

Rule 23(b)(3) also requires Plaintiffs to prove the proposed action "is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

As discussed above, there are simply too many individualized inquiries relating to liability and damages to suggest that a class action is the superior method for handling this litigation. The collective presentation of individual liability evidence will not advance the parties' interests, nor will judicial economy of administration result from certification. The "missing link, fiduciary duty and breach thereof, will have to be proved in the case of each plaintiff before other individual issues such as damages can be reached." *See Caruso v. Celsius Insulation Resources, Inc.*, 101 F.R.D. 530, 535-537 (M.D. Pa. 1984). Given the numerous individualized factual and legal issues that exist here, the Court would

be faced with the classic case of having a lengthy series of "mini-trials" for each claim and for virtually every element of those claims. See, e.g., *In re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 399-400 (E.D. Mo. 2008) (class action not superior where case would "devolve into an endless series of 'mini-trials' that would fail to meet the goals of class certification.")

## CONCLUSION

For the following reasons, Plaintiffs' Motion for Class Certification is denied: (1) Plaintiff's claims fail to satisfy the commonality requirement of Rule 23(a)(2); (2) Plaintiff's claims fail to satisfy the typicality requirement of Rule 23(a)(3); (3) Plaintiff's claims fail to satisfy the adequacy requirement of Rule 23(a)(4); (4) Plaintiffs' proposed "liability class" does not raise questions of law or fact that predominate over individual issues, and is not a superior method of adjudication as required Rule 23(b)(2).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification, [Doc. 426], is denied.

**IT IS FURTHER ORDERED** that the parties shall, within 14 days from the date of this order, submit to the Court a status of the individual case of Lanigan v. Express Scripts, Inc., *et al.*, Case Number 4:05cv862 and along with proposed

trial dates.

Dated this 8th day of January, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE